```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 14-13254-scc

 4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 5

 6   In the Matter of:

 7

 8   199 EAST 7TH STREET, LLC,

 9

10                    Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13

14                    United States Bankruptcy Court

15                    One Bowling Green

16                    New York, New York

17

18                    April 9, 2015

19                    10:13 a.m.

20

21

22

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE
```

Page 2

1  **Doc. #21 Motion for Sale of Property under Section 363(b)**

25  **Transcribed by:   Sherri L. Breach, CERT*D-397**

```
 1   A P P E A R A N C E S :

 2   LAW OFFICES OF DAVID CARLEBACH, ESQ.

 3         Attorneys for Debtor

 4         55 Broadway, Suite 1902

 5         New York, New York 10006

 6

 7   BY:   DAVID CARLEBACH, ESQ.

 8

 9   TARTER, KRINSKY & DROGIN

10         Attorneys for East 7th Street Development Corp.

11         1350 Broadway

12         New York, New York 10018

13

14   BY:   SCOTT S. MARKOWITZ, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            MR. CARLEBACH:  Good morning, Your Honor.
 3            THE COURT:  Good morning, Mr. Carlebach.  How are
 4   you?
 5            MR. CARLEBACH:  I am good.
 6            THE COURT:  All right.  So --
 7            MR. CARLEBACH:  So we -- we're here on a sales
 8   procedures application and --
 9            THE COURT:  Right.
10            MR. CARLEBACH:  -- the sales procedures
11   application and every aspect of it was very heavily
12   negotiated.
13            THE COURT:  Could you just -- it's a lot of paper.
14   And --
15            MR. CARLEBACH:  Let me --
16            THE COURT:  -- it's still not --
17            MR. CARLEBACH:  Let me --
18            THE COURT:  -- it's still not clear to me exactly
19   what's happening.
20            MR. CARLEBACH:  We have a stalking horse contract
21   of a million dollars --
22            THE COURT:  Okay.
23            MR. CARLEBACH:  -- which, not to digress, but it's
24   going to -- that stalking horse contract actually as of
25   yesterday is going to go up to a million-two, but we'll --
```

```
 1   it -- as in --
 2              THE COURT:  Okay.  Well, that's kind of like a big
 3   digression.
 4              MR. CARLEBACH:  Okay.  Yeah.  Let's --
 5              THE COURT:  So --
 6              MR. CARLEBACH:  -- not digress.  Let's --
 7              THE COURT:  No.  No.  No.  I need to understand
 8   exactly --
 9              MR. CARLEBACH:  No.  They --
10              THE COURT:  -- what we're doing.
11              MR. CARLEBACH:  Yeah.  Yeah.  No.  So I'll come
12   back to that.
13              THE COURT:  Okay.
14              MR. CARLEBACH:  It's the same purchaser.  There's
15   an event which made the price go up which we're just
16   papering over now.
17              It's a million-dollar contract.  There's a $50,000
18   breakup fee.  Basically, these are five apartments that are
19   rent-stabilized and he's essentially paying $200,000 per
20   unit.  Because they're rent-stabilized it's an investment
21   where, you know, one of these -- if the apartments become
22   vacant the value goes up --
23              THE COURT:  Of course.
24              MR. CARLEBACH:  -- exponentially.  So -- and it's
25   going to be a really standard bankruptcy sale and, you know
```

```
 1   --
 2              THE COURT:  Does the co-op -- I'm just trying to
 3   figure out who is -- besides the debtor who has the interest
 4   here.  Does the co-op have a --
 5              MR. MARKOWITZ:  The co-op corporation --
 6              THE COURT:  -- secured claim?
 7              MR. MARKOWITZ:  It's -- Judge, it's maintenance on
 8   the proprietary lease.  We deem it to be rent has to be
 9   cured under 365 when we assume and assign the proprietary
10   lease to --
11              THE COURT:  Okay.
12              MR. MARKOWITZ:  -- the buyer.  We can talk about
13   that in a second because that's the one little issue that we
14   have.  But, yeah, it's relatively --
15              THE COURT:  But there's no dispute about that,
16   right?
17              MR. CARLEBACH:  There is no dispute about --
18              THE COURT:  I mean, other than I -- perhaps the
19   amount.
20              MR. CARLEBACH:  -- that.
21              THE COURT:  Correct.
22              MR. MARKOWITZ:  But they want to challenge the
23   amount and the State Supreme Court already ruled twice on
24   the amount.  So I tried to explain to them they can't do
25   that.
```

1            THE COURT: Okay.

2            MR. CARLEBACH: We -- this is the conversation we

3    had from the day we walked in. And, you know, this language

4    in the proposed sale order, which is an exhibit to the sale

5    procedures application, was very heavily negotiated. And,

6    you know, what you're hearing is still the -- and what I

7    said to Mr. Markowitz --

8            THE COURT: Well, I really --

9            MR. CARLEBACH: -- what I said to Mr. --

10           THE COURT: But I don't understand that. You --

11   in other words, the heavily negotiated is between the debtor

12   and the purchaser, right? But you -- is that what you mean

13   by heavily negotiated?

14           MR. CARLEBACH: No. I mean -- I'm just saying

15   that this language -- this -- within -- in the sale order it

16   talks about the disposition of the sale proceeds.

17           THE COURT: Okay.

18           MR. CARLEBACH: So of course what they want is to

19   -- you know, the cure amount, for lack of -- you know, in

20   this case it's actually the cure amount should be paid

21   immediately. Upon the closing of the sale there will be an

22   immediate payment. And we're just saying as -- you know,

23   it's a claim. To the extent that -- you know, and they're

24   saying, well, we have a judgment. What could you -- to the

25   extent it's an allowed claim it's going to be paid.

```
 1                THE COURT:  Right.
 2                MR. CARLEBACH:  If there's a good faith dispute,
 3   that's the language, if there's an objection to claim, it
 4   will be escrowed.
 5                THE COURT:  Okay.  But I get to decide.
 6                MR. CARLEBACH:  Absolutely.
 7                THE COURT:  I don't understand what -- I don't
 8   understand the heavily negotiated part of it.  That's what I
 9   was not -- I mean, it's got nothing to do with the
10   purchaser.  The purchaser is going to pay.  The debtor's
11   going to take the money.  Then what the debtor does next
12   with the money, right, I mean, in the absence of there being
13   -- so there's got to be an assumption and a cure, and if
14   there's a dispute over the cure amount I have to figure it
15   out, right?
16                MR. CARLEBACH:  If that's what -- that -- you have
17   no dispute from me.  That's exactly what the --
18                THE COURT:  Okay.  So I don't think I have a
19   dispute from Mr. Markowitz other than he said --
20                MR. MARKOWITZ:  No.
21                THE COURT:  -- he's right and you're wrong.  So --
22                MR. MARKOWITZ:  There's no dispute other than I
23   don't think that Your Honor -- and maybe I'm wrong about
24   this.  When the State Supreme Court ruled twice how much the
25   unpaid maintenance is as of a certain date, that you're not
```

1   going to start reviewing all these papers over again --

2              THE COURT:  Look, we --

3              MR. MARKOWITZ:  -- and counting numbers.

4              THE COURT:  Rooker Feldman (ph) applies.

5              MR. MARKOWITZ:  Right.

6              THE COURT:  So I find it hard to imagine what the

7   argument would be.  But it's not before me yet.

8              MR. MARKOWITZ:  Right.  And --

9              THE COURT:  So I can't say anything --

10             MR. MARKOWITZ:  And I think to his point, and I

11  just want to clarify this.  When he said heavily negotiated,

12  they sent over the sale papers, the draft motion as Your

13  Honor said to do.  I cleaned them up a bit.  They're in

14  decent shape, I think.  And then he said -- I don't look

15  focused --

16             THE COURT:  Mr. Carlebach, let's --

17             MR. MARKOWITZ:  I don't focus on the sale approval

18  order in a bid procedures hearing.  It's not the critical

19  document until --

20             THE COURT:  Correct.

21             MR. MARKOWITZ:  -- the sale happens.

22             THE COURT:  Absolutely.

23             MR. MARKOWITZ:  So he's trying to say I negotiated

24  certain -- he's submitting a draft -- a proposed --

25             THE COURT:  Correct.

1           MR. MARKOWITZ:  -- sale order and that's a

2   proposed sale order.

3           THE COURT:  That's right.

4           MR. MARKOWITZ:  That's all it is.

5           THE COURT:  Okay.  You're in --

6           MR. MARKOWITZ:  And we'll deal with it --

7           THE COURT:  You're in wild --

8           MR. MARKOWITZ:  -- at the sale.

9           THE COURT:  -- in wild agreement.

10          MR. CARLEBACH:  I'll go one step further, Judge.

11  Not only did Mr. Markowitz comment on it, his partner, Mr.

12  Wolfe, also had his own independent set of comments to every

13  exhibit.  And it's fine, though.  I said -- if -- I agree

14  with Mr. Markowitz.  It's a proposed sale order.

15          THE COURT:  Okay.

16          MR. CARLEBACH:  When we get to auction --

17          THE COURT:  Sure.

18          MR. CARLEBACH:  -- we can --

19          THE COURT:  But it --

20          MR. CARLEBACH:  -- read this better.

21          THE COURT:  But the only thing I care about today

22  is that as between the debtor on the one hand and the

23  purchaser on the other hand, that's not --

24          MR. CARLEBACH:  Right.

25          THE COURT:  -- that's not --

```
 1                MR. CARLEBACH:  The purchaser is comfortable that
 2   this is a sale order that will protect him.
 3                THE COURT:  Okay.
 4                MR. CARLEBACH:  And that was --
 5                THE COURT:  Who else -- who are the other
 6   creditors?
 7                MR. CARLEBACH:  I can look in the schedules.
 8   There weren't --
 9                MR. MARKOWITZ:  Judge, I believe there was about
10   three creditors listed.  There's a bar date past.  My client
11   filed a claim.  I think one or two other tiny claims.
12   There's no creditors here other than us.
13                THE COURT:  Okay.  So we're -- the debtor is
14   extremely motivated to maximize the value.
15                MR. CARLEBACH:  Absolutely.
16                MR. MARKOWITZ:  And the debtor --
17                MR. CARLEBACH:  Absolutely.
18                MR. MARKOWITZ:  -- is extremely -- equity gets a
19   decent amount of money here.
20                THE COURT:  That's what --
21                MR. CARLEBACH:  Right.
22                THE COURT:  Right.  That's --
23                MR. MARKOWITZ:  Exactly.
24                THE COURT:  -- the point.
25                MR. CARLEBACH:  And in terms of the digression,
```

```
 1   just there's one apartment that actually --
 2           THE COURT:  Let me state it differently --
 3           MR. CARLEBACH:  Yeah.
 4           THE COURT:  -- because I -- my lack of clarity
 5   with the bid procedures, you know, if we had secured debt,
 6   you know, stacked up like planes on a runway late in the
 7   afternoon I would probably give you more of a hard time.
 8   But given where we are, you know, you could almost do this
 9   as a private sale and, you know --
10           MR. CARLEBACH:  If equity --
11           THE COURT:  I would --
12           MR. CARLEBACH:  If equity chose to go that route
13   they could --
14           THE COURT:  That's what I'm saying.
15           MR. CARLEBACH:  -- they could that.  Absolutely.
16           THE COURT:  I'm just trying to explain that any
17   lack of clarity that I have with this because of the
18   configuration of the debt and the equity, I'm not going to
19   drive you crazy.
20           MR. CARLEBACH:  I appreciate that.
21           And all I -- what I was saying was is that the
22   contract today, the stalking horse bid is for a million
23   dollars.  In the interim there was this one apartment where
24   somebody died and they had a lover who was trying to claim
25   succession rights, classical.  And it just settled and that
```

```
 1   apartment has now --
 2              THE COURT:  Only in New York.
 3              MR. CARLEBACH:  Only New York.
 4              MR. MARKOWITZ:  Only New York.
 5              MR. CARLEBACH:  And that apartment has now become
 6   vacant.  And as a result of the vacancy, there was already a
 7   re-negotiation upwards of $200,000 of the purchase price.
 8   And it's a bargain because the minute these apartments
 9   become vacant --
10              THE COURT:  Sure.
11              MR. CARLEBACH:  -- the value is way above the 200.
12   So we're looking to get -- I already sent out an amendment
13   to the contract -- modification --
14              THE COURT:  Okay.
15              MR. CARLEBACH:  -- of a million-two which we hope
16   to -- you know, that's the only -- but it's the same
17   purchaser.  It's not a new stalking horse bidder.  And it's
18   just a --
19              THE COURT:  Got it.  Okay.  The new --
20              MR. CARLEBACH:  -- an upward -- yeah. Raising the
21   ceiling which is only --
22              THE COURT:  Okay.
23              MR. CARLEBACH:  -- good.
24              THE COURT:  Okay.  And there are no issues with
25   the gas lines at the building?
```

```
1                MR. CARLEBACH:  No.

2                MR. MARKOWITZ:  Pretty close.

3                MR. CARLEBACH:  Yeah.  This is --

4                THE COURT:  I mean, it's right around the corner.

5                MR. CARLEBACH:  Oh, well, we haven't heard of any.

6    Let's put it this way.  I mean, it's very unfortunate.

7                THE COURT:  Very tragic.

8                Okay.  So what else do I need to do today?

9                Mr. Markowitz, that's your only issue?

10               MR. MARKOWITZ:  Yeah.  I just want to -- one

11   thing.  It's not a major issue, but, you know, to your point

12   about the bid procedures and all that.  Yes, this case is

13   simple.  It's about how much money equity can put in their

14   pocket.  I mean, we -- I don't care about the disclosure.

15   But the tenant that's 4C or whatever, the illegal tenant is

16   getting a buyout.  The money -- the debtor doesn't have the

17   money.  I guess he's putting it in and that's fine.  He's

18   paying that person to get out.  It's a meaningful amount of

19   money.  It increases the purchase price.  This case is all

20   about how much money will get paid to my client -- the co-op

21   corporation has had a long dispute with him -- and how much

22   money he's going to put in his pocket.

23               THE COURT:  Right.  So we want --

24               MR. MARKOWITZ:  That's all this case is about.

25               THE COURT:  -- we want to get you paid.
```

```
 1                MR. MARKOWITZ:  Absolutely.
 2                THE COURT:  And then -- and you can be done.
 3                MR. MARKOWITZ:  Right.  Exactly.
 4                THE COURT:  But who is the -- there -- have I
 5    retained -- have you retained a broker?  Is there a broker?
 6                MR. CARLEBACH:  There is none.
 7                THE COURT:  Okay.  So don't the bid procedures
 8    refer to contacting the debtor's real estate broker?
 9                MR. CARLEBACH:  If it does say that, that's a
10    mistake because we do not have a real estate broker.  And
11    I'll change that to make sure that it just refers to
12    debtor's counsel.
13                THE COURT:  Right.  And there's not going to be
14    any marketing.  There's going to be a notice of a sale?
15                MR. CARLEBACH:  Right.  Just a notice of sale in
16    The New York Times.  I think we put in one ad in The New
17    York Times and, you know --
18                THE COURT:  Your client is telling you something
19    else.
20                MR. CARLEBACH:  Yeah.  I mean, the debtor plans on
21    marketing it himself and doing -- and I can say that just
22    independently that, you know, today even with the whiff of a
23    bankruptcy sale, it's just people -- people from Illinois
24    start calling, you know, and saying, you know, I've got a
25    great idea how you can dispose of these assets.  So --
```

```
1                THE COURT:  That's great.
2                MR. CARLEBACH:  You know, that's --
3                THE COURT:  But -- right.  But to that, I mean,
4    we're going to go.  I mean, we're not going to have --
5    entertain, you know, 50 people from Illinois who have ideas.
6    We're going with this.
7                MR. CARLEBACH:  Oh, yeah. No.  This --
8                THE COURT:  We're setting a date.  If nothing
9    better comes in, we're done.
10               MR. CARLEBACH:  Yes.
11               MR. MARKOWITZ:  Yes.
12               MR. CARLEBACH:  That's it.  That's --
13               THE COURT:  Okay.
14               MR. CARLEBACH:  There's no -- right.  There's just
15   -- we really just need to get a sale date.  You know, I
16   think we've proposed to have the sale in the courtroom here.
17               THE COURT:  Okay.  So you're going to be -- you're
18   going to give me -- are we going to have a revised purchase
19   agreement attached to an order or are you -- the problem is
20   that you have a purchase agreement that is -- expires, I
21   think -- well, it expires -- it expired yesterday, I think,
22   because I think it said that a hearing doesn't take place
23   until the 8th, plus you have a new amount.
24               So I'm just trying to make everything work because
25   if I -- if I enter an order approving a stalking horse
```

```
 1   contract that's outdated, that's not a good thing.  So --
 2              MR. CARLEBACH:  We'll get an extension.  We'll get
 3   an extension of this.  Yeah.
 4              THE COURT:  Well, just -- you can just file an
 5   amended Exhibit A to the motion, notice of filing of amended
 6   Exhibit A, and then have the order refer back to that.  That
 7   needs to be the order that things go in.  I need to see the
 8   executed amended stalking horse agreement and then I'll
 9   enter the order approving that and the bid procedures.
10              MR. CARLEBACH:  Understood.
11              THE COURT:  Okay.  And then we'll figure out the
12   cure as and when we get there.  But it seems to me that the
13   State Court judgment carries a lot of weight.
14              MR. CARLEBACH:  Understood.
15              THE COURT:  Okay.  All right. Anything else we
16   need to do today?
17              Okay.  We'll wait to hear from you and we'll enter
18   the order as soon as we have everything in the right order.
19   All right.
20              Thank you.
21              MR. CARLEBACH:  Thank you.
22              THE COURT:  Thank you for coming in today.
23              MR. MARKOWITZ:  Thank you.
24       (Whereupon, these proceedings were concluded at 10:26
25   a.m.)
```

1                           **I N D E X**

2

3                            **RULINGS**

4                                                    **Page**      **Line**

5   **Doc. #21 Motion for Sale of Property under**

6   **Section 363(b)**                                17          17

```
 1                C E R T I F I C A T I O N

 2

 3    I, Sherri L. Breach, certify that the foregoing transcript

 4    is a true and accurate record of the proceedings.

 5

 6    Sherri      Digitally signed by Sherri Breach
              DN: cn=Sherri Breach, o=Veritext,
              ou, email=digital@veritext.com,
      Breach  c=US
 7    _____
              Date: 2015.09.01 15:14:43 -04'00'

 8    SHERRI L. BREACH

 9    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12    DATE:   September 1, 2015

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501
```