TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Minta J. Nester

*Proposed Counsel to Albert Togut,*
 *not individually but solely in his capacity as*
 *Chapter 7 Interim Trustee for 199 East 7th Street LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
                                                          :
In re:                                                    :    Chapter 7
                                                          :
199 EAST 7TH STREET LLC,                                  :    Case No. 14-13254 (SCC)
                                                          :
                        Debtor.                           :
                                                          :
--------------------------------------------------------- x

### *EX PARTE* APPLICATION OF THE CHAPTER 7 INTERIM TRUSTEE FOR AN ORDER (I) DIRECTING THE PRESERVATION OF DOCUMENTS AND RECORDED INFORMATION AND (II) AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

JURISDICTION ...................................................................................................................... 4

BACKGROUND ..................................................................................................................... 4

    A.  Commencement of Debtor's Case and the Sale Order ....................................................... 4

    B.  Conversion of the Case to One Under Chapter 7 ............................................................ 7

RELIEF REQUESTED ........................................................................................................... 11

BASIS FOR RELIEF .............................................................................................................. 11

    A.  Authorizing the Rule 2004 Relief is Appropriate
        under Bankruptcy Rule 2004 ....................................................................................... 11

    B.  Preservation of Documents is Essential to the Trustee's
        Ability to Administer the Estate .................................................................................... 14

    C.  The Trustee Owns the Attorney-Client Privilege ........................................................... 17

RELIEF ................................................................................................................................ 19

NOTICE ............................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*21AT Assocs. v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),*
    No. 91 CIV. 1310 (MJL), 1992 WL 8335 (S.D.N.Y. Jan. 14, 1992) ........................................ 15

*Adelphia Commc'ns Corp. v. Am. Channel LLC (In re Adelphia Commc'ns Corp.),*
    No. 02-41729 (REG), 2006 WL 1529357 (Bankr. S.D.N.Y. June 5, 2006) ........................... 16

*Andino v. Fischer*, 555 F. Supp. 2d 418 (S.D.N.Y. 2008) ........................................................ 16

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*,
    220 F.R.D. 429 (W.D. Pa. 2004) ..................................................................................... 16

*Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343 S.Ct. 1986) ........................ 18

*Cordius Trust v. Kummerfeld*,
    Case No. 99 CIV 3700 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) ........................... 14

*In re Altman*, 254 B.R. 509 (D. Conn. 2000) ........................................................................ 19

*In re Bakalis*, 199 B.R. 443 (Bankr. E.D.N.Y. 1996) ....................................................... 11, 12

*In re Bame*, 251 B.R. 367 (Bankr. D. Minn. 2000) .............................................................. 18

*In re Bello*, 528 B.R. 562 (Bankr. E.D.N.Y. 2015) ............................................................... 12

*In re Bennett Funding Grp., Inc.*, 203 B.R. 24 (Bankr. N.D.N.Y. 1996) ............................... 12

*In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702 (Bankr. S.D.N.Y. 1991) .................. 12

*In re Eddy*, 304 B.R. 591 (Bankr. D. Mass. 2004) .......................................................... 18, 19

*In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002) ................................................... 11

*In re Friedman*, 184 B.R. 883 (Bankr. N.D.N.Y. 1994) ....................................................... 19

*In re Hickman*, 151 B.R. 125 (Bankr. N.D. Ohio 1993) ...................................................... 13

*In re Kramer*, 492 B.R. 366 (Bankr. E.D.N.Y. 2013) ......................................................... 13

*In re Metiom*, 301 B.R. 634 (Bankr. S.D.N.Y.2003) ............................................................ 19

*In re Shur*, 184 B.R. 640 (Bankr. E.D.N.Y. 1995) ............................................................. 14

*In re Siskin*, No. 02-10373 SMB, 2011 WL 4899868 (Bankr. S.D.N.Y. Oct. 13, 2011) ............ 15

*In re Sun Med. Mgmt., Inc.*, 104 B.R. 522 (Bankr. M.D. Ga. 1989) ..................................... 12

*In re Toft*, 453 B.R. 186 (Bankr. S.D.N.Y. 2011) .......................................................... 13

*Medical Diagnostic Imaging PLLC v. CareCore Nat. LLC,*
   Case No. 06 CIV 13156, 2008 WL 3833238 (S.D.N.Y. Aug. 15, 2008) ................................. 14

*Pueblo of Laguna v. United States,* 60 Fed. Cl. 133 (2004) ........................................................ 16

*SEC v. Ryan*, 747 F. Supp. 2d 355 (N.D.N.Y. 2010) ..................................................... 18

*TKR Cable v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001) ........................................ 16

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir. 2003) ............................. 15

**Statutes**

11 U.S.C. § 105 ........................................................................................................................ 4

11 U.S.C. § 541 ..................................................................................................................... 16

11 U.S.C. § 542 ................................................................................................................. 15, 17

28 U.S.C. § 157 ....................................................................................................................... 4

28 U.S.C. § 1334 ..................................................................................................................... 4

28 U.S.C. § 1408 ..................................................................................................................... 4

28 U.S.C. § 1409 ..................................................................................................................... 4

**Rules**

Fed. R. Bankr. P. 2004 ......................................................................................................passim

Fed. R. Bankr. P. 6004 ........................................................................................................... 7

Fed. R. Bankr. P. 7065 ........................................................................................................ 4, 19

Fed. R. Bankr. P. 9006 ........................................................................................................... 4

Fed. R. Bankr. P. 9016 ......................................................................................................... 13

Fed. R. Civ. P. 65 ................................................................................................................. 19

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as the Chapter 7

Interim Trustee (the "Trustee") of 199 East 7th Street LLC (the "Debtor"), by his

proposed attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), hereby makes this *ex*

*parte* application (the "Motion") for entry of:

- An Order in the form annexed hereto as Exhibit 1 (the "Order")
  that (a) authorizes the Trustee, pursuant to Rule 2004 of the
  Federal Rules of Bankruptcy Procedure (the "Bankruptcy
  Rules"), to issue subpoenas for the production of all books,
  records and documents including all emails, text messages,
  computers and/or lap top computers, hard drives, computer
  servers, back-up tapes and documents related to the Debtor or
  its property concerning or otherwise evidencing the Debtor's
  assets and financial affairs (the "Books and Records"),[1] and the
  examination of various persons and entities, to obtain
  information concerning acts, conduct, property and liabilities of
  the Debtor, and other matters relating to the extent and nature
  of the Debtor's estate, (b) contains a temporary restraining order
  that prohibits the destruction or alteration of the Books and
  Records (the "Provisional Relief"), and (c) approves the form
  and manner of notice for an initial hearing to consider the
  Trustee's request for the Provisional Relief (the "Initial
  Hearing");

- At the conclusion of the Initial Hearing, an order substantially
  in the form annexed hereto as Exhibit 2 (the "Proposed Order")
  continuing the Provisional Relief until a final hearing and
  scheduling such final hearing;  and

- Granting such other and further relief as the Court deems just
  and proper.

In support of the Motion, the Trustee has annexed hereto as Exhibit 3 the

Declaration of Neil Berger, Esq. (the "Berger Declaration"), incorporated herein by

reference, and respectfully states:

---

[1]    The foregoing description of the Books and Records is not limiting and includes all books, records,
correspondence and other information concerning the Debtor's affairs and estate.

## PRELIMINARY STATEMENT

On August 8, 2016, the Court concluded that the appointment of a trustee was necessary because the Debtor disbursed approximately $1 million (the "Sale Proceeds") to its "equity holders" without any prior notice or approval of this Court, and without any prior notice to the United States Trustee (the "U.S. Trustee") or the Debtor's creditors.

The disbursements occurred during November 2015 but were not disclosed until nearly one year later, just hours before the August 8, 2016 hearing (the "Conversion Hearing") to consider the motion by the U.S. Trustee for conversion or dismissal of the Debtor's case (the "Conversion Motion").  Although required to do so, the Debtor failed to file monthly operating reports for nearly one year.  It can be fairly concluded that the reason no reports were filed was so that the disbursements would be kept secret.

The Debtor's actions were part of a pattern.  During the Conversion Hearing, the Court observed:

> [A]s far as I can tell, virtually no order that I've ever entered in this case has been followed to the letter or even close to the letter.  I have no basis for believing virtually anything that's said.  And I don't now where all the money is.  I don't know who all the creditors were.  I don't know why there isn't a plan.  I just don't understand why I should permit a case to be conducted this way. . . .

Exhibit 4 (*Transcript of Hearing Held on August 8, 2016,* at 5:20-6:2).

Worse, having been caught, the Debtor sought to explain its improper conduct by saying:  "[t]he subsequent distribution to equity merely reflects a lack of communication between the Debtor and Counsel with respect to the appropriate manner of distributing the proceeds either through a plan or after a dismissal."

*Response to Motion of US Trustee to Dismiss or Convert Case Herein* [Dkt. No. 60] (the

"Response") at ¶ 9.  Rather than agreeing to have the Sale Proceeds restored to the estate, the Debtor explained that it "has no real creditors" and requested that its case be dismissed.  *Id.* at ¶ 10.

The Court directed the Debtor to restore the Sale Proceeds to the estate and to provide a detailed accounting of them more than a month ago, during the Conversion Hearing, but the Debtor has failed to do so.

The Court's September 8, 2016 *Amended Order Converting Chapter 11 Case to Case Under Chapter 7* (the "Conversion Order") directs:

> ORDERED, that all funds belonging to the Debtor as of October 29, 2015 that were disbursed without Court approval shall be returned to the chapter 7 trustee no later than close of business September 21, 2016.

Dkt. No. 66 at p. 1.

As of the date hereof, the Debtor has failed to comply with the Conversion Order.  Even if all the funds were turned over, the Trustee has a duty to examine the conduct of the Debtor and its counsel in the Chapter 11 case.  This is particularly true when, as here, there has been no committee of creditors monitoring the Debtor's conduct.

Based upon the record of this case, the Trustee has every reason to believe that the Debtor will not comply with the Conversion Order and that its members and other parties who are in possession of Books and Records which reflect or otherwise evidence the acts and conduct of the Debtor, including the transfer of the Sale Proceeds, will resist the Trustee's efforts to enforce the Conversion Order and recover the property of the estate, and they may not preserve, and may destroy, Books and Records unless an Order is entered directing that the Books and Records be preserved.

Injunctive relief preventing the destruction or alteration of the books, records and documents is needed on an expedited basis. The record establishes that the Debtor's improper conduct occurred nearly a year ago, and that the Debtor concealed that conduct. Consequently, there is a real risk that the parties may not preserve and may destroy or alter the Books and Records absent an Order of the Court prohibiting them from doing so.

Based upon the foregoing, and what is explained below, the Trustee requests an Order scheduling a hearing to consider the Trustee's request for an Order: (a) authorizing the Trustee to issue subpoenas as part of his investigation of the Debtor, its acts, estate and financial affairs; (b) continuing the Provisional Relief; and (c) scheduling a final hearing to consider the Provisional Relief.

## JURISDICTION

1.      This Court has jurisdiction to consider the relief requested in this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The bases for the relief requested by this Motion are section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2004, 7065 and 9006.

## BACKGROUND

### A.    Commencement of Debtor's Case and the Sale Order

3.      On November 26, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      On the Petition Date, the Debtor was the owner of shares in a housing cooperative corporation known as East 7th Street Development Corp. (the

4

"Shares") and the lessee under proprietary leases for apartment units represented by the Shares (the "Proprietary Leases").

5.    On January 21, 2015, the Court approved the Debtor's retention of the Law Offices of David Carlebach, Esq. ("Carlebach") [Dkt. No. 14].

6.    No committee of unsecured creditors was appointed in this case.

7.    On March 18, 2015, the Debtor filed an application (the "Sale Motion") [Dkt. No. 21] for an order authorizing, among other things, the sale of the Shares and the assignment of the Proprietary Leases to THM Funding LLC ("THM"), subject to higher and better offers, for $1 million pursuant to a contract of sale with THM dated March 16, 2015.  THM delivered a contract deposit of $100,000 to the Debtor.

8.    On May 6, 2015, the Court entered the *Order Approving (I) Bidding Procedures, (II) Form and Manner of Notices, and (III) Form of Contract, Including Bid Protections;  (B) Scheduling the Time, Date and Place for the Auction and Hearing to Consider the Sale of Shares and the Assumption and Assignment of Proprietary Leases;  and (c) Granting Related Relief* (the "Bidding Procedures Order") [Dkt. No. 24].  The Bidding Procedures Order scheduled an auction to be conducted on June 18, 2015 (the "Auction") and a sale hearing to be conducted on July 9, 2016 (the "Sale Hearing").  *See, Bidding Procedures Order* at ¶¶ 7-8.

9.    The bidding procedures that were approved by the Bidding Procedures Order (the "Bidding Procedures") also required the Debtor to give all Qualified Bidders copies of all Qualified Bid(s) (as defined in the Bidding Procedures) that the Debtor received.  *See,* Bidding Procedures at p. 6.

10.    On June 17, 2015, the Debtor filed its *Notice of Postponement of Auction Sale* [Dkt. No. 31], "for a period of one (1) week . . . ."

11.     Thereafter, on June 29, 2015, the Debtor filed its *Notice of Adjournment of Sale Confirmation Hearing* [Dkt. No. 33], and adjourned the Sale Hearing until July 21, 2015.

12.     On July 16, 2015, the Debtor filed its *Notice of Cancellation of Auction Sale* [Dkt. No. 35].

13.     None of the Debtor's notice adjourning the Auction, notice adjourning the Sale Hearing, nor its notice cancelling the Auction provided any explanation for those adjournments.

14.     The next day, on July 17, 2015, the Debtor filed its *Declaration of David Carlebach in Support of Confirmation of Sale* (the "Sale Declaration") [Dkt. No. 37], seeking approval of an undated contract of sale of the Shares and the Proprietary Leases to "Moses Strulovitch and his assignees" ("Strulovitch") for $1,650,000.  The Debtor reported that Strulovitch delivered a "hard deposit" of $500,000.

15.     Nothing in the record indicates that the Debtor complied with the Bidding Procedures by providing other Qualified Bidders with a copy of the Debtor's contract with Strulovitch or provided them with an opportunity to submit higher or better bids.

16.     The Sale Hearing was conducted on July 21, 2015, and on September 30, 2015, the Court entered the *Order (I) Approving Sale of Debtor's Unsold Shares in East 7th Street Development Corp.;  (II) Authorizing Assumption and Assignment of Proprietary Leases Appertunant (sic) Thereto;  and (III) Granting Related Relief* (the "Sale Order") [Dkt. No. 46], and approved the sale of the Shares and the assignment of the Proprietary Leases to Strulovitch for $1,650,000 (the "Sale").  *See, Sale Order* [Dkt. No. 46] at ¶ M.

17.     The Sale Order limited the payments that could be made from the

Sale Proceeds:

- Customary closing costs and applicable transfer taxes;

- A break-up fee of $60,000 to be paid to THM;

- A backup bidder deposit of $100,000 to be paid to THM;  and

- The Cure Amount of $250,000 to be paid to the Cooperative
  Corporation (defined in the Sale Order).

*See id.* at ¶ 23.[2]  No other payments were authorized.

18.     Based upon the provisions of the Sale Order, net sale proceeds of

the Sale to the Debtor should have totaled approximately $1 million.

19.     The Debtor did not advise the Court, the U.S. Trustee or any party

in interest that the Sale to Strulovitch had been consummated until eight months later

and *after* the Conversion Motion was filed.  Thus, the Debtor failed to comply with

Bankruptcy Rule 6004(f)(1) pursuant to which the Debtor was required to have filed a

notice of completion of the Sale.

**B.     Conversion of the Case to One Under Chapter 7**

20.     The Debtor began filing monthly operating reports during the early

months of its Chapter 11 case, but failed to file a monthly operating report for June

2015, and it failed to reflect its receipt of any of the contract deposits that it received in

connection with the sale of the Shares in any of its monthly operating reports, even

though it was required to do so.  Having skipped June, it filed an operating report for

July on August 11, 2015.  No operating reports were filed thereafter.

21.     The Debtor also failed to file a proposed plan.

---

[2]     The Court also authorized the Debtor's return of a contract deposit of $131,000 to 199 East 7th
        Acquisition Corp.  *See, Conversion Order.*

22.    On May 10, 2016, the U.S. Trustee filed his *Motion for an Order Dismissing Chapter 11 Case, or Alternatively, Converting the Case to One Under Chapter 7* [Dkt. No. 52] recommending dismissal of this case.

23.    Subsequently, the U.S. Trustee advised the Court that on or about June 23, 2016, eight months after the closing of the Sale, Carlebach informed the U.S. Trustee that the Sale had closed, and that the net proceeds had been transferred to "equity."  Upon information and belief, during a telephone conversation later that same day, Carlebach informed the U.S. Trustee that the net proceeds from the Sale had been transferred to the "Debtor," not to "equity" as he had previously stated.  No details regarding the Sale, the net proceeds and any payments therefrom were reported to the Court or filed on the electronic docket for this case.

24.    The Conversion Motion was originally scheduled to be considered by the Court on June 28, 2016, but in response to an adjournment request by Carlebach, the Court considered the Conversion Motion during the Conversion Hearing on August 8, 2016.

25.    Based upon the information provided by the Debtor concerning the disbursement of the Sale Proceeds, the U.S. Trustee submitted a Supplemental Declaration recommending conversion of the Debtor's case to a case under Chapter 7 [Dkt. No. 59] so that a trustee could be appointed.

26.    The Debtor's Response to the Conversion Motion was filed just hours prior to the Conversion Hearing, three months after the Conversion Motion was made.  For the first time, the Debtor, through Carlebach, advised the Court that he transferred the Sale Proceeds to the Debtor and that the Debtor disbursed those funds to the Debtor's "equity holders."  *Response* [Dkt. No. 60] at ¶ 7.  According to Carlebach, the equity holders who received the distributions are James Guarino, the Debtor's

8

managing member, and his "family members."  Exhibit 4 (*Transcript of Hearing Held on August 8, 2016, at* 11:9-11).

28.    Carlebach further explained that the "subsequent distribution to equity merely reflects a lack of communication between the Debtor and Counsel with respect to the appropriate manner of distributing the proceeds either through a plan or after a dismissal."  *Response* [Dkt. No. 60] at ¶ 9.

28.    Rather than seeking to restore the Sale Proceeds to the Debtor's estate, the Debtor argued that its case should be dismissed because it does not have any "real creditor[s]."  *Response* [Dkt. No. 60] at ¶ 10.

29.    During the Conversion Hearing, Carlebach advised that the Debtor's principal is "a very forceful type personality" who was able to convince Carlebach to deposit the sale proceeds into the DIP account instead of counsel's account.  Exhibit 4 (*Transcript of Hearing Held on August 8, 2016, at* 11:1-6).  Then, according to Carlebach, "immediately thereafter, without consulting counsel, the [D]ebtor went ahead and made distributions."  Exhibit 4 (*Transcript of Hearing Held on August 8, 2016, at* 10:18-24); *see also id.* at 8:8-15 (asserting that the Debtor "insisted that the proceeds of the sale be paid directly into the DIP account" and then "took the money").

30.    Carlebach also advised the Court that after he transferred the Sale Proceeds to the Debtor, he "thereafter requested that a sum for legal fees be set aside pursuant to the Sale Order subject to application by the Court and the Debtor transmitted $30,000.00 to Counsel."  *Response* [Dkt. No. 60] at ¶ 7; *see also* Exhibit 4 (*Transcript of Hearing Held on August 8, 2016, at* 17:12-18:3).

31.    Having considered the record in this case, the Court stated during the Conversion Hearing:

> [A]s far as I can tell, virtually no order that I've ever entered in this case has been followed to the letter or even close to the letter. I have no basis for believing virtually anything that's said. And I don't know where all the money is. I don't know who all the creditors were. I don't know why there isn't a plan. I just don't understand why I should permit a case to be conducted this way, and I won't. I mean I'm answering my own question. I will not permit a case to be conducted this way.

Exhibit 4 (*Transcript of Hearing Held on August 8, 2016,* at 5:20-6:3).

32.     During the Conversion Hearing, the Court directed that "[t]hose monies come back into the DIP account" together with a detailed accounting. Exhibit 4 (*Transcript of Hearing Held on August 8, 2016,* at 11:12-18).

33.     As of the dated hereof, the Debtor has failed to comply with the Court's August 8, 2016 direction.

34.     On September 8, 2016, a month after the Court directed the Debtor to restore the Sale Proceeds to the estate, and with the Debtor having failed to comply with that direction, the Court entered the Conversion Order which directs:

> ORDERED, that all funds belonging to the Debtor as of October 29, 2015 that were disbursed without Court approval shall be returned to the chapter 7 trustee no later than the close of business on September 21, 2016.[3]

Dkt. No. 66 at p. 2.

35.     As of the date hereof, the Debtor has failed comply with the Conversion Order.

---

[3]   The Conversion Order provides that "[f]or the sake of clarity, the return of Debtor funds referenced above does not include those sums distributed in accordance with the Order (I) Approving Sale of Debtor's Unsold shares in East 7th Street Development Corp.; (II) Authorizing Assumption and Assignment of Proprietary Leases Appertunant [sic] Thereto; and (III) Granting Related Relief (the 'Sale Order')(ECF Doc. No. 46) that authorized (i) the 'Break-up fee' of $60,000.00 paid to THM Funding, LLC, (ii) the 'Backup bidder deposit' in the amount of $100,000.00 paid to THM Funding, LLC; (iii) the 'Cure Amount' of $250,000.00 paid to 'Tarter Krinsky and Drogin LLP as attorneys for the Cooperative Corporation' (all terms as defined in the Sale Order)(Sale Order at ¶ 23); and (iv) the deposit given by 199 East 7th Acquisition Corp., a previously qualified bidder, in the amount of $131,000.00."

## RELIEF REQUESTED

36.     The Trustee seeks entry of the proposed order, substantially in the form annexed hereto as <u>Exhibit 2</u>, authorizing him to conduct discovery of the Debtor, its members, Carlebach, and non-debtor third parties concerning the extent and nature of the Debtor's estate, including, but not limited to, the disbursement of the Sale Proceeds, and directing all parties that receive notice of the Order and any order granting this Motion and any subpoena issued by the Trustee to preserve, and not destroy the Books and Records concerning the Debtor and its estate.

## BASIS FOR RELIEF

### A.     Authorizing the Rule 2004 Relief is Appropriate under Bankruptcy Rule 2004

37.     Bankruptcy Rule 2004(a) provides that a Court may order an examination of any entity upon request of a party in interest.  The scope of the Bankruptcy Rule 2004 examination is intended to be broad and may include the acts, conduct or property of a debtor or the financial condition of a debtor, as well as any matter that may affect the administration of a debtor's estate.  *See* Fed. R. Bankr. P. 2004(b).

38.     Bankruptcy Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for "discovering assets, examining transactions, and determining whether wrongdoing has occurred."  *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).  In this regard, courts have recognized that Bankruptcy Rule 2004  examinations are broad and unfettered, and may be in the nature of "fishing expeditions."  *Id.*; *see also In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) ("[Rule 2004's] purpose is to facilitate the discovery of assets and the unearthing of frauds and has been likened to a 'fishing expedition' into general

11

matters and issues regarding the administration of the bankruptcy case." (citation

omitted)); *see generally In re Bello*, 528 B.R. 562, 566 (Bankr. E.D.N.Y. 2015).

39.     Bankruptcy Rule 2004 is meant to provide broad power to

investigate any matter that may affect the administration of the estate. *See In re Bennett*

*Funding Grp., Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996); *see also In re Bakalis*, 199

B.R. at 447; *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y.

1991) ("The object of the examination of the [debtor] and other witnesses is to show the

condition of the estate and to enable the Court to discover its extent and whereabouts,

and to come into possession of it, that the rights of the creditor may be preserved."); *In*

*re Sun Med. Mgmt., Inc.*, 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989) ("Bankruptcy Rule

2004 examinations are allowed for the purpose of discovering assets and unearthing

frauds.").

40.     This Court concluded that the appointment of a trustee in this case

was necessary because the Debtor disbursed the Sale Proceeds to its "equity" without

any prior notice or authority by this Court and because the Debtor had otherwise failed

to be transparent about its affairs.  The Court observed that the Debtor failed to abide

by its Orders, file monthly operating reports to disclose its receipts and disbursements

of funds, and file a plan.  Moreover, the Debtor failed to provide a detailed accounting

to comply with the Court's direction regarding funds disbursed by it without Court

authority.

41.     The Trustee has concluded that he must conduct discovery to

identify the whereabouts of the Sale Proceeds that were disbursed without Court

authority and the facts and circumstances concerning those transfers.

42.     Based upon the record of this case, it is reasonable for the Trustee to

anticipate that the Debtor and its members will not cooperate with his discovery

requests, and that litigation may be necessary to recover funds that were improperly disbursed from the Debtor's estates.

43.    The discovery authority sought by the Trustee will provide him with a means to conduct a full examination of the Debtor's financial affairs and identify the causes of actions that exist in favor of this estate.  Moreover, the discovery to be conducted by the Trustee is precisely the type of discovery that was contemplated by this Court:

> We have an admission on (sic) the record that the principal of this Debtor took funds without permission.  There is no dialing back from that.  That requires an independent fiduciary to figure out exactly what happened and whether or not there are other creditors who need to be paid before the equity is permitted to receive proceeds from the Sale.

Exhibit 4 (*Transcript of Hearing Held on August 8, 2016,* at 16:9-15).

44.    Although this Motion is initially being made *ex parte*, any concerns regarding notice or due process are addressed by the fact that any entity served with a subpoena may contest the scope or issuance of that subpoena by means of application to this Court.  Courts in this district and others have recognized that a Bankruptcy Rule 2004 examination may be commenced by an *ex parte* motion.  *See, e.g., In re Kramer*, 492 B.R. 366, 372 (Bankr. E.D.N.Y. 2013) (noting "[t]he Rule 2004 Application could have been made *ex parte*");  *In re Hickman*, 151 B.R. 125, 128 (Bankr. N.D. Ohio 1993);  *In re Toft*, 453 B.R. 186, 198 (Bankr. S.D.N.Y. 2011) (noting that "an examination under Bankruptcy Rule 2004 may be commenced by an *ex parte* motion").

45.    Additionally, service of subpoenas by FedEx or any other means of service allowed under Bankruptcy Rule 9016 is appropriate, because personal service on all persons subpoenaed pursuant to the Proposed Order would be unduly burdensome, expensive and would delay the Trustee's efforts to obtain information essential to

13

uncovering whether causes of action exist that may significantly augment the Debtor's estate.

46.     Courts in the Second Circuit have authorized alternative service when such service was reasonably "calculated to provide timely actual notice." *Medical Diagnostic Imaging PLLC v. CareCore Nat. LLC*, Case No. 06 CIV 13156, 2008 WL 3833238, at *2 (S.D.N.Y. Aug. 15, 2008); *Cordius Trust v. Kummerfeld*, Case No. 99 CIV 3700 (DLC), 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000) (allowing alternative service by certified mail because "alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness"); *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (holding that Rule 45 of the Federal Rules of Civil Procedure (and by extension Bankruptcy Rule 9016) does not require personal service and that other service is permissible provided service was reasonably calculated to give actual notice).  Here, delivery by FedEx (or other means agreed to be the subpoenaed parties) is reasonably calculated to insure actual receipt by the persons subpoenaed pursuant to the Proposed Order.

### B.     Preservation of Documents is Essential to the Trustee's Ability to Administer the Estate

47.     The record in this case demonstrates that the Debtor and its members have no regard for the authority of this Court, the requirements of the Bankruptcy Code and Bankruptcy Rules, and that they and other parties may resist the Trustee's discovery efforts and, in doing so, may destroy Books and Records concerning the Debtor and its affairs.

48.     Consequently, the Proposed Order provides that any party receiving notice of an order granting this Motion and service of a subpoena issued by the Trustee be directed to preserve, and not destroy, Books and Records, whether kept

in physical or electronic form, of or concerning the Debtor or its affairs including, without limitation, the disposition of the Sale Proceeds and claims against the Debtor's estate.

49.    It is beyond question that all of the Books and Records constitute property of the estate pursuant to Bankruptcy Code section 541 or are otherwise discoverable under Rule 2004. *See In re Siskin*, No. 02-10373 SMB, 2011 WL 4899868, at *5 (Bankr. S.D.N.Y. Oct. 13, 2011) (holding that books and records are property of the estate); *see also 21AT Assocs. v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, No. 91 CIV. 1310 (MJL), 1992 WL 8335, at *1 (S.D.N.Y. Jan. 14, 1992) (affirming Bankruptcy Court holding that books and records are property of the debtor's estate pursuant to section 541(a) of the Bankruptcy Code). Those records will lead to discovery of documents and information concerning property of the Debtor's estate.

50.    Consequently, parties have an obligation to turn over all of the Books and Records to the Trustee pursuant to Bankruptcy Code section 542(e). By its terms, Bankruptcy Code section 542(e) requires the parties to preserve and turn over all Books and Records to the Trustee.

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee. *11 U.S.C. section 542(e)*.

51.    Quite clearly, the standards for injunctive relief are met here. A party seeking an injunction in the Second Circuit must show "(1) that it will suffer irreparable harm in the absence of an injunction and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [movant's] favor." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 108 (2d Cir. 2003) (citation and

15

quotations omitted);  *Adelphia Commc'ns Corp. v. Am. Channel LLC (In re Adelphia Commc'ns Corp.)*, No. 02-41729 (REG), 2006 WL 1529357, at *4 (Bankr. S.D.N.Y. June 5, 2006)."[4]

52.      Orders requiring the preservation of documents "are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication."  *Pueblo of Laguna v. United States,* 60 Fed. Cl. 133, 136 (2004). In *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, the court articulated three factors that should be considered in determining whether to issue an order to preserve documents:  (i) the level of concern for the continuing existence of documents absent a court order;  (ii) the risk of irreparable harm to the movant absent such an order;  and, (iii) the ability of the party (or parties) in possession of the evidence to preserve it.  220 F.R.D. 429, 433–34 (W.D. Pa. 2004).  Each of these factors weighs in favor of the issuance of a preservation order in this case.

53.      First, there can be no argument that the Books and Records constitute property of the Debtor's estate pursuant to Bankruptcy Code section 541 or material information that will lead to the discovery of property of this estate and claims in favor of the estate.

54.      Second, it requires no stretch of the imagination to anticipate that the Debtor, its members, or others who have received property of the estate may take

---

[4]    Additionally, to obtain an *ex parte* temporary restraining order, an applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition."  *See TKR Cable v. Cable City Corp.*, 267 F.3d 196, 198 (3d Cir. 2001); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.  Generally, to obtain a preliminary injunction, a party must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor." (internal citations and quotation marks omitted)).

steps to destroy documents that the Trustee needs to properly administer the estate. The Trustee should not have to shoulder that risk. An order to preserve the Books and Records is consistent with Bankruptcy Code section 542(e) and is necessary to safeguard the Trustee's ability to administer the estate, investigate claims, and uncover all relevant facts. This is precisely why the Court directed the appointment of a trustee.

55.     Third, should the integrity of the Books and Records be compromised, the Trustee's ability to properly administer the estate may be diminished. No remedy at law could compensate for the loss of the ability to investigate and litigate as an appropriate. Thus, an Order requiring records preservation is essential to prevent an irreparable injury.

56.     Finally, it cannot seriously be contended that a simple record preservation order would impose any undue technical, logistical, or financial burden on anyone. To the contrary, preserving the Books and Records, which constitutes property of the estate which must be turned over to the Trustee, should prove less of an effort than the steps an individual might otherwise take to purge his or her recorded information.

## C.     The Trustee Owns the Attorney-Client Privilege

57.     To the extent that an attorney-client privilege attaches to any of the Books and Records concerning communications between the Debtor and Carlebach, such attorney-client privilege now belongs to the Trustee, and he may waive the privilege so that all such Books and Records can be turned over to the Trustee.

58.     Upon conversion of a Chapter 11 case to one under Chapter 7, any attorney-client privilege as between a debtor and its attorney as to all matters concerning the administration of the Debtor's chapter 11 case while the debtor is a debtor in possession passes to the trustee. *See In re Bame*, 251 B.R. 367, 372-73, 375

17

(Bankr. D. Minn. 2000) (holding that any attorney-client privilege for post-petition, pre-

conversion communication passes to a trustee) (citing *Commodity Futures Trading*

*Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986) (1985)).[5]   For that reason it is "the

[t]rustee's privilege to waive or assert." *Id.* at 375; *see also SEC v. Ryan*, 747 F. Supp. 2d

355 (N.D.N.Y. 2010) (finding that an LLC entity is treated like a corporation for

purposes of attorney-client privilege and that the court-appointed fiduciary, as

successor in interest, controls the attorney-client privilege for the LLC).

59.     Moreover, the Trustee seeks information regarding the Debtor's

receipt or disbursement of estate property, professional fees accrued, and claims against

this estate.  All of that information was required to have been publicly disclosed by the

Debtor and would not be subject to any attorney-client privilege.  *Id.*  As bankruptcy

courts have explained:

> [i]n exchange for an automatic stay of creditor collection
> activity and potential discharge of certain debt, debtors are
> obligated to disclose all of their assets and liabilities…These
> disclosures are necessary to ensure that bankruptcy relief is
> accorded only to the honest and compliant debtor . . . . A
> debtor has no reasonable expectation that information will
> be kept confidential if it must be disclosed in bankruptcy
> filings, . . . and where the [d]ebtor has no reasonable
> expectation of confidentiality, the attorney-client privilege is
> unavailable.

*In re Eddy*, 304 B.R. 591, 596 (Bankr. D. Mass. 2004).

60.     "[T]he existence of an attorney-client relationship and the attorney

compensation arrangement accompanying that relationship have been held to be

outside the scope of the attorney-client privilege." *Id.*  Similarly, "the information

---

[5]     As the Supreme Court explained in *Weintraub*, "the attorney-client privilege is controlled, outside of
bankruptcy by a corporation's management," but in a bankruptcy case, the privilege is to be
controlled by the trustee who receives broad management authority over the debtor and is the "actor
whose duties most closely resemble those of management." *Weintraub,* 471 U.S. at 354.

disclosed to an attorney for the assembly of a bankruptcy petition and schedules does not fall within the scope of the attorney-client privilege." *Id.*

61.    The foregoing demonstrates that no party in possession of Books and Records, including the Debtor, its members or retained counsel, may withhold production and turnover of that recorded information based upon any claim of attorney-client privilege in favor of the Debtor, and that the Trustee, in his considered business judgment, may waive that privilege.  Ample cause also exists for the Court's direction that all parties preserve, and not destroy, the Books and Records, subject only to their turnover obligations pursuant to subpoenas issued by the Trustee.

## **RELIEF**

62.    Bankruptcy Rule 7065 specifically states "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)."  The Trustee asserts that Rule 65(c) does not apply to this request for the Provisional Relief.  In the event it is read to apply, the Trustee believes that the requirement is unwarranted under the circumstances and should be waived.[6]

---

[6]    The Trustee respectfully submits the relief sought here can be granted on application.  Numerous courts in this circuit have properly elected not to elevate form over substance when interested parties would receive sufficient due process protections (and the issues to be decided were relatively straightforward).  *See e.g., In re Altman*, 254 B.R. 509, 512 (D. Conn. 2000) ("[C]ourts have excused the lack of a formal adversarial proceeding to resolve disputed matters . . . with respect to entities who were parties to the proceedings and thus had notice, participated in the hearings and otherwise had effected opportunity to be heard."); *In re Metiom*, 301 B.R. 634, 639 (Bankr. S.D.N.Y.2003) (finding that when applicable, the requirements of Rule 7001 must be complied with, but "such compliance . . . should not require the elevation of form over substance to prejudice a party if the matter can proceed on the merits consistent with Part VII."); *In re Friedman*, 184 B.R. 883, 887 (Bankr. N.D.N.Y. 1994) ("[W]here the rights of the affected parties have been adequately protected and the parties have had an opportunity to be heard, form will not be elevated over substance . . . .").  The issues presented in this Motion are straightforward and do not require discovery or an adversary proceeding.

**NOTICE**

63.     The Trustee has not yet given notice of this Motion to the Debtor,

its manager, members, agents or representatives.  The Trustee contends that notice is

not appropriate as it might prompt some of the precise activity that the Trustee is

seeking to protect against with this Motion.  The Berger Declaration, which certifies the

foregoing regarding notice, is annexed hereto as Exhibit 3.

64.     Once entered, the Trustee will serve the Order by FedEx to:  (i) the

Debtor by (a) its counsel, David Carlebach, and (b) its members:  (A) James Guarino, (B)

Linda Guarino, (C) JV Guarino Profit Sharing Plan II, (D) Mary Guarino, and (E) 85-82

Elliot LLC;  (ii) Tarter Krinsky & Drogin LLP, counsel for 7th Street Development Corp.;

(iii) Fink & Zelmanovitz, PC, counsel for Strulovitch in connection with the Sale;  (iv) all

parties that have filed a notice of appearance in this case;  (v) the United States Trustee

for the Southern District of New York, Attn:  Brian S. Masumoto, Esq. and Andrew

Velez-Rivera, Esq. (Brian.Masumoto@usdoj.gov and Andy.Velez-Rivera@usdoj.gov);

and (vi) such other parties that the Trustee may determine may be in possession of

Books and Records (collectively, the "Notice Parties"), and he requests that such notice

be found to be good and sufficient notice of the Motion and the Initial Hearing.

65.     Upon entering the Order, there will be a temporary restraining

order that will last until the first hearing, at which the Trustee will request the entry of a

preliminary injunction.  The Trustee will also request that the Court set a hearing date

for the entry of a permanent injunction preventing the destruction of any of the Books

and Records covered by the temporary restraining order.

**WHEREFORE,** the Trustee respectfully requests entry of:  (i) the Order

(a) authorizing the Trustee to issue subpoenas for the production of Books and Records,

whether kept in physical or electronic form, and the examination of various persons and

20

entities, to obtain information concerning the acts, conduct, property and liabilities of

the Debtor, and other matters relating to the extent and nature of the Debtor's estate,

and (b) providing an immediate injunction that prohibits the destruction or alteration of

all books, records and documents concerning or otherwise evidencing the Debtor's

assets and financial affairs, scheduling the Initial Hearing to consider continuation of

the injunctive relief, and approving the form and manner of notice for the Initial

Hearing;  (ii) at the conclusion of the Initial Hearing, entering the Proposed Order,

continuing the Provisional Relief until a final hearing to consider a permanent

injunction;  (iii) at the conclusion of such final hearing, granting the Provisional Relief

sought by the Trustee on a final basis;  and (iv) granting such other and further relief as

the Court deems just and proper.

DATED:   New York, New York
              September 22, 2016

Respectfully submitted,

ALBERT TOGUT,
not individually but solely in his capacity as
Chapter 7 Interim Trustee of
199 East 7th Street LLC
By His Proposed Counsel,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/Neil Berger*
ALBERT TOGUT
NEIL BERGER
MINTA J. NESTER
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

**Exhibit 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |
|---|---|
| In re: | : Chapter 7 |
|  | : |
| 199 EAST 7TH STREET LLC, | : Case No. 14-13254 (SCC) |
|  | : |
| Debtor. | : |
|  | : |

_____

### ORDER AUTHORIZING TRUSTEE TO ISSUE
### SUBPOENAS AND OBTAIN TESTIMONY AND FOR INJUNCTIVE RELIEF

Upon the Trustee's *ex parte* application for relief (the "Motion")[1] by Albert
Togut, not individually but solely in his capacity as the Chapter 7 Interim Trustee (the
"Trustee") of 199 East 7th Street LLC (the "Debtor"), by his proposed attorneys, Togut,
Segal & Segal LLP (the "Togut Firm"), and the accompanying Declaration of Neil
Berger, Esq., dated September 22, 2016 (the "Berger Declaration"); and upon
consideration of the Motion and the Berger Declaration; and it appearing that the
emergency relief sought in the Motion is necessary and proper; and it appearing that
no further notice of this Order need be given; after due deliberation and sufficient
cause appearing therefor, it is hereby

**ORDERED**, that pursuant to Bankruptcy Rule 2004, the Trustee is now
authorized to issue subpoenas for the production of all books, records and documents
including all emails, text messages, computers and/or lap top computers, hard drives,
computer servers, back-up tapes and documents related to the Debtor or its property
concerning or otherwise evidencing the Debtor's assets and financial affairs (the "Books
and Records"), and to obtain deposition testimony consistent with Rule 9016 of the

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), concerning any asset, liability, duty, obligation, contract, transaction, transfer, or other issue related in any way to the Debtor and its financial affairs, and in doing so, the Trustee is authorized to waive any attorney-client privilege that may attach to any of the Books and Records or communication between the Debtor and its members and its retained counsel in this case pertaining to any communication or act concerning the period in which the Debtor's case was a Chapter 11 case and this Court to permit the Trustee to obtain such items;  and it is further

> **ORDERED**, that nothing contained herein constitutes a finding that the attorney-client privilege attaches to any particular document, communication or other form of information contained in the Books and Records;  and it is further

> **ORDERED**, that the Trustee shall serve a copy of the Order with any subpoena that he serves pursuant to the Order;  and it is further

> **ORDERED**, that subpoenas authorized by this Order may be served by the Trustee by FedEx or any other method of service permitted under Bankruptcy Rule 9016 or by other means agreed to by the subpoenaed parties;  and it is further

> **ORDERED,** that sufficient reason having been shown therefore, pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7065, pending entry of further Order by this Court, any recipient of this Order (and a subpoena issued pursuant to this Order) be, and they hereby are, enjoined and restrained from:  (a) concealing, deleting, destroying, or otherwise altering any Books and Records, whether physical or electronic, related to the Debtor or its property and such recipient shall preserve all such Books and Records subject only to such turnover obligations pursuant to a subpoena or a further order of this Court (the "<u>Provisional Relief</u>");  and it is further

2

**ORDERED**, that on or before the response deadline provided in the Trustee's subpoena, the Debtor, its members and attorneys shall provide: (i) written responses to each of the requests contained in the subpoena; and (ii) a written declaration pursuant to 28 U.S.C. § 1746, attesting under the penalty of perjury that: (i) none of the Books and Records have been altered, modified, deleted or otherwise destroyed; and (ii) the responding party has made a diligent search and effort to locate and produce the documents and information requested by the subpoena and that the written response as to each individual request contained in the subpoena is true and complete to the best of the responding party's knowledge and belief; and it is further

**ORDERED**, if any entity or person who receives a subpoena for the production of documents pursuant to this Order withholds any item on the basis of an asserted privilege, that entity is directed to provide a privilege log in accordance with Bankruptcy Rule 7026 to the Togut Firm, One Penn Plaza, Suite 3335, New York, New York 10119, Attn.: Neil Berger, Esq., so as to be received with the information production required by the subpoena, or at such time as mutually agreed to by the Trustee and the subpoenaed entity or person; and it is further

**ORDERED**, that any subpoena issued pursuant to this Order shall provide at least 7 business days notice to the recipient to provide the recipient an opportunity to object to the subpoena or to file any motion with the Court; and it is further

**ORDERED**, that a hearing to consider the continuance of the Provisional Relief sought in the Motion and the entry of a preliminary injunction shall be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, in

room 623, on September ___, 2016 at _____ a.m., or as soon thereafter as counsel may be heard;  and it is further

   **ORDERED**, that within one business day after entry of this Order, the Trustee shall serve a copy of the Motion and its exhibits and this Order by either overnight mail, hand delivery or electronic mail to the Notice Parties;  and it is further

   **ORDERED,** that objections, if any, to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court, shall set forth the name of the objector and the legal and factual grounds for the objection, and shall be filed with the Bankruptcy Court, with a courtesy copy delivered directly to Judge Chapman's Chambers and served upon:  (i) the Togut Firm, proposed counsel for the Trustee, One Penn Plaza, New York, New York 10119, Attn:  Neil Berger, Esq.;  (ii) the Law Offices of David Carlebach, Esq., bankruptcy attorneys for the Debtor, 55 Broadway, Suite 1902, New York, New York 10006, Attn:  David Carlebach, Esq.;  (iii) all parties that have filed a notice of appearance in this case;  and (iv) the United States Trustee for the Southern District of New York, Attn:  Brian S. Masumoto, Esq. and Andrew Velez-Rivera, Esq. (Brian.Masumoto@usdoj.gov and Andy.Velez-Rivera@usdoj.gov)  so as to be actually received by no later than __:00 p.m. on _____ (the "Objection Deadline");  and it is further

   **ORDERED**, that objections, if any, to the Motion which are not filed and served on or before the Objection Deadline shall be barred and forever waived;  and it is further

   **ORDERED,** that at the hearing to consider the preliminary injunction, the Court shall schedule a hearing for the entry of a permanent injunction consistent with the Provisional Relief;  and it is further

**ORDERED**, that pursuant to Bankruptcy Rule 7065, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived pending further order of the Court;  and it is further

**ORDERED**, that entry of this Order is without prejudice to the rights of the Trustee or any other party to apply for any other or further relief, including but not limited to further relief under Bankruptcy Rule 2004;  and it is further

**ORDERED**, that the Court shall retain jurisdiction to hear and determine any and all matters arising from the interpretation and/or implementation of this Order.

New York, New York at _____ .m.
September _____, 2016

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| In re: | : Chapter 7 |
|  | : |
| 199 EAST 7TH STREET LLC, | : Case No. 14-13254 (SCC) |
|  | : |
| Debtor. | : |
|  | : |
|  | : |

---

### ORDER SCHEDULING FINAL HEARING TO CONSIDER INJUNCTIVE RELIEF

Upon the application, dated September 22, 2016 (the "Motion")[1] [Dkt. No. ___] of Albert Togut, not individually but solely in his capacity as the Chapter 7 Interim Trustee (the "Trustee") in the above-captioned case, by his proposed attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), for an order:  (i) authorizing him to conduct discovery of the Debtor, its members, Carlebach, and non-debtor third parties concerning the extent and nature of the Debtor's estate, including, but not limited to, the disbursement of the Sale Proceeds, and directing that all persons who receive notice of an order granting this Motion and any subpoena issued by the Trustee to preserve, and not destroy, all books, records and documents including all emails, text messages, computers and/or lap top computers, hard drives, computer servers, back-up tapes and documents related to the Debtor or its property concerning or otherwise evidencing the Debtor's assets and financial affairs (the "Books and Records"), concerning the Debtor and its estate;  and (ii) scheduling a final hearing to consider the injunctive relief sought by the Trustee concerning the Books and Records;  and upon the record of the September ___, 2016 hearing held to consider the Motion;  and it appearing that good

---

[1]   Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

and sufficient notice of the Motion having been given in accordance with this Court's

September ___, 2016 Order [Dkt. No. ___], and that no further notice need to be given;

and good and sufficient cause for the relief sought in the Motion exists, it is hereby:

    **ORDERED**, that the Motion is granted to the extent provided for herein;

and it is further

    **ORDERED**, that the final hearing to consider the injunctive relief sought

by the Trustee will be held on _____, 2016 at _____, at which time the Court will

consider any objections to the relief sought;  and it is further

    **ORDERED**, that any objections to the Court granting the Provisional

Relief on a final basis must be (i) filed no later than _____, 2016 at _____ p.m. and (ii)

served upon:  (i) the Togut Firm, counsel for the Trustee, One Penn Plaza, New York,

New York 10119, Attn:  Neil Berger, Esq.;  (ii) the Law Offices of David Carlebach, Esq.,

bankruptcy attorneys for the Debtor, 55 Broadway, Suite 1902, New York, New York

10006, Attn:  David Carlebach, Esq.;  (iii) all parties that have filed a notice of

appearance in this case;  and (iv) the United States Trustee for the Southern District of

New York, Attn:  Brian S. Masumoto, Esq. and Andrew Velez-Rivera, Esq.

(Brian.Masumoto@usdoj.gov and Andy.Velez-Rivera@usdoj.gov);  so as to be actually

received by no later than __:00 p.m. on _____ (the "<u>Objection Deadline</u>");  and it is

further

    **ORDERED**, that objections, if any, to grant of the injunctive relief on a

final basis which are not filed and served on or before the Objection Deadline shall be

banned and forever waived;  and it is further

***(concluded on following page)***

2

**ORDERED**, that the Court shall retain jurisdiction to hear and determine

any and all matters arising from the interpretation and/or implementation of this

Order;  and it is further

Dated:   New York, New York
         September _____, 2016

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 3**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In re:                                    :    Chapter 7
                                          :
199 EAST 7TH STREET LLC,                  :    Case No. 14-13254 (SCC)
                                          :
                    Debtor.               :
                                          :
                                          :
_____           :

**DECLARATION OF NEIL BERGER, ESQ. IN
SUPPORT OF THE *EX PARTE* APPLICATION OF CHAPTER 7 INTERIM TRUSTEE**

Neil Berger, Esq. declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.      I am a Partner with the law firm of Togut, Segal & Segal LLP, proposed counsel to the Chapter 7 Interim Trustee (the "Trustee").

2.      I submit this Declaration in support of the Trustee's *ex parte* motion, which is filed contemporaneously herewith (the "Motion").[1]  The statements set forth herein are based upon my personal knowledge, belief and based upon my review of the documents filed on the docket that is maintained for the above-captioned case.

3.      On November 26, 2014 (the "Petition Date"), the above-captioned debtor (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      On the Petition Date, the Debtor owned the Shares and the leasee under the Proprietary Leases.

_____
[1]    Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Motion.

5.      On September 30, 2015, the Court approved the sale of the Debtor's Shares and the Debtor's assumption and assignment of the Proprietary Leases.  The Sale Order limited the payments that could be made from the Sale Proceeds.

6.      The Debtor did not advise the Court, the U.S. Trustee or any party in interest that the Sale to Strulovitch had been consummated until nearly nine months after the Sale Order had been entered.

7.      Moreover, the Debtor failed to file monthly operating reports that would have disclosed its receipt of the contract deposits that it received in connection with the sale of the Shares and its disbursements of Sale Proceeds without notice or authority from the Court.

8.      On May 10, 2016, the U.S. Trustee filed his *Motion for an Order Dismissing Chapter 11 Case, or Alternatively, Converting the Case to One Under Chapter 7* [Dkt. No. 52] recommending dismissal of this case.  Only then did the Debtor inform the U.S. Trustee that the Sale had closed, and that the net proceeds of the Sale had been transferred to the Debtor's "equity holders."

9.      In its response to the Conversion Motion and at the Conversion Hearing, the Debtor's counsel advised the Court that he transferred the Sale Proceeds to the Debtor and that the Debtor disbursed those funds to the Debtor's "equity holders." Those "equity holders" include the Debtor's managing member and his family members.

10.     During the Conversion Hearing, the Court directed that the Sale Proceeds that had been disbursed without Court authority be returned to the estate together with a detailed accounting.  As of the dated hereof, the Debtor has failed to comply with the Court's direction.

2

11.     The Court entered the Amended Conversion Order on September 8, 2016, and on that same day, Albert Togut was appointed as Chapter 7 Interim Trustee of the Debtor [Dkt. No. 66].  The Conversion Order directed the Debtor to turn over the Sale Proceeds to the Trustee.  As of the date hereof, the Debtor has not complied with the Conversion Order.

12.     The record in this case demonstrates that the Debtor has repeatedly ignored Orders of this Court, most recently by failing to comply with the Court's instructions during the Conversion Hearing and the Conversion Order.  Moreover, for almost a year, the Debtor repeatedly failed to make required disclosures and, as a result, concealed its improper conduct and unauthorized transfers.

13.     Recorded information important to the Trustee's investigation may be subject to destruction or manipulation without his consent.  The Trustee has concluded that notice prior to entry of an injunction and the delays associated with a hearing may allow, and could accelerate, improper efforts to destroy some of the very documents the Trustee is asking this Court to help him preserve.

14.     Should the integrity of the recorded information be compromised, the Trustee's ability to properly administer the estate may be diminished.  No remedy at law could compensate for the loss of the ability to investigate and litigate as an appropriate.  Thus, an Order requiring document preservation is essential to prevent an irreparable injury

15.     Entry of a temporary injunction, without notice on an expedited basis on the facts presented in Motion, is in the best interests of the Debtor's estate and its creditors, and will preserve and protect potential evidence necessary for the Trustee's ongoing investigation.

3

16.    No previous application for similar relief has been made.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is

true and correct.

Executed on September __, 2016 in New York, New York

_/s/ Neil Berger_____
NEIL BERGER

**Exhibit 4**

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   199 EAST 7TH STREET LLC,          Case No. 14-13254-scc

8

9           Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  U.S. Bankruptcy Court

14                  One Bowling Green

15                  New York, New York

16

17

18                  August 8, 2016

19                  11:03 AM

20

21  B E F O R E :

22  HON SHELLEY C. CHAPMAN

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1     Hearing re:  Doc #51 Motion to Dismiss Case, or, to Convert

2     Case to Chapter 7 filed by Brian Shoichi Masumoto on behalf

3     of United States Trustee

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     Transcribed by:  Dawn South

```
 1   A P P E A R A N C E S :

 2   CARLEBACH LAW GROUP

 3        Attorney for the Debtor

 4        55 Broadway

 5        Suite 1902

 6        New York, NY 10006

 7

 8   BY:  DAVI CARLEBACH, ESQ.

 9

10   U.S. DEPARTMENT OF JUSTICE

11        Attorney for the U.S. Trustee

12        U.S. Federal Office Building

13        201 Varick Street

14        Room 1006

15        New York, NY 10014

16

17   BY:  BRIAN MASUMOTO, ESQ.

18

19

20

21

22

23

24

25
```

Page 4

1                    P R O C E E D I N G S

2            THE COURT:  Good morning.  Please have a seat.

3    How are you?

4            MR. MASUMOTO:  Good morning, Your Honor.

5            THE COURT:  Mr. Masumoto.

6            MR. MASUMOTO:  Good morning, Your Honor.  Brian

7    Masumoto for the Office of the United States Trustee.

8            Your Honor, this is an adjourned hearing on motion

9    for -- by the United States Trustee to convert or dismiss

10   this case.

11           Just as part of background.  There was an initial

12   hearing in June at which time we had some concerns about the

13   accounting for sale, which wasn't reflected on the docket.

14   I think the hearing was subsequently adjourned to July, then

15   adjourned until today's date.

16           Our office didn't receive any response, so on

17   Thursday we filed a supplemental declaration.  Debtors --

18   the debtors have filed a response this morning, I think it

19   was filed at about 6:20 this morning.  So we've had some

20   time to review the document, but we still have some

21   outstanding questions.

22           I will defer to Counsel at this point --

23           THE COURT:  All right.  Well just -- I just want

24   to for the sake of the record go through the actual

25   chronology of events, and you have to go back to quite a

Page 5

1    long time into the past, because this case has not gone

2    smoothly from the very beginning, including, if I'm

3    remembering correctly, the unilateral cancellation of an

4    auction.

5            But with respect to the current motion to dismiss

6    or convert it was filed on May 10th.

7            MR. MASUMOTO:  That's correct.

8            THE COURT:  June 28th was the first hearing, and a

9    deadline was set for debtor's counsel to file papers by

10   July 13th, and I directed that the debtor needed to become

11   current with monthly operating reports by the subsequent

12   hearing, which was then set for July 26th.  Nothing was

13   filed.  No papers, no monthly operating reports.

14           On the 25th of July Mr. Carlebach called to

15   request an adjournment on account of illness and provided a

16   doctor's note.  We set a new hearing date, which is today,

17   with a new objection deadline of August 1st, and the papers

18   were filed this morning at I don't know -- I don't -- I'm

19   not reading them.  I'm not reading them.

20           No -- as far as I can tell virtually no order that

21   I've ever entered in this case has been followed to the

22   letter or even close to the letter.  I have no basis for

23   believing virtually anything that's said.  And I don't know

24   where all the money is.  I don't know who all the creditors

25   were.  I don't know why there isn't a plan.  I just don't

1   understand why I should permit a case to be conducted this

2   way, and I won't.  I mean I'm answering my own question.  I

3   will not permit a case to be conducted this way.

4          So a dismissal, Mr. Masumoto, as far as I'm

5   concerned, would just implicitly condone the conduct of a

6   case this way, that you can file a case here, essentially do

7   what you want, ignore court orders, ignore guidelines,

8   ignore rules, and then just dismiss it when you're done.

9   That's not the way it works.

10          MR. MASUMOTO:  I understand, Your Honor, and in

11   fact in our supplemental declaration we did recommend that

12   this case be converted under the circumstances, and we

13   certainly agree with Your Honor's position regarding the

14   manner in which the case was conducted.

15          And again, as I said, we filed our supplemental

16   declaration without the benefit of today's filing, so we

17   didn't know some of the facts, but even the briefer review

18   that we've had of the response that we've had today are of

19   some serious concerns as to the disposition of assets.

20          And I guess I would like to advise the Court, this

21   morning when we got the response and we did make a call to

22   Gabriella Cachuchi (ph) with the New York City Corporation

23   Office to confirm, it was the first time we saw the title

24   company's attachment and to confirm whether the transfer

25   taxes were paid.

1           I just received an email about three minutes

2     before 11 o'clock indicating that as far as -- Ms. Cachuchi

3     had contacted the title company, Infinity Land Services, and

4     according to her conversation transfer taxes have not been

5     paid in this case, that the company -- that the title

6     company is holding checks but have insufficient funds to you

7     make the payments I guess pursuant to that agreement.

8           Accordingly, you know, as indicated in our

9     supplemental declaration, and notwithstanding the response

10    that was filed, we still believe that a motion to convert

11    would be appropriate in this case.

12           THE COURT:  Mr. Carlebach?

13           MR. CARLEBACH:  This case was filed because of a

14    dispute between the co-op board and the debtor, who was the

15    owner of four co-op units in the property 199 East 7th

16    Street.

17           The dispute was successfully resolved in this

18    court.  There was an objection to claim filed.  There was

19    extensive negotiations, discovery that was taken on that,

20    and it was successfully resolved in this court.  And that

21    was the principal purpose of the filing was to sell the

22    asset and at the same time resolve the dispute with the co-

23    op.

24           The sale -- we initially had a stalking horse

25    offer of a million dollars.

Page 8

1           THE COURT:  Mr. Carlebach, I'm really not

2    interested in all of that.  I'm interested in understanding

3    why you think it's acceptable for you to have ignored every

4    deadline that was set, never to have monthly operating

5    reports, and allowed funds to be disbursed other than

6    pursuant to a plan or dismissal order and made even worse by

7    the suggestion that transfer taxes weren't paid.

8           MR. CARLEBACH:  I will respond directly to that

9    point.

10           The debtor insisted that the proceeds of sale be

11    paid directly into the DIP account.  Everything -- I was

12    so --

13           THE COURT:  And then he took it.  And then he took

14    the money.

15           MR. CARLEBACH:  And then he took the money.

16           THE COURT:  Okay.

17           MR. CARLEBACH:  So that's where --

18           THE COURT:  You know what that is?  That's a

19    bankruptcy crime.  So --

20           MR. CARLEBACH:  Your Honor, may I complete a

21    sentence?  I mean I'm not being -- the case -- there was a

22    closing, we gave the title company the monies to pay the

23    transfer tax, I don't know why they haven't done it, that's

24    something that they're -- you know, the closing costs

25    included the transfer tax, because the debtor didn't want to

Page 9

```
 1    do a plan.  I gave the debtor the option of doing a plan.

 2    You know, often as attorneys we --

 3               THE COURT:  Wait, wait, wait, wait.  What do you

 4    mean that you gave the debtor an option of doing a plan?

 5    You're in Chapter 11.

 6               MR. CARLEBACH:  I understand.  There are ways to

 7    exit chapter --

 8               THE COURT:  Yes, I'm well aware of that,

 9    Mr. Carlebach.

10               MR. CARLEBACH:  And what I'm trying to say is that

11    the debtor took -- you know, I explained to the debtor that

12    they could save the transfer tax and other things, but the

13    debtor did not want to incur the costs of a plan, and you

14    know, the intent was to do a structured dismissal where we

15    would -- and again, the creditors in this case, as I

16    understand it, are de minimis or non-existent.  The only

17    creditor that was really -- other than an attorney of the

18    debtor -- the only real creditor in the case was the co-op

19    board, that's why the case was filed.

20               In the sale order there was specific instruction

21    to pay the co-op board, who we paid, to pay the stalking

22    horse, who we paid.  All the disbursements were made

23    precisely according to Your Honor's order.  Everything was

24    disbursed.

25               Where communications seemed to have broken down
```

1    when pursuant to the sale order everything went into the DIP

2    account.  The debtor on its own believed that the case was

3    over and it was now okay for it to make distributions to

4    equity.  I wasn't told about that.  I didn't find out about

5    it until in response to the U.S. Trustee's motion for the

6    operating reports I asked the debtor to send me the bank

7    statements and I looked at them and I saw that they had made

8    distribution to equity, and -- which is obviously

9    inappropriate.

10            But again, the debtor's intention was not the take

11   any money, they understood --

12            THE COURT:  No, the debtor took the money.

13            MR. CARLEBACH:  I understand.

14            THE COURT:  Let's be perfectly clear.  The debtor

15   took the money.  So either you didn't give the debtor proper

16   advice, or you gave the debtor advice that he ignored.  And

17   I --

18            MR. CARLEBACH:  I didn't give the debtor any

19   advice.  What happened was we filed -- we complied with the

20   sale order, the monies went into the debtor's account,

21   immediately thereafter, without consulting counsel, the

22   debtor went ahead and made distributions.  So I would never

23   tell a debtor to take any kind of distribution without court

24   order.

25            THE COURT:  All right.  Well --

1          MR. CARLEBACH:  It was a break down in

2   communication, and you know, again, this debtor -- I don't

3   know if you know Mr. Gorino (ph), he's a very forceful type

4   personality.  Typically all the sale proceeds would go into

5   my account.  He insisted that the sale proceeds go to the

6   DIP account, and I --

7          THE COURT:  Does he have any sale proceed right

8   now as we're speaking right this minute?

9          MR. CARLEBACH:  Well he distributed them to the

10  equity, which are his family members.  I mean if those

11  monies have to come back into the DIP --

12          THE COURT:  Those monies have to come back into

13  the DIP account.

14          MR. CARLEBACH:  I will instruct --

15          THE COURT:  And I am going to enter an order to

16  that effect.  And if they do not come back into the DIP

17  account I will have a show cause hearing why he will not be

18  held in contempt.

19          MR. CARLEBACH:  Understood.  I --

20          THE COURT:  So I don't care how forceful he is,

21  you don't get to do that.

22          MR. CARLEBACH:  I --

23          THE COURT:  I don't care how he gets the money

24  back, I don't care if he puts the money back himself, the

25  money goes back into the account, I'm converting the case to

Page 12

1    Chapter 7, a Chapter 7 Trustee is going figure out exactly

2    what happened and whether there are other creditors.

3              MR. CARLEBACH:  Your Honor, I would ask you not to

4    do that at this point, because what I'm saying to you here

5    is that if you look at the accounting I gave to the U.S.

6    Trustee every document --

7              THE COURT:  Mr. Carlebach, I need to stop you, I'm

8    sorry, I know you're quite frustrated with me.  You've made

9    a record here today that without permission and without

10   advice the principal of the debtor took the money without

11   there being a plan or a dismissal order and paid it out to

12   his family.  We need go no further.

13             This debtor is not permitted to remain in control

14   of this case, nor frankly are you.  You ignored several

15   deadlines, you -- it's unclear to me what advice you did or

16   did not give, but we are where we are, which is that the

17   money is gone, we have an indication that the transfer taxes

18   aren't paid.  To this day we don't know who the other

19   creditors may be.  It's just not the way it works.

20             MR. CARLEBACH:  Your Honor, it's not that I'm

21   frustrated with you, it's just that it -- you know, a lot of

22   it is a question of perspective, and my --

23             THE COURT:  Yeah, the perspective -- my

24   perspective is you have to obey the law.  That's my

25   perspective, it's non-negotiable.

Page 13

1            MR. CARLEBACH:  And we have obeyed the law.

2            THE COURT:  You have not obeyed the law.  You have

3    not filed monthly operates reports, you have not filed

4    papers pursuant to any deadlines that I said.  You didn't

5    conduct the auction in accordance with the order that I

6    entered.  You just have done what you wanted and your client

7    has done what he wanted.  And I'm not going to stand for it.

8            MR. CARLEBACH:  Well I don't want to -- I don't

9    think that -- this case was a resounding economic success.

10   The issue of the notice and the order was once again -- I

11   believed that the order provided for notice of postponement

12   of sale and we had an issue whether that included

13   cancellation or not.

14           Once again, the debtor got an offer, the stalking

15   horse was a million, the debtor got an offer almost double

16   that and made an economic decision that it made sense not to

17   go forward with the auction.

18           Perhaps I should have made an application to the

19   Court on that, and it was my intention to get the Court's

20   direction on that --

21           THE COURT:  That's -- Mr. Carlebach --

22           MR. CARLEBACH:  -- but Your Honor's view that I am

23   disrespectful or disobey this Court's order is just not the

24   case.

25           I've been practicing law 27 years.  There is no

Page 14

1  other court that views me as somebody who is disrespectful.

2  I'm not sure what it is that I've done which has brought

3  upon Your Honor's ire, and perhaps I need to do things

4  differently, but I look at this case as I did other cases as

5  being a resounding economic success.

6         We sold the property.  We resolved the co-op

7  claim.  We disbursed the proceeds perhaps not in accordance

8  with a court order.

9         To put in an extra layer of administrative expense

10 now at this juncture of the case makes no sense.

11        THE COURT:  Well, Mr. Carlebach --

12        MR. CARLEBACH:  What I would -- if I could just --

13        THE COURT:  Mr. Carlebach, you will stop talking

14 now.

15        MR. CARLEBACH:  Can I --

16        THE COURT:  You will stop talking now.

17        First of all, if I am the only judge who finds it

18 troubling that you don't obey the rules of this Court and

19 the orders issued by this Court then so be it.  You do not

20 get to conduct a case the way you want to in your judgment

21 without obeying the rules and the orders of this Court.

22        So if you want to characterize me in a way that

23 you have go right ahead, I'm not going to engage in that

24 kind of an unseemly debate with you.  If you want to

25 characterize what I'm expressing to you as ire as opposed to

Page 15

1    simply making factual descriptions of how nothing in this

2    case has gone the way that it should have.  Number one.

3            Number two, the fact that a case is an economic

4    success that's wonderful, that doesn't entitle the equity

5    holder to make a decision on his own to distribute proceeds

6    to himself or his family.

7            So if we're going to get into the notion of 27

8    years, I've been at this even longer, and I have in fact

9    already ruled, I'm not going to change my ruling, I'm going

10   to ask Mr. Masumoto that you submit an order to me directing

11   that the funds be returned to the DIP account and directing

12   the appointment of a Chapter 7 Trustee.

13           If the funds are not returned within -- by the --

14   I will give you seven days -- so by the close of business on

15   August 15th all funds, along with an accounting, need to be

16   returned to the account, and if they are not then I will set

17   a show cause hearing why the principal of the debtor should

18   not be held in contempt.

19           MR. CARLEBACH:  May I say one more thing, Your

20   Honor?

21           THE COURT:  Not if it's in the nature of telling

22   me why I should change my mind, Mr. Carlebach.

23           MR. CARLEBACH:  I want to propose an alternative

24   that to stay the appointment of the trustee pending the

25   United States Trustee's review of the records I've given

1   them.  If the United States Trustee still believes that the

2   appointment of a trustee is appropriate I won't oppose it.

3   But at the very minimum before we add on another

4   administrative layer of expense to a case which is

5   fundamentally resolved, even if there were -- however we're

6   going to characterize --

7            THE COURT:  Mr. Carlebach, the answer is no, I

8   said don't reargue, I've ruled, you did.

9            We have an admission of the record that the

10  principal of this debtor took funds without permission.

11  There is no dialing back from that.  That requires an

12  independent fiduciary to figure out exactly what happened

13  and whether or not there are other creditors who need to be

14  paid before the equity is permitted to receive proceeds from

15  the sale.

16           MR. MASUMOTO:  Excuse me, Your Honor, if I may,

17  just for clarification purposes.

18           THE COURT:  Just to be clear, Mr. Carlebach, this

19  has been pending for months.  You decided on your own to

20  submit papers very early this morning.  You may be busy, I

21  betcha I'm busier.

22           MR. CARLEBACH:  I have been --

23           THE COURT:  And what --

24           MR. CARLEBACH:  -- I've really been -- Your Honor,

25  I married off a child, first child I married off in mid-July

1    and I was really sick for the last two to three weeks, I had

2    bronchitis.  I just couldn't get to things.  I didn't want

3    to ask -- perhaps I should have asked for another

4    adjournment, but I've been really --

5            THE COURT:  I'm sorry to hear that you were sick,

6    this motion to dismiss was filed in May, the first hearing

7    was on June 28th.  So none of that really is persuasive to

8    me, and I believe that it confirms my view that you have

9    little, if any, respect for the rule of law the way I apply

10   it in this court.  So we are where we are.

11           Mr. Masumoto?

12           MR. MASUMOTO:  Your Honor, the papers that were

13   filed this morning indicate that on February 28th of this

14   year a transfer in the amount of $30,000 was paid to

15   Mr. Carlebach, so I would request that those funds also be

16   returned to the DIP account.  I assume that the 30,000 was

17   in lieu of legal fees for which the order is not approved --

18           MR. CARLEBACH:  The sale order required the debtor

19   to keep with the debtor -- keep with counsel the amount of

20   my legal fees and other expenses.  The debtor insisted at

21   the closing that I give every last penny of the proceeds to

22   the DIP account, which I did, and I've showed the check.

23           I asked the debtor to return those funds, which

24   would be my legal fees, subject to a fee application before

25   this Court, but that once again was in conformance with your

Page 18

1   order, which says that the proceeds of sale -- I quoted it

2   in my papers -- the proceeds of sale should be put in the

3   DIP account less legal fees, and my estimation was $30,000.

4           THE COURT:  Every penny better be accounted for.

5   You don't get paid a dime until further order of this Court.

6           Mr. Masumoto, I'm going to have to put the burden

7   on you to try to get this house in order, and perhaps once a

8   trustee is appointed that person can assist as well.

9           MR. MASUMOTO:  Very well, Your Honor.  We will --

10           THE COURT:  There is no application for --

11           MR. CARLEBACH:  I have not made that application

12   yet, but it was my intention to do so.

13           THE COURT:  All right.

14           MR. MASUMOTO:  I will submit an order --

15           THE COURT:  Okay.

16           MR. MASUMOTO:  -- converting the case.

17           THE COURT:  Circulate it to Mr. Carlebach before

18   you send it to us.  Thank you very much.

19           MR. MASUMOTO:  Thank you.

20           THE COURT:  Have a good day.

21       (Whereupon these proceedings were concluded at 11:24

22   AM)

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                                      PAGE

5    Doc #51 Motion to Dismiss Case, or, to Convert Case

6    to Chapter 7 filed by Brian Shoichi Masumoto on        11

7    behalf of United States Trustee                         15

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    _____

7    Dawn South

8    AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12   Date:  August 9, 2016

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501

| 1 | |
| --- | --- |
| **10006** 3:6 | |
| **10014** 3:15 | |
| **1006** 3:14 | |
| **10th** 5:6 | |
| **11** 7:2 9:5 19:6 | |
| **11501** 20:25 | |
| **11:03** 1:19 | |
| **13th** 5:10 | |
| **14-13254** 1:7 | |
| **15** 19:7 | |
| **15th** 15:15 | |
| **1902** 3:5 | |
| **199** 1:7 7:15 | |
| **1st** 5:17 | |

| 2 |
| --- |
| **201** 3:13 |
| **2016** 1:18 20:12 |
| **25th** 5:14 |
| **26th** 5:12 |
| **27** 13:25 15:7 |
| **28th** 5:8 17:7,13 |

| 3 |
| --- |
| **30,000** 17:14,16 18:3 |
| **300** 20:24 |
| **330** 20:23 |

| 4 |
| --- |
| **408** 20:8 |

| 5 |
| --- |
| **51** 2:1 19:5 |
| **55** 3:4 |

| 6 |
| --- |
| **6:20** 4:19 |

| 7 |
| --- |
| **7** 2:2 12:1,1 15:12 19:6 |
| **7th** 1:7 7:15 |

| 8 |
| --- |
| **8** 1:18 |

| 9 |
| --- |
| **9** 20:12 |

**a**

**aaert** 20:8
**acceptable** 8:3
**account** 5:15 8:11 10:2,20 11:5,6,13 11:17,25 15:11,16 17:16,22 18:3
**accounted** 18:4
**accounting** 4:13 12:5 15:15
**accurate** 20:4
**actual** 4:24
**add** 16:3
**adjourned** 4:8,14 4:15
**adjournment** 5:15 17:4
**administrative** 14:9 16:4
**admission** 16:9
**advice** 10:16,16,19 12:10,15
**advise** 6:20
**agree** 6:13
**agreement** 7:7
**ahead** 10:22 14:23
**allowed** 8:5
**alternative** 15:23
**amount** 17:14,19
**answer** 16:7
**answering** 6:2
**application** 13:18 17:24 18:10,11
**apply** 17:9
**appointed** 18:8
**appointment** 15:12 15:24 16:2
**appropriate** 7:11 16:2
**approved** 17:17
**asked** 10:6 17:3,23
**asset** 7:22
**assets** 6:19
**assist** 18:8
**assume** 17:16
**attachment** 6:24

**attorney** 3:3,11 9:17
**attorneys** 9:2
**auction** 5:4 13:5,17
**august** 1:18 5:17 15:15 20:12
**aware** 9:8

**b**

**b** 1:21
**back** 4:25 11:11,12 11:16,24,24,25 16:11
**background** 4:11
**bank** 10:6
**bankruptcy** 1:1,13 1:23 8:19
**basis** 5:22
**beginning** 5:2
**behalf** 2:2 19:7
**believe** 7:10 17:8
**believed** 10:2 13:11
**believes** 16:1
**believing** 5:23
**benefit** 6:16
**betcha** 16:21
**better** 18:4
**board** 7:14 9:19,21
**bowling** 1:14
**break** 11:1
**brian** 2:2 3:17 4:6 19:6
**briefer** 6:17
**broadway** 3:4
**broken** 9:25
**bronchitis** 17:2
**brought** 14:2
**building** 3:12
**burden** 18:6
**busier** 16:21
**business** 15:14
**busy** 16:20

**c**

**c** 1:22 3:1 4:1 20:1,1
**cachuchi** 6:22 7:2
**call** 6:21

**called** 5:14
**cancellation** 5:3 13:13
**care** 11:20,23,24
**carlebach** 3:2,8 5:14 7:12,13 8:1,8 8:15,17,20 9:6,9,10 10:13,18 11:1,9,14 11:19,22 12:3,7,20 13:1,8,21,22 14:11 14:12,13,15 15:19 15:22,23 16:7,18,22 16:24 17:15,18 18:11,17
**case** 1:7 2:1,2 4:10 5:1,21 6:1,3,6,12 6:14 7:5,11,13 8:21 9:15,18,19 10:2 11:25 12:14 13:9,24 14:4,10,20 15:2,3 16:4 18:16 19:5,5
**cases** 14:4
**cause** 11:17 15:17
**certainly** 6:13
**certified** 20:8
**certify** 20:3
**cet** 20:8
**change** 15:9,22
**chapman** 1:22
**chapter** 2:2 9:5,7 12:1,1 15:12 19:6
**characterize** 14:22 14:25 16:6
**check** 17:22
**checks** 7:6
**child** 16:25,25
**chronology** 4:25
**circulate** 18:17
**circumstances** 6:12
**city** 6:22
**claim** 7:18 14:7
**clarification** 16:17
**clear** 10:14 16:18
**client** 13:6
**close** 5:22 15:14
**closing** 8:22,24 17:21

come   11:11,12,16
communication
  11:2
communications
  9:25
company   7:3,5,6
  8:22
company's   6:24
complete   8:20
complied   10:19
concerned   6:5
concerns   4:12 6:19
concluded   18:21
condone   6:5
conduct   6:5 13:5
  14:20
conducted   6:1,3,14
confirm   6:23,24
confirms   17:8
conformance   17:25
consulting   10:21
contacted   7:3
contempt   11:18
  15:18
control   12:13
conversation   7:4
convert   2:1 4:9 5:6
  7:10 19:5
converted   6:12
converting   11:25
  18:16
corporation   6:22
correct   5:7
correctly   5:3
costs   8:24 9:13
counsel   4:22 5:9
  10:21 17:19
country   20:23
court   1:1,13 4:2,5
  4:23 5:8 6:7,20
  7:12,18,20 8:1,13
  8:16,18 9:3,8 10:12
  10:14,23,25 11:7,12
  11:15,20,23 12:7,23
  13:2,19,21 14:1,8
  14:11,13,16,18,19
  14:21 15:21 16:7,18

16:23 17:5,10,25
  18:4,5,10,13,15,17
  18:20
court's   13:19,23
creditor   9:17,18
creditors   5:24 9:15
  12:2,19 16:13
crime   8:19
current   5:5,11

**d**

d   4:1 19:1 20:8
date   4:15 5:16
  20:12
davi   3:8
dawn   2:25 20:3,7
day   12:18 18:20
days   15:14
de   9:16
deadline   5:9,17 8:4
deadlines   12:15
  13:4
debate   14:24
debtor   1:9 3:3 5:10
  7:14 8:10,25 9:1,4
  9:11,11,13,18 10:2
  10:6,12,14,15,16,18
  10:22,23 11:2 12:10
  12:13 13:14,15
  15:17 16:10 17:18
  17:19,20,23
debtor's   5:9 10:10
  10:20
debtors   4:17,18
decided   16:19
decision   13:16 15:5
declaration   4:17
  6:11,16 7:9
defer   4:22
department   3:10
descriptions   15:1
dialing   16:11
differently   14:4
dime   18:5
dip   8:11 10:1 11:6
  11:11,13,16 15:11
  17:16,22 18:3

directed   5:10
directing   15:10,11
direction   13:20
directly   8:8,11
disbursed   8:5 9:24
  14:7
disbursements   9:22
discovery   7:19
dismiss   2:1 4:9 5:5
  6:8 17:6 19:5
dismissal   6:4 8:6
  9:14 12:11
disobey   13:23
disposition   6:19
dispute   7:14,17,22
disrespectful   13:23
  14:1
distribute   15:5
distributed   11:9
distribution   10:8,23
distributions   10:3
  10:22
district   1:2
doc   2:1 19:5
docket   4:13
doctor's   5:16
document   4:20 12:6
doing   9:1,4
dollars   7:25
double   13:15

**e**

e   1:21,21 3:1,1 4:1,1
  19:1 20:1
early   16:20
east   1:7 7:15
economic   13:9,16
  14:5 15:3
effect   11:16
either   10:15
electronic   20:8
email   7:1
engage   14:23
enter   11:15
entered   5:21 13:6
entitle   15:4
equity   10:4,8 11:10
  15:4 16:14

esq   3:8,17
essentially   6:6
estimation   18:3
events   4:25
exactly   12:1 16:12
excuse   16:16
existent   9:16
exit   9:7
expense   14:9 16:4
expenses   17:20
explained   9:11
expressing   14:25
extensive   7:19
extra   14:9

**f**

f   1:21 20:1
fact   6:11 15:3,8
facts   6:17
factual   15:1
family   11:10 12:12
  15:6
far   5:20 6:4 7:2
february   17:13
federal   3:12
fee   17:24
fees   17:17,20,24
  18:3
fiduciary   16:12
figure   12:1 16:12
file   5:9 6:6
filed   2:2 4:17,18,19
  5:6,13,18 6:15 7:10
  7:13,18 9:19 10:19
  13:3,3 17:6,13 19:6
filing   6:16 7:21
find   10:4
finds   14:17
first   5:8 6:23 14:17
  16:25 17:6
followed   5:21
forceful   11:3,20
foregoing   20:3
forward   13:17
four   7:15
frankly   12:14
frustrated   12:8,21

**fundamentally** 16:5
**funds** 7:6 8:5 15:11
  15:13,15 16:10
  17:15,23
**further** 12:12 18:5

**g**

**g** 4:1
**gabriella** 6:22
**give** 10:15,18 12:16
  15:14 17:21
**given** 15:25
**go** 4:24,25 11:4,5
  12:12 13:17 14:23
**goes** 11:25
**going** 11:15 12:1
  13:7 14:23 15:7,9,9
  16:6 18:6
**good** 4:2,4,6 18:20
**gorino** 11:3
**green** 1:14
**group** 3:2
**guess** 6:20 7:7
**guidelines** 6:7

**h**

**happened** 10:19
  12:2 16:12
**hear** 17:5
**hearing** 2:1 4:8,12
  4:14 5:8,12,16
  11:17 15:17 17:6
**held** 11:18 15:18
**holder** 15:5
**holding** 7:6
**hon** 1:22
**honor** 4:4,6,8 6:10
  8:20 12:3,20 15:20
  16:16,24 17:12 18:9
**honor's** 6:13 9:23
  13:22 14:3
**horse** 7:24 9:22
  13:15
**house** 18:7

**i**

**ignore** 6:7,7,8
**ignored** 8:3 10:16
  12:14

**illness** 5:15
**immediately** 10:21
**implicitly** 6:5
**inappropriate** 10:9
**included** 8:25 13:12
**including** 5:2
**incur** 9:13
**independent** 16:12
**indicate** 17:13
**indicated** 7:8
**indicating** 7:2
**indication** 12:17
**infinity** 7:3
**initial** 4:11
**initially** 7:24
**insisted** 8:10 11:5
  17:20
**instruct** 11:14
**instruction** 9:20
**insufficient** 7:6
**intent** 9:14
**intention** 10:10
  13:19 18:12
**interested** 8:2,2
**ire** 14:3,25
**issue** 13:10,12
**issued** 14:19

**j**

**judge** 1:23 14:17
**judgment** 14:20
**july** 4:14 5:10,12,14
  16:25
**juncture** 14:10
**june** 4:12 5:8 17:7
**justice** 3:10

**k**

**keep** 17:19,19
**kind** 10:23 14:24
**know** 5:18,23,24,25
  6:17 7:8 8:18,23,24
  9:2,11,14 11:2,3,3
  12:8,18,21

**l**

**land** 7:3
**law** 3:2 12:24 13:1,2
  13:25 17:9

**layer** 14:9 16:4
**legal** 17:17,20,24
  18:3 20:22
**letter** 5:22,22
**lieu** 17:17
**little** 17:9
**llc** 1:7
**long** 5:1
**longer** 15:8
**look** 12:5 14:4
**looked** 10:7
**lot** 12:21

**m**

**making** 15:1
**manner** 6:14
**married** 16:25,25
**masumoto** 2:2 3:17
  4:4,5,6,7 5:7 6:4,10
  15:10 16:16 17:11
  17:12 18:6,9,14,16
  18:19 19:6
**matter** 1:5
**mean** 6:2 8:21 9:4
  11:10
**members** 11:10
**mid** 16:25
**million** 7:25 13:15
**mind** 15:22
**mineola** 20:25
**minimis** 9:16
**minimum** 16:3
**minute** 11:8
**minutes** 7:1
**money** 5:24 8:14,15
  10:11,12,15 11:23
  11:24,25 12:10,17
**monies** 8:22 10:20
  11:11,12
**monthly** 5:11,13
  8:4 13:3
**months** 16:19
**morning** 4:2,4,6,18
  4:19 5:18 6:21
  16:20 17:13
**motion** 2:1 4:8 5:5
  7:10 10:5 17:6 19:5

**n**

**n** 3:1 4:1 19:1 20:1
**nature** 15:21
**need** 12:7,12 14:3
  15:15 16:13
**needed** 5:10
**negotiable** 12:25
**negotiations** 7:19
**never** 8:4 10:22
**new** 1:2,15,15 3:6
  3:15 5:16,17 6:22
**non** 9:16 12:25
**note** 5:16
**notice** 13:10,11
**notion** 15:7
**notwithstanding**
  7:9
**number** 15:2,3
**ny** 3:6,15 20:25

**o**

**o** 1:21 4:1 20:1
**o'clock** 7:2
**obey** 12:24 14:18
**obeyed** 13:1,2
**obeying** 14:21
**objection** 5:17 7:18
**obviously** 10:8
**offer** 7:25 13:14,15
**office** 3:12 4:7,16
  6:23
**okay** 8:16 10:3
  18:15
**old** 20:23
**once** 13:10,14 17:25
  18:7
**op** 7:14,15,23 9:18
  9:21 14:6
**operates** 13:3
**operating** 5:11,13
  8:4 10:6
**oppose** 16:2
**opposed** 14:25
**option** 9:1,4
**order** 5:20 8:6 9:20
  9:23 10:1,20,24
  11:15 12:11 13:5,10

13:11,23 14:8 15:10
17:17,18 18:1,5,7
18:14
**orders**  6:7 14:19,21
**outstanding**  4:21
**owner**  7:15

**p**

**p**  3:1,1 4:1
**page**  19:4
**paid**  6:25 7:5 8:7,11
9:21,22 12:11,18
16:14 17:14 18:5
**papers**  5:9,13,17
13:4 16:20 17:12
18:2
**part**  4:11
**pay**  8:22 9:21,21
**payments**  7:7
**pending**  15:24
16:19
**penny**  17:21 18:4
**perfectly**  10:14
**permission**  12:9
16:10
**permit**  6:1,3
**permitted**  12:13
16:14
**person**  18:8
**personality**  11:4
**perspective**  12:22
12:23,24,25
**persuasive**  17:7
**ph**  6:22 11:3
**plan**  5:25 8:6 9:1,1
9:4,13 12:11
**please**  4:2
**point**  4:22 8:9 12:4
**position**  6:13
**postponement**
13:11
**practicing**  13:25
**precisely**  9:23
**principal**  7:21
12:10 15:17 16:10
**proceed**  11:7
**proceedings**  18:21
20:4

**proceeds**  8:10 11:4
11:5 14:7 15:5
16:14 17:21 18:1,2
**proper**  10:15
**property**  7:15 14:6
**propose**  15:23
**provided**  5:15
13:11
**purpose**  7:21
**purposes**  16:17
**pursuant**  7:7 8:6
10:1 13:4
**put**  14:9 18:2,6
**puts**  11:24

**q**

**question**  6:2 12:22
**questions**  4:21
**quite**  4:25 12:8
**quoted**  18:1

**r**

**r**  1:21 3:1 4:1 20:1
**reading**  5:19,19
**real**  9:18
**really**  8:1 9:17
16:24 17:1,4,7
**reargue**  16:8
**receive**  4:16 16:14
**received**  7:1
**recommend**  6:11
**record**  4:24 12:9
16:9 20:4
**records**  15:25
**reflected**  4:13
**regarding**  6:13
**remain**  12:13
**remembering**  5:3
**reports**  5:11,13 8:5
10:6 13:3
**request**  5:15 17:15
**required**  17:18
**requires**  16:11
**resolve**  7:22
**resolved**  7:17,20
14:6 16:5
**resounding**  13:9
14:5

**respect**  5:5 17:9
**respond**  8:8
**response**  4:16,18
6:18,21 7:9 10:5
**return**  17:23
**returned**  15:11,13
15:16 17:16
**review**  4:20 6:17
15:25
**right**  4:23 10:25
11:7,8 14:23 18:13
**road**  20:23
**room**  3:14
**rule**  17:9
**ruled**  15:9 16:8
**rules**  6:8 14:18,21
**ruling**  15:9
**rulings**  19:3

**s**

**s**  3:1 4:1
**sake**  4:24
**sale**  4:13 7:24 8:10
9:20 10:1,20 11:4,5
11:7 13:12 16:15
17:18 18:1,2
**save**  9:12
**saw**  6:23 10:7
**saying**  12:4
**says**  18:1
**scc**  1:7
**seat**  4:2
**sell**  7:21
**send**  10:6 18:18
**sense**  13:16 14:10
**sentence**  8:21
**serious**  6:19
**services**  7:3
**set**  5:9,12,16 8:4
15:16
**seven**  15:14
**shelley**  1:22
**shoichi**  2:2 19:6
**show**  11:17 15:17
**showed**  17:22
**sick**  17:1,5
**simply**  15:1

**smoothly**  5:2
**sold**  14:6
**solutions**  20:22
**somebody**  14:1
**sorry**  12:8 17:5
**south**  2:25 20:3,7
**southern**  1:2
**speaking**  11:8
**specific**  9:20
**stalking**  7:24 9:21
13:14
**stand**  13:7
**statements**  10:7
**states**  1:1 2:3 4:7,9
15:25 16:1 19:7
**stay**  15:24
**stop**  12:7 14:13,16
**street**  1:7 3:13 7:16
**structured**  9:14
**subject**  17:24
**submit**  15:10 16:20
18:14
**subsequent**  5:11
**subsequently**  4:14
**success**  13:9 14:5
15:4
**successfully**  7:17,20
**suggestion**  8:7
**suite**  3:5 20:24
**supplemental**  4:17
6:11,15 7:9
**sure**  14:2

**t**

**t**  20:1,1
**take**  10:10,23
**taken**  7:19
**talking**  14:13,16
**tax**  8:23,25 9:12
**taxes**  6:25 7:4 8:7
12:17
**tell**  5:20 10:23
**telling**  15:21
**thank**  18:18,19
**thing**  15:19
**things**  9:12 14:3
17:2

| | |
|---|---|
| **think** 4:14,18 8:3 13:9 | **view** 13:22 17:8 |
| **three** 7:1 17:1 | **views** 14:1 |
| **thursday** 4:17 | **virtually** 5:20,23 |
| **time** 4:12,20 5:1 6:23 7:22 | **w** |
| **title** 6:23 7:3,5 8:22 | **wait** 9:3,3,3,3 |
| **today** 5:16 6:18 12:9 | **want** 4:23 6:7 8:25 9:13 13:8 14:20,22 14:24 15:23 17:2 |
| **today's** 4:15 6:16 | **wanted** 13:6,7 |
| **told** 10:4 | **way** 6:2,3,6,9 12:19 14:20,22 15:2 17:9 |
| **transcribed** 2:25 | **ways** 9:6 |
| **transcriber** 20:8 | **we've** 4:19 6:18,18 |
| **transcript** 20:3 | **weeks** 17:1 |
| **transfer** 6:24 7:4 8:7,23,25 9:12 12:17 17:14 | **went** 10:1,20,22 |
| **troubling** 14:18 | **wonderful** 15:4 |
| **true** 20:4 | **works** 6:9 12:19 |
| **trustee** 2:3 3:11 4:7 4:9 12:1,6 15:12,24 16:1,2 18:8 19:7 | **worse** 8:6 |
| **trustee's** 10:5 15:25 | **x** |
| **try** 18:7 | **x** 1:4,11 19:1 |
| **trying** 9:10 | **y** |
| **two** 15:3 17:1 | **yeah** 12:23 |
| **type** 11:3 | **year** 17:14 |
| **typically** 11:4 | **years** 13:25 15:8 |
| **u** | **york** 1:2,15,15 3:6 3:15 6:22 |
| **u.s.** 1:13,23 3:10,11 3:12 10:5 12:5 | |
| **unclear** 12:15 | |
| **understand** 6:1,10 9:6,16 10:13 | |
| **understanding** 8:2 | |
| **understood** 10:11 11:19 | |
| **unilateral** 5:3 | |
| **united** 1:1 2:3 4:7,9 15:25 16:1 19:7 | |
| **units** 7:15 | |
| **unseemly** 14:24 | |
| **v** | |
| **varick** 3:13 | |
| **veritext** 20:22 | |