1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 14-13254-scc

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  199 EAST 7TH STREET LLC,

9

10             Debtor.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             October 13, 2016

19             2:22 PM

20

21  B E F O R E:

22  HON. SHELLEY C. CHAPMAN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2   Doc #75 Ex Parte Application of the Chapter 7 Interim Trustee

3   for an Order (I) Directing the Preservation of Documents and

4   Recorded Information and (II) Authorizing the Issuance of

5   Subpoenas for the Production of Documents and Deposition

6   Testimony Pursuant to Rule 2004 of the Federal Rules of

7   Bankruptcy Procedure

8

9   Doc #109 Order to Show Cause (A) Scheduling a Hearing to

10  Consider Entry of a Contempt Citation and the Imposition of

11  Sanctions and (B) Directing James Guarino, the Debtor's

12  Managing Member, to Attend Such Hearing

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  LAW OFFICE OF DAVID CARLEBACH

4          Attorney for Debtor

5          55 Broadway

6          Suite 1902

7          New York, NY 10006

8

9  BY:    DAVID CARLEBACH, ESQ.

10

11

12  TOGUT, SEGAL & SEGAL LLP

13          Attorneys for Chapter 7 Trustee

14          One Penn Plaza

15          New York, NY 10119

16

17  BY:    NEIL BERGER, ESQ.

18

19

20

21

22

23

24

25

4

1

2  UNITED STATES DEPARTMENT OF JUSTICE

3        Office of the United States Trustee

4        201 Varick Street

5        Suite 1006

6        New York, NY 10014

7

8  BY:   BRIAN S. MASUMOTO, ESQ.

9

10

11  NEW YORK CITY LAW DEPARTMENT

12        Tax and Bankruptcy Litigation Division

13        Office of the Corporation Counsel

14        100 Church Street

15        New York, NY 10007

16

17  BY:   GABRIELA P. CACUCI, ESQ.

18

19

20  ALSO PRESENT:

21        JAMES GUARINO, Debtor's Principal

22

23

24

25

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURT:  Please have a seat.  Come on up, folks. |
| 3 | I'm sorry to keep you waiting.  I'm in the midst of another |
| 4 | matter as well. |
| 5 | Okay, Mr. Berger, would you like to start? |
| 6 | MR. BERGER:  I think so, Judge, thank you.  I'm Neil |
| 7 | Berger of Togut, Segal & Segal.  We represent Albert Togut, the |
| 8 | Chapter 7 interim trustee.  There are two matters on Your |
| 9 | Honor's calendar today.  If I could take the trustee's request |
| 10 | for a final order to preserve documents first? |
| 11 | Your Honor may recall that was the trustee's |
| 12 | application on September 22nd, at docket 75.  You entered an |
| 13 | order authorizing the trustee to conduct Rule 2004 discovery by |
| 14 | an order at docket 76.  You entered a scheduling order |
| 15 | scheduling today's hearing with your October 5, 2016 order, at |
| 16 | docket 108.  Affidavits of service are on file with the court. |
| 17 | Last time we were before Your Honor, the debtor had |
| 18 | consented to the relief.  We've received no objections.  Just |
| 19 | by way of update, I can tell you we've been in touch with the |
| 20 | title company.  We sent them a subpoena.  They've begun sending |
| 21 | us documents. |
| 22 | THE COURT:  Okay. |
| 23 | MR. BERGER:  They've been complying.  We spoke to |
| 24 | counsel for the co-op board.  They have no objection.  They're |
| 25 | sending us documents and complying.  We've been in touch with |

1   two different attorneys who at different times represented the

2   buyer.  The first told us that he began doing the

3   representation; he's going to look for documents, send them to

4   us, no objection.

5         THE COURT:  Okay.

6         MR. BERGER:  The second is more challenging.  It's an

7   attorney who is under federal indictment.  I think we are

8   competing with a subpoena from a U.S. Attorney in a matter

9   unrelated to this case.

10        THE COURT:  Okay.

11        MR. BERGER:  But he has at least indicated willingness

12  to try to get into his records and give us documents.  But with

13  that, Your Honor, we don't have any objections.  We articulated

14  the basis for the need for preservation of the records in our

15  application.  I spoke to it last time we were here.  And unless

16  you have other questions, I'd ask that the motion be granted on

17  a final basis.

18        THE COURT:  Okay.  Anyone else wish to be heard?  Sir?

19        MR. CARLEBACH:  May I be heard?  May I approach the

20  bench?

21        THE COURT:  Yes.

22        MR. CARLEBACH:  Your Honor, this is my client, Mr.

23  Guarino.  He's asked to address the Court.

24        THE COURT:  Okay, Mr. Carlebach, is he, in fact your

25  client or did you misspeak?

**199 EAST 7TH STREET LLC**

1          MR. CARLEBACH:  Excuse me?

2          THE COURT:  Is your client not the debtor?

3          MR. CARLEBACH:  He is the principal of the debtor.

4          THE COURT:  Yes, there is a very substantial

5   difference between the principal of the debtor and the debtor.

6   So I'm asking you again:  are you representing Mr. Guarino?

7          MR. CARLEBACH:  I do not represent him personally, no.

8   He is the principal of the debtor, and he wants to address the

9   Court as the principal of the debtor, not as --

10          THE COURT:  Okay.  I was focusing on very precisely on

11   the words.  You said your client.  And I'm just clarifying that

12   your client is the debtor, correct?

13          MR. CARLEBACH:  Was and always has been.

14          THE COURT:  Okay.  Then you misspoke, and you meant to

15   say the principal of your client?

16          MR. CARLEBACH:  Perhaps.

17          THE COURT:  No, this is a very important point, Mr.

18   Carlebach.

19          MR. CARLEBACH:  There was never any intention on my

20   part to -- I've never, in this courthouse, taken the position

21   that I represent Mr. Guarino personally.

22          THE COURT:  You just said your client -- you'd like

23   your client, Mr. Guarino to speak.

24          MR. CARLEBACH:  In his capacity as an officer of the

25   debtor.  That's what I meant "my client".  I didn't mean my

**199 EAST 7TH STREET LLC**

8

1   client -- he's my personal client.  I mean, I'm not sure what

2   the -- where Your Honor is going with this.  I mean, that's all

3   I intended.

4           THE COURT:  I'll tell you exactly where I'm going with

5   this --

6           MR. CARLEBACH:  Okay.

7           THE COURT:  -- if you'd like me to do that, because I

8   think every other person in this courtroom understands.

9   There's a very real difference between a debtor and a debtor's

10  principal.  And the interests are distinct and are oftentimes

11  in conflict, as seems to have occurred in this case.  So when

12  you stand up and you said I'd like -- he's my client, I simply

13  was trying to understand what you meant by those literal words.

14  And I was seeking to clarify that what you meant was, number

15  one, your client was and is the debtor, okay.  And now, of

16  course, the trustee is in place, that's not what I'm getting

17  at.  I was merely drawing the distinction between your being

18  counsel to the debtor and counsel to Mr. Guarino, in any

19  individual capacity.  That's all.

20          MR. CARLEBACH:  Understood.  And I just want to add

21  that Mr. Guarino also happens to be an equity holder, and there

22  certainly could come a point where in his capacity as an equity

23  holder he might need separate -- he might decide he needs

24  separate counsel.  But I have never blurred the line in my own

25  mind between Mr. Guarino personally; and my representation has

1  always only been with respect to my fiduciary obligation to

2  respect -- to represent the debtor, the estate, its interest-

3  holders, and creditors.

4         THE COURT:  We've now gone far afield.  I could say

5  some things in response to that, but it would be beside the

6  point.

7         Mr. Guarino wanted to make a statement to the Court,

8  and just to clarify, he is not represented by counsel here

9  today?

10        MR. CARLEBACH:  He is not represented in his

11 individual capacity by counsel.  But insofar as his -- he wants

12 to speak on behalf of the corporation.  The corporation does

13 have a lawyer, and that's me.  But --

14        THE COURT:  That's fine.

15        MR. CARLEBACH:  Okay.

16        THE COURT:  That's fine.

17        MR. CARLEBACH:  Okay.  Just making that clear.

18        THE COURT:  Okay.  Okay.

19        MR. CARLEBACH:  Yeah.

20        THE COURT:  Sir?  Before you speak, I just want to

21 clarify with everyone, in particular Mr. Berger, that as of

22 today, neither the debtor nor -- well, it's not neither/nor,

23 because it's three -- the debtor, Mr. Carlebach, and Mr.

24 Guarino have not complied with the existing orders?

25        MR. BERGER:  They have not complied with the

**199 EAST 7TH STREET LLC**

10

1    conversion order.  They have not complied with Your Honor's

2    Rule 2004 order or the subpoenas that were issued by the

3    trustee pursuant to your order.

4            THE COURT:  Thank you.  Okay.  Go ahead.

5            MR. GUARINO:  Thank you, Your Honor.  My name is James

6    Guarino.

7            THE COURT:  Okay, pull that microphone nice and close

8    so we can record.

9            MR. GUARINO:  Thank you.

10            THE COURT:  Okay.

11            MR. GUARINO:  Hello?

12            THE COURT:  Yes.

13            MR. GUARINO:  My name is James Guarino.  I'm speaking

14    on behalf of 199 East 7th Street LLC.  I'm the managing member

15    and basically decision-maker in the entity.

16            I have plenty of bankruptcy experience, but never once

17    as a debtor.  I've been a lender in many different cases --

18            THE COURT:  Um-hum.

19            MR. GUARINO:  -- and I'm always the guy who cuts

20    deals.  I'm non-litigious, and move on, and so on and so forth.

21            I was first made aware that there was an issue with

22    this case about four or five weeks ago.  And I first heard from

23    an outside attorney who emailed me and said what's happening.

24    I was under the impression the case was dismissed, was done.

25    It was a very simple bankruptcy.  Everybody was paid.  To the

**199 EAST 7TH STREET LLC**

1    best of my knowledge, there were no issues.  And --

2              THE COURT:  What was the basis of that knowledge?

3              MR. GUARINO:  I was -- no communication that there was

4    an issue.  I heard there was one question of a creditor, of a

5    tenant who made a claim, who got paid 100,000 dollars to leave,

6    and I found out last night that the title company never paid

7    transfer tax, but at the --

8              THE COURT:  How do you think that that person got paid

9    100,000 dollars to -- as you say -- leave?

10             MR. GUARINO:  I paid him.  We paid them -- the entity

11   paid them.  Not me personally, but the entity paid him.  He

12   made it --

13             THE COURT:  Do you understand that that's a violation

14   of the bankruptcy law?

15             MR. GUARINO:  I did not know that, no.  I asked during

16   the process of the sale, my counsel, if this tenant wants to be

17   bought out, is it okay and it makes the assets more valuable,

18   and I was told it was okay.  I did it to my L and T lawyer --

19             THE COURT:  I'm just going to ask you to stop for

20   moment.

21             MR. GUARINO:  Okay.

22             THE COURT:  Because I have a level of discomfort with

23   this, and I'll explain to you why.  I don't know all the facts.

24             MR. GUARINO:  Okay.

25             THE COURT:  I only know what I know.

**199 EAST 7TH STREET LLC**

12

1           MR. GUARINO:  Okay.

2           THE COURT:  And what I know is that numerous orders

3   that were entered by this Court --

4           MR. GUARINO:  Right.

5           THE COURT:  -- were not followed.

6           MR. GUARINO:  Right.

7           THE COURT:  And numerous actions and activities

8   occurred that required court approval, and court approval was

9   not sought.

10          MR. GUARINO:  Right.

11          THE COURT:  Mr. Carlebach does not agree with my

12  views, and he's made that clear to me on numerous occasions and

13  in numerous pleadings.

14          MR. GUARINO:  Right.

15          THE COURT:  To the extent that you are making these

16  statements today, it is possible that you are saying things

17  that could subject you to liability --

18          MR. GUARINO:  Okay.

19          THE COURT:  -- in a very serious fashion --

20          MR. GUARINO:  Okay.

21          THE COURT:  -- that you are indicating possibly a

22  basis for someone to make the observation that you've committed

23  things that would constitute bankruptcy crimes.

24          MR. GUARINO:  Okay.

25          THE COURT:  There's a statute, and it sets forth with

**199 EAST 7TH STREET LLC**

1    great particularity what it is that constitutes a bankruptcy

2    crime.

3            MR. GUARINO:  Okay.

4            THE COURT:  That's point number one.  Point number two

5    is, in your capacity as a principal and an officer of the

6    debtor, to the extent that Mr. Carlebach was acting as counsel

7    to the debtor, there exists an attorney-client privilege

8    between you and him.

9            MR. GUARINO:  Okay.

10            THE COURT:  You, at this point, don't have counsel.

11    I'm not permitted to give you legal advice, but as a general

12    matter, you ought not to say anything that waives that

13    privilege, because that's a very important thing for you to

14    have.

15            MR. GUARINO:  I understand.

16            THE COURT:  Okay.  In this situation, I normally

17    suggest that you or someone in your position think very hard

18    about continuing to speak without having the benefit of

19    counsel, and that you do have available to you the invocation

20    of the Fifth Amendment of the Constitution, which as you may or

21    may not know, among other things, includes the right to not

22    incriminate yourself by, in essence, saying things that could

23    expose you to criminal liability.

24            MR. GUARINO:  Understood, and I appreciate that.

25            THE COURT:  Okay?  So I'm happy to continue to listen

1   to you, but I wanted to caution you in that regard, because

2   right off the top, what you said is troubling, because it

3   indicates that a payment was made -- yet another payment was

4   made without court authority.

5           MR. GUARINO:  I understand that.  Because I -- and

6   I --

7           THE COURT:  I don't know what all the facts are.

8           MR. GUARINO:  -- I understand.

9           THE COURT:  Okay.  Why it was that the funds left this

10  estate without a court order and you came to believe or were

11  led to believe that the bankruptcy was done, I have no idea.

12          MR. GUARINO:  I understand.  I appreciate that.  I

13  would like to request to replace counsel on this case --

14          THE COURT:  Well, counsel is replaced on this case,

15  and that's where the trustee comes in.

16          MR. GUARINO:  Okay.

17          THE COURT:  I converted the case.

18          MR. GUARINO:  Right.

19          THE COURT:  Okay?  And a trustee is now acting.  So

20  all of the powers and the property and the rights to pursue

21  causes of action and various rights and remedies are now in

22  vested in the trustee.

23          Mr. Carlebach, on behalf of the debtor, appealed the

24  conversion order and sought a stay of the conversion order --

25          MR. GUARINO:  Right.

**199 EAST 7TH STREET LLC**

15

1        THE COURT:  -- and Judge Sullivan, apparently, acting

2   as the emergency judge in the district court, I think, within

3   moments has entered an order denying the stay.

4        MR. GUARINO:  Right.

5        THE COURT:  So my order -- my conversion order is up

6   on appeal.

7        MR. GUARINO:  Right.

8        THE COURT:  But it's not stayed.

9        MR. GUARINO:  Right.

10        THE COURT:  And what that means is that you

11   personally, right now, are in contempt of my order --

12        MR. GUARINO:  Okay.

13        THE COURT:  -- by having not returned the funds to the

14   possession of the trustee or turned over documents that you

15   have.  So that's a pretty serious thing.

16        MR. GUARINO:  I get that now.

17        THE COURT:  So if you -- if you want counsel, that's

18   certainly your right --

19        MR. GUARINO:  Okay.

20        THE COURT:  -- and I would give you some breathing

21   room to get counsel.

22        MR. GUARINO:  I would appreciate that.

23        THE COURT:  But it will be your personal counsel, paid

24   for by you --

25        MR. GUARINO:  Right.

**199 EAST 7TH STREET LLC**

16

1          THE COURT:  -- and not out of the funds of this

2     estate.

3          MR. GUARINO:  Right, no problem.  And to represent me

4     and the entity in this case?

5          THE COURT:  Well --

6          MR. GUARINO:  I would like to replace Mr. Carlebach,

7     is what I'm saying.

8          THE COURT:  Mr. Berger, do you want to weigh in here?

9          MR. BERGER:  I don't think that's appropriate, Your

10    Honor.  Mr. Carlebach currently is the attorney of record.  I

11    think you properly observed that the trustee is now in control

12    of the property of the estate, documents, money that ought to

13    come back, intangible assets.

14          I'm concerned with the corporate debtor not being

15    represented in the trustee's Chapter 7 administration.  So that

16    to the extent that Mr. Guarino is unable to comply with the

17    debtor's obligations, he may have personal counsel, but not

18    anyone with institutional knowledge of what's gone on here.

19    I'm also concerned, Your Honor, that counsel be relieved and

20    that would be some type of waiver of estate claims or right to

21    investigate.

22          THE COURT:  Mr. Carlebach?

23          MR. CARLEBACH:  I mean, I think what Mr. Guarino is

24    saying is that -- I mean, even after a trustee is appointed,

25    there is still a debtor, and --

**199 EAST 7TH STREET LLC**

17

1              THE COURT:  Mr. Berger doesn't disagree.

2              MR. CARLEBACH:  And that debtor still takes --

3    whatever he does, takes instruction from Mr. Guarino, as

4    principal of the debtor; and that debtor has its inviolable

5    right to counsel.  If Mr. Guarino wants to replace me as that

6    counsel, obviously I'm here and I'm under subpoena, and to the

7    extent Mr. Guarino gets another attorney, I'd have to cooperate

8    with that attorney, but if he feels that he'd be better

9    served -- if the corporate debtor would be better served today

10   by having another attorney interface with the trustee, I mean,

11   I can't -- I don't see the harm in having maybe another counsel

12   who's less caught up in the moment.  And I don't see why Mr.

13   Guarino, as principal of the debtor, wouldn't have the absolute

14   right to fire me and hire somebody else.

15             THE COURT:  Well -- go ahead.

16             MR. BERGER:  Just quickly, Your Honor.  First, I don't

17   disagree with Your Honor.  A few days for Mr. Guarino to get

18   counsel is a good idea.  I think you've identified some issues

19   that I think a number of us sitting at counsel table

20   immediately identified as soon has he began speaking.

21             Withdrawal of counsel or substitution of counsel,

22   under our Local Rules, requires notice of a motion --

23             THE COURT:  And court approval.

24             MR. BERGER:  -- and a court approval.

25             THE COURT:  Right.

**199 EAST 7TH STREET LLC**

1          MR. BERGER:  I'm not prepared, standing here today, to

2     throw the doors open and say yes, counsel's out, and we'll just

3     wait and see if someone else comes in.  We're all very

4     sensitive to process here --

5          THE COURT:  Right.

6          MR. BERGER:  -- and getting the estate done.  But --

7          THE COURT:  And what I see -- what I see is -- and

8     it's ironic in light of what was argued to me in the stay

9     motion -- that we now have the specter of multiplying costs,

10    not on this side, because Mr. Guarino, your -- the cost of your

11    counsel is going to come out of your pocket --

12         MR. GUARINO:  I understand.

13         THE COURT:  -- okay.  And with respect to the debtor,

14    too, now that there's a trustee --

15         MR. GUARINO:  I understand.

16         THE COURT:  Right.  So --

17         MR. GUARINO:  Now.

18         THE COURT:  -- so to go to a situation where we have

19    three counsel instead of one, the most I can see is two,

20    because I think it would be beneficial, Mr. Guarino, to you for

21    you to have your personal counsel, but we're getting very far

22    afield from what needs to be done here.

23         I said at the last hearing, we can do things the easy

24    way or we can do things the hard way.  Okay?  Mr. Carlebach's

25    notion of the easy way was basically that I forget the whole

**199 EAST 7TH STREET LLC**

1    thing, okay, and not require that the monies come back in, and

2    that we figure out why the transfer taxes weren't paid or if

3    they weren't paid.  I still don't know all the facts.

4          But now we're going from -- so I wasn't going to do

5    the super easy way, which was let's just pretend this never

6    happened, but the hard way is now being suggested become even

7    harder by all these counsel.

8          It's very simple.  The money has to come back in and

9    all the documents need to be produced.  Period.  And right now,

10   there is the existence of contempt of those aspects of the

11   conversion order.  And the next level is sanctioning.  I want

12   to see the money come back in.  I want the trustee to have all

13   the documents to understand what did or did not happen.  And

14   then we're going to go -- and then we're going to go from

15   there.

16         Again, we still have the ability to do this the easier

17   way than the harder way, and that just involves full

18   compliance.  The position that was taken in the stay pending

19   appeal -- in the motion for stay pending appeal was squarely

20   rejected by Judge Sullivan.  I don't know who has had an

21   opportunity to see this.  Have you seen this, Mr. Carlebach?

22         MR. CARLEBACH:  I did see it.

23         THE COURT:  Mr. Guarino --

24         MR. GUARINO:  No.

25         THE COURT:  -- have you seen it?  We'll give you a

1  copy.

2          MR. GUARINO:  Thank you.

3          THE COURT:  So how much time do you need, Mr. -- well,

4  first of all, do you --

5          MR. GUARINO:  With the transfer --

6          THE COURT:  Yeah, yeah --

7          MR. GUARINO:  -- I'm okay getting an additional

8  attorney for myself.  It's not an issue, if that --

9          THE COURT:  Okay.

10          MR. GUARINO:  I'm sorry.

11          THE COURT:  Okay.

12          MR. GUARINO:  If that's okay with Mr. Berger.

13          THE COURT:  Okay.

14          MR. GUARINO:  I'm okay with that.  I tried to get an

15  attorney to come here today, except with the holidays, it was

16  very difficult to reach somebody.

17          THE COURT:  Sure.

18          MR. GUARINO:  I found out last week.

19          THE COURT:  Okay.

20          MR. GUARINO:  And contempt of court came up, which is

21  very scary.  So you know, I plan on using previous counsel that

22  I used.

23          THE COURT:  Okay.

24          MR. GUARINO:  So he's a phone call away.  I don't need

25  much time.

1              THE COURT:  Okay.

2              MR. GUARINO:  As far as the documents, I found out in

3      the hallway that the documents were never turned over.  Why, I

4      don't know.  There's nothing to hide.  And as far as putting

5      the money in the account, I don't have the liquidity around but

6      I have free and clear assets, which I'm in the process of

7      refinancing.  I offered to pledge and asset outside -- you

8      know, until the financing comes in.  I'm fully cooperative.

9      I'm going nowhere.  I'm --

10             THE COURT:  Well --

11             MR. GUARINO:  -- you know.

12             THE COURT:  Given that you've indicated that you'd

13     like to hire counsel, I'm going to refrain from asking you

14     further questions --

15             MR. GUARINO:  Okay.

16             THE COURT:  -- as to where the money is.

17             MR. GUARINO:  Fair.

18             THE COURT:  But once you do have counsel, those

19     questions are going to be --

20             MR. GUARINO:  No problem.

21             THE COURT:  -- on the table.  Certainly the trustee

22     and the U.S. Trustee, I think, is going to be interested --

23             MR. GUARINO:  No problem.

24             THE COURT:  -- in getting the answers to those --

25             MR. GUARINO:  And I'll be transparent.  It's not an

**199 EAST 7TH STREET LLC**

22

1    issue.

2            THE COURT:  -- questions, among others.

3            So in terms of a time frame, I want to keep this

4    easier.  I want to keep it moving, because it's very unclear to

5    me at this point how/if the trustee and his counsel are going

6    to be paid.  And I really -- I don't like to put counsel in

7    that situation.

8            And where are we with the transfer taxes?  Do -- have

9    you --

10            MS. CACUCI:  Well, I did file a letter.

11            THE COURT:  Which I've seen.  An additional letter?

12            MS. CACUCI:  No.

13            THE COURT:  Right.

14            MS. CACUCI:  Advising the court of the rate and the

15    amount and --

16            THE COURT:  Right.  But they still haven't -- it still

17    hasn't been paid?

18            MS. CACUCI:  No.

19            MR. BERGER:  And Judge, I received a -- from the title

20    company --

21            MS. CACUCI:  It has to be filed electronically, Your

22    Honor, on --

23            THE COURT:  Right.

24            MR. BERGER:  But there's --

25            THE COURT:  There's nothing more from where we were

1    last time.

2           MS. CACUCI:  Right.

3           THE COURT:  Right.

4           MS. CACUCI:  Which is that I explained to the Court

5    that because the sale was in bulk, the rate is the higher

6    rate -- is the 2.65 percent of the consideration.  So the

7    amount is 43,000 and change, as indicated in my letter, not the

8    23,000.

9           THE COURT:  Okay.

10          MR. BERGER:  Right, and Judge, Neil Berger for the

11   trustee.  We've been in contact with the title company,

12   responsive to our subpoena.  They sent us a copy of the check

13   drawn from Mr. Carlebach's IOLA account, and handwritten across

14   is "not cashed, no executed transfer documents received".  So

15   the title company is telling us they never cashed the check,

16   which leads us to believe that those funds, that 30,000

17   dollars, is still in Mr. Carlebach's IOLA account, which ought

18   to be turned over to the trustee immediately.

19          The check for the transfer tax was drawn on an IOLA

20   account, and Mr. Carlebach, if the check has not been cashed,

21   they have not cleared out of the IOLA --

22          THE COURT:  Okay, so --

23          MR. BERGER:  -- account.

24          THE COURT:  -- but the good news in this is that from

25   that money, we're going to be able to pay the transfer tax,

1   right?

2           MR. BERGER:  At least --

3           MS. CACUCI:  It's insufficient, Your Honor.

4           MR. BERGER:  It's insufficient, but at least -- the

5   30,000 was drawn out of the IOLA account for Mr. Carlebach.

6   What we're hearing from the City is that the transfer tax is

7   actually 43,000.  So there's a delta.

8           THE COURT:  Okay.  It's insufficient.

9           MR. BERGER:  It is insufficient.

10          THE COURT:  It is insufficient.  Okay.

11          MR. BERGER:  It's not sufficient.

12          MS. CACUCI:  Right, and it's not just that amount.

13  Once you --

14          MR. BERGER:  And there are penalties.

15          MS. CACUCI:  -- once you file the return

16  electronically --

17          THE COURT:  Okay.

18          MS. CACUCI:  -- the computer calculates the amount.

19  So there's significant penalties and interest --

20          THE COURT:  Okay.

21          MS. CACUCI:  -- so I cannot tell you exactly.

22          THE COURT:  Okay.

23          MS. CACUCI:  But the penalties can be substantial.

24          THE COURT:  Okay.  All right, so let me get this

25  straight.  So -- and Mr. Guarino, you don't have to respond to

**199 EAST 7TH STREET LLC**

25

1    this.

2            So when the funds were all transferred to Mr. Guarino,

3    Mr. Carlebach, in your iteration at his -- pursuant to his

4    demand, you then demanded or requested that 30,000 dollars be

5    transferred -- hold on -- be transferred back to you, which you

6    were going to hold for your fees.  No?

7            MR. CARLEBACH:  What happened was, at the closing, I

8    paid all the closing costs out of the -- there was a deposit of

9    the purchaser.  I paid out of the -- out of the deposit, I paid

10   all the closing costs.  The title company presented us with a

11   bill of an exact amount.  We filed that -- we filed all those

12   documents.

13           I paid the exact amount that the title company asked

14   for.  They did not pay the transfer tax.  They claimed that the

15   transfer documents weren't executed.  I thought we had executed

16   everything at the closing.  They never told us they weren't

17   paying the transfer tax.  That's what's happened here.

18           They didn't pay --

19           THE COURT:  I'm asking a different question.  When you

20   thought the transfer taxes were paid, and there was then money

21   left, okay --

22           MR. CARLEBACH:  There is 30,000 sitting --

23           THE COURT:  -- you --

24           MR. CARLEBACH:  -- in my account from that uncashed

25   check.  I was waiting for that --

**199 EAST 7TH STREET LLC**

26

1          THE COURT:  Plus 30,000 that you were keeping for your

2     fees?

3          MR. CARLEBACH:  Plus the 30,000 for my fees.  That's

4     correct.

5          THE COURT:  Okay.  So and that's still in your

6     account?

7          MR. CARLEBACH:  That's still in my account.

8          THE COURT:  Okay.  And why hasn't that been

9     transferred to the trustee?

10         MR. CARLEBACH:  Well, again, we were involved in the

11    stay litigation, and all that stuff, and that's what -- I mean,

12    I was hoping that the district court was going to stay that

13    turnover order.

14         THE COURT:  Okay.  So the district court has not

15    stayed --

16         MR. CARLEBACH:  And I --

17         THE COURT:  -- has not.

18         MR. CARLEBACH:  -- and I understand that to the extent

19    that we're not going to be -- Mr. Guarino seems like he wants

20    to comply with the order and not engage in any further stay

21    litigation, we'll turn it over.  It's not an issue.

22         MR. BERGER:  But both amounts.

23         THE COURT:  Well --

24         MR. BERGER:  The 30,000 that he's holding --

25         MR. CARLEBACH:  Underst --

1          MR. BERGER:  -- for the transfer tax --

2          MR. CARLEBACH:  -- understood.

3          MR. BERGER:  -- and the 30,000 that he got from the

4   debtor for fees need to come to the trustee.  That should have

5   been turned over by now.

6          THE COURT:  Well --

7          MR. CARLEBACH:  If the trustee could just send me his

8   wire instructions, and I'll send that money back over.  It's

9   not an issue.

10          THE COURT:  Okay.  So just to be clear, because I

11   don't want there to be any misunderstanding, you should have --

12   after that, you should have zero --

13          MR. CARLEBACH:  That's correct.

14          THE COURT:  -- in your trust fund --

15          MR. CARLEBACH:  Right.

16          THE COURT:  -- accounts.

17          MR. CARLEBACH:  That's correct.

18          THE COURT:  Is that correct?  A hundred percent

19   correct?

20          MR. CARLEBACH:  That's a one hundred percent correct.

21   It's in --

22          MR. BERGER:  The easiest way to do that, Your Honor,

23   is to have Mr. Carlebach -- I prefer checks -- send a check.

24   We'll send a messenger to your office, if you'd like.  And we'd

25   like a written statement confirming that all debtor funds that

**199 EAST 7TH STREET LLC**

28

1  were in his IOLA account have now been transferred to the

2  trustee.

3          THE COURT:  Why wouldn't you do that, Mr. Carlebach?

4          MR. CARLEBACH:  I don't have a problem.  I like -- I

5  prefer to do a wire transfer.  If they want a check, I can

6  write a check.  To me it's --

7          MR. BERGER:  I'll contact you after today's hearing --

8          MR. CARLEBACH:  Okay.

9          MR. BERGER:  -- but simply understanding how best to

10  wire money into a trustee account, I just need to get the wire

11  instructions from the trustee's fiduciary accountant.  That's

12  all.

13          MS. CACUCI:  Your Honor, if I may?  I believe that

14  under the current situation, whenever the funds are going to be

15  available and so on, it's going to have to be the trustee that

16  files, at this point, the real property transfer tax return.

17          THE COURT:  Yes.

18          MR. BERGER:  And I envision that as well.

19          MS. CACUCI:  Fine.  No, when the Court asked me

20  whether somebody paid it, I mean, I think at this point the

21  trustee has to --

22          MR. BERGER:  Yes.

23          THE COURT:  No, I wasn't -- you have to understand

24  that -- I'm sorry.  I don't mean "you have to understand".

25  What I'm recalling is that when we started this phase, Mr.

**199 EAST 7TH STREET LLC**

1    Carlebach indicated either in a writing or on the record, that

2    the transfer taxes had been paid.

3            MS. CACUCI:  Right.

4            THE COURT:  And we've since learned that they haven't

5    been paid.

6            MS. CACUCI:  Right.

7            THE COURT:  So yes, you're going to get the transfer

8    taxes paid.  Yes, Mr. Berger -- Mr. Togut is the only person

9    authorized to do that.

10           MS. CACUCI:  Right.

11           THE COURT:  And in order to do that, he's going to get

12   all these funds and look at all the numbers.  I believe that

13   you're going to be first in line to get that money, but I don't

14   know that for sure, but I don't know what I don't know, at this

15   point.

16           MR. BERGER:  I don't know that.  I won't disagree with

17   what Your Honor just said.  I'm a bankruptcy attorney.  We're

18   going to have an estate with receipts and an estate with

19   disbursements and an estate that has to file transfer tax

20   returns and estate returns.  We work with accountants who are

21   extremely efficient; but Ms. Cacuci, you should anticipate that

22   the trustee will retain an accountant who will hopefully have

23   limited duties, including preparing a transfer tax return to be

24   filed, ultimately, with the City.

25           First we need the money.

**199 EAST 7TH STREET LLC**

30

1      THE COURT:  We do.  Now, whether or not the trustee is

2  willing to entertain and accept something short of the money

3  being returned, we'll get to that when we get to that, because

4  right now, you don't have counsel.  But right now I want to

5  make it very clear, you are in contempt of my order.

6      MR. GUARINO:  I understand, Your Honor.

7      THE COURT:  Okay?  And that needs to have

8  consequences.  I could enter sanctions today.

9      Mr. Carlebach, with respect to your compliance, you're

10  indicating that you're going to remit the funds to the trustee

11  either by wire or by check, along with a statement -- an

12  affirmation that there are no further funds remaining in your

13  account.  But you are also required to turn over documents.

14      MR. CARLEBACH:  Understood.  I --

15      THE COURT:  So -- and you are in contempt today.  So I

16  know that the holidays -- that the holiday was and that there

17  are other holidays coming up.  So in order to provide a basis

18  for me not to impose sanctions today, I need to hear from you

19  about the timeline for compliance.

20      Mr. Berger, do you have something to day?

21      MR. BERGER:  I'm sorry, Your Honor.  Just one other

22  point.  And I don't mean to be oppressive, but --

23      THE COURT:  Mr. Carlebach, last time you said you were

24  going to produce the documents by the 7th of October.  That was

25  a week ago.

1          MR. BERGER:  Right, the 7th at 4 o'clock, which was an

2    extension of the original response deadline.

3          If I can, before we get back into discovery, when Mr.

4    Carlebach turns over the funds to the trustee that are in his

5    account, if I didn't say it earlier -- and I simply can't

6    recall -- the written representation should also include an

7    accounting of funds received from and on behalf of the debtor

8    and how they were disbursed.  That way we have a very clear

9    picture and a very clear comfort level that everything is being

10   turned over.

11         MR. CARLEBACH:  Not a problem.

12         THE COURT:  Okay.

13         MR. BERGER:  Great.

14         THE COURT:  All right, now --

15         MR. BERGER:  On --

16         THE COURT:  -- on the documents.

17         MR. BERGER:  -- on the documents, Your Honor -- and

18   the original response date on the subpoenas was the 29th.  The

19   debtor requested an extension to October 7th.  Today is the

20   13th. We still don't have documents from Mr. Carlebach, the

21   debtor, or Mr. Guarino in his individual capacity, as a member

22   of the debtor.

23         I understand that Mr. Guarino would like a few days to

24   get counsel.  It sounds like a good idea.  I'd rather not run

25   up the fees, but I don't want to be left with the trustee

1   wondering when documents will be produced and whether or not we

2   should be submitting an order that includes, of course, an

3   element to it to obtain compliance.

4          I think, Your Honor, what we can do is have documents

5   produced to us by Wednesday the 19th, and have a holding date

6   on the 20th.  If I don't get documents, I can come back in

7   front of Your Honor and we can have another conference.

8          THE COURT:  Okay, help me out, Mr. Carlebach, about

9   the dates of Sukkot that would render you --

10          MR. CARLEBACH:  The first two days of Sukkot are the

11   17th and the 18th.  So I was going to suggest the 20th to give

12   me the extra day after, because I can't -- I don't do any work

13   on the 17th and the 18th.  So if we can push that over one day,

14   the 19th, I can go through everything, my emails.  And I think

15   I probably could give a reasonable production on the 20th.

16          THE COURT:  Well, now you've got me at "reasonable

17   production".  If we set the 19th as the deadline, that's the

18   deadline for -- would be complete production, given that that

19   would be a healthy three weeks out from the original deadline.

20          So I believe that it is appropriate for you to make

21   the complete production by the close of business -- and I'll

22   tell you what, let's say by the end of the day on the 20th to

23   give you an extra day, because Saturday is out, Monday and

24   Tuesday will be out.  So that gives you tomorrow and Sunday and

25   Wednesday to be able to look at your files, which really

1    shouldn't be voluminous, given what a simple case this is.

2              And I will say, though, that a complete production

3    needs to be made by the close of business on the 20th, and that

4    every -- for every twenty-four hours after that, for which

5    there is not compliance, will levy a hundred-dollar fine on you

6    personally.

7              MR. CARLEBACH:  Understood.

8              MR. BERGER:  So order the record, please?

9              THE COURT:  Yes.  The record is so ordered, in that

10   regard.

11             Now, with respect to a deadline for Mr. Guarino, let

12   me hear from you, Mr. Berger.

13             MR. BERGER:  I'd prefer production of the same date.

14   An attorney who Mr. Guarino says is a phone call away, is

15   simply going to look at the subpoena.  Mr. Guarino, apparently,

16   is the person with the documents and the information.

17   Privilege is now with the trustee.  It's simply an act of

18   gathering and producing.  So I'd ask for the same deadline.

19             MR. GUARINO:  No problem.  I -- sorry.

20             THE COURT:  No problem.

21             MR. GUARINO:  I don't have a problem with that.  I

22   just want to make sure my understanding is my production is the

23   financial records, not the legal papers.  I don't know that I

24   have all of that stuff, but the financial records.

25             THE COURT:  Whatever you have --

**199 EAST 7TH STREET LLC**

34

```
1              MR. GUARINO:  Yeah.

2              THE COURT:  -- relating to this matter --

3              MR. GUARINO:  Yeah.

4              THE COURT:  -- needs to be turned over.

5              MR. GUARINO:  Okay.

6              THE COURT:  And that includes correspondence with Mr.

7    Carlebach --

8              MR. GUARINO:  Okay.

9              THE COURT:  -- or anything --

10             MR. GUARINO:  Emails, I have.  I'm just not sure that

11   I have --

12             THE COURT:  Emails.

13             MR. GUARINO:  -- copies of every motion.  But I have

14   all the financial records and stuff --

15             MR. GUARINO:  Text messages.

16             THE COURT:  Yeah.

17             MR. GUARINO:  No texts, but okay.

18             THE COURT:  From any and all email accounts --

19             MR. GUARINO:  Yeah.

20             THE COURT:  -- that you have.

21             MR. GUARINO:  Okay.

22             THE COURT:  Whether it's Yahoo!, Gmail, whatever it

23   is.

24             MR. GUARINO:  Yeah.

25             THE COURT:  Any form of --
```

1            MR. GUARINO:  Not a -- not a problem.

2            THE COURT:  -- written communication, text message,

3    anything that you have --

4            MR. GUARINO:  Okay.

5            THE COURT:  -- between yourself and Mr. Carlebach or

6    anyone else relating to this --

7            MR. GUARINO:  Okay.

8            THE COURT:  -- you need to turn over.

9            MR. GUARINO:  Okay.

10           THE COURT:  Now you can -- your soon-to-be-retained

11    attorney, Mr. Berger's a phone call away.  They can work

12    together on whether it's a disk or whether it's a physical

13    production or whatever it is.

14           MR. GUARINO:  Okay.

15           MR. BERGER:  Your Honor, can we have the same per diem

16    on him, or --

17           THE COURT:  I'm going to give a little more leeway on

18    that, simply because even though counsel may only be a phone

19    call away, I have no way of knowing how quickly counsel can

20    jump in.  So I think it would be a little onerous to impose

21    that without a first shot.

22           What I will do is, though, have you come back.  And

23    I'm just pausing to think about --

24        (Pause)

25           THE COURT:  All right.  Can I have you -- can we come

**199 EAST 7TH STREET LLC**

36

1    back in on the 25th, which is a Tuesday, or is that --

2            MR. CARLEBACH:  That's still --

3            THE COURT:  -- is that Simchat Torah?

4            MR. CARLEBACH:  It is.

5            THE COURT:  Okay.  The 24th --

6            MR. CARLEBACH:  Anything beyond the 25th is clear,

7    from the holidays.

8            THE COURT:  You're good on the 26th, Mr. Carlebach?

9            MR. CARLEBACH:  I have a hearing before Judge Craig at

10   2:30, but if we do it in the morning, it's fine.

11           MR. BERGER:  That's fine with me, Judge.

12           THE COURT:  Okay.  11 o'clock on the 26th for further

13   status.  And at that point, we would revisit the issue of there

14   being sanctions associated with any continuing noncompliance,

15   insofar as Mr. Guarino's production is concerned.

16           I will say, though, that as soon as you have counsel

17   retained, he needs to contact Mr. Berger and immediately

18   commence discussions about the return of the funds or any

19   alternative that you have in mind that might satisfy compliance

20   with that aspect of the conversion.

21           MR. GUARINO:  That will happen right away.  No

22   problem.

23           THE COURT:  Mr. Masumoto, anything from your office?

24           MR. MASUMOTO:  No, Your Honor.

25           THE COURT:  I see Mr. Masumoto sitting there.

**199 EAST 7TH STREET LLC**

37

1          MR. MASUMOTO:  I believe you covered the matter that I
2     was concerned about.

3          THE COURT:  Okay.  All right.  So somebody ought to
4     share the --

5          MS. CACUCI:  I just did, Your Honor.

6          THE COURT:  Okay.  All right.  Mr. Berger, anything
7     else?

8          MR. BERGER:  If I can email chambers with the order
9     granting the injunctive relief on a final basis?

10         THE COURT:  Yes.

11         MR. BERGER:  I think we're finished for the day.

12         THE COURT:  Okay.  Okay, let me just take one quick
13     look at my notes.

14         Okay, I think that's all.  Okay, thank you folks.

15         IN UNISON:  Thank you, Your Honor.

16         THE COURT:  Thank you very much.

17     (Whereupon these proceedings were concluded at 2:59 PM)

18

19

20

21

22

23

24

25

38

1

2                                  I N D E X

3

4                                  RULINGS

5                                                    PAGE        LINE

6    Mr. Carlebach will produce all documents by   33          2

7    end of business October 20th, after which a

8    100-dollar fine will be incurred for each day

9    of lack of compliance.

10   Mr. Guarino will produce all documents by     35          17

11   end of business on October 20.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

39

1

2                         C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10
    _____
11
    PENINA WOLICKI
12
    AAERT Certified Electronic Transcriber CET**D-569
13

14
    eScribers
15
    700 West 192nd Street, Suite #607
16
    New York, NY 10040
17

18
    Date:  October 16, 2016
19

20

21

22

23

24

25

199 EAST 7TH STREET LLC
Case No. 14-13254-scc

October 13, 2016

## A

**ability (1)**
19:16
**able (2)**
23:25;32:25
**absolute (1)**
17:13
**accept (1)**
30:2
**account (13)**
21:5;23:13,17,20,
23;24:5;25:24;26:6,
7;28:1,10;30:13;31:5
**accountant (2)**
28:11;29:22
**accountants (1)**
29:20
**accounting (1)**
31:7
**accounts (2)**
27:16;34:18
**across (1)**
23:13
**act (1)**
33:17
**acting (3)**
13:6;14:19;15:1
**action (1)**
14:21
**actions (1)**
12:7
**activities (1)**
12:7
**actually (1)**
24:7
**add (1)**
8:20
**additional (2)**
20:7;22:11
**address (2)**
6:23;7:8
**administration (1)**
16:15
**advice (1)**
13:11
**Advising (1)**
22:14
**Affidavits (1)**
5:16
**affirmation (1)**
30:12
**afield (1)**
9:4;18:22
**again (3)**
7:6;19:16;26:10
**ago (2)**
10:22;30:25
**agree (1)**
12:11
**ahead (2)**
10:4;17:15

**Albert (1)**
5:7
**along (1)**
30:11
**alternative (1)**
36:19
**always (3)**
7:13;9:1;10:19
**Amendment (1)**
13:20
**among (2)**
13:21;22:2
**amount (6)**
22:15;23:7;24:12,
18;25:11,13
**amounts (1)**
26:22
**anticipate (1)**
29:21
**apparently (2)**
15:1;33:15
**appeal (3)**
15:6;19:19,19
**appealed (1)**
14:23
**application (2)**
5:12;6:15
**appointed (1)**
16:24
**appreciate (3)**
13:24;14:12;15:22
**approach (1)**
6:19
**appropriate (2)**
16:9;32:20
**approval (4)**
12:8,8;17:23,24
**argued (1)**
18:8
**around (1)**
21:5
**articulated (1)**
6:13
**aspect (1)**
36:20
**aspects (1)**
19:10
**asset (1)**
21:7
**assets (3)**
11:17;16:13;21:6
**associated (1)**
36:14
**attorney (12)**
6:7,8;10:23;16:10;
17:7,8,10;20:8,15;
29:17;33:14;35:11
**attorney-client (1)**
13:7
**attorneys (1)**
6:1
**authority (1)**
14:4

**authorized (1)**
29:9
**authorizing (1)**
5:13
**available (2)**
13:19;28:15
**aware (1)**
10:21
**away (5)**
20:24;33:14;35:11,
19;36:21

## B

**back (10)**
16:13;19:1,8,12;
25:5;27:8;31:3;32:6;
35:22;36:1
**Bankruptcy (8)**
4:12;10:16,25;
11:14;12:23;13:1;
14:11;29:17
**basically (2)**
10:15;18:25
**basis (6)**
6:14,17;11:2;
12:22;30:17;37:9
**become (1)**
19:6
**began (2)**
6:2;17:20
**begun (1)**
5:20
**behalf (4)**
9:12;10:14;14:23;
31:7
**bench (1)**
6:20
**beneficial (1)**
18:20
**benefit (1)**
13:18
**Berger (52)**
5:5,6,7,23;6:6,11;
9:21,25;16:8,9;17:1,
16,24;18:1,6;20:12;
22:19,24;23:10,10,
23;24:2,4,9,11,14;
26:22,24;27:1,3,22;
28:7,9,18,22;29:8,16;
30:20,21;31:1,13,15,
17;33:8,12,13;35:15;
36:11,17;37:6,8,11
**Berger's (1)**
35:11
**beside (1)**
9:5
**best (2)**
11:1;28:9
**better (2)**
17:8,9
**beyond (1)**
36:6

**bill (1)**
25:11
**blurred (1)**
8:24
**board (1)**
5:24
**both (1)**
26:22
**bought (1)**
11:17
**breathing (1)**
15:20
**BRIAN (1)**
4:8
**bulk (1)**
23:5
**business (2)**
32:21;33:3
**buyer (1)**
6:2

## C

**CACUCI (21)**
4:17;22:10,12,14,
18,21;23:2,4;24:3,12,
15,18,21,23;28:13,
19;29:3,6,10,21;37:5
**calculates (1)**
24:18
**calendar (1)**
5:9
**call (4)**
20:24;33:14;35:11,
19
**came (2)**
14:10;20:20
**can (20)**
5:19;10:8;18:19,
23,24;24:23;28:5;
31:3;32:4,6,7,13,14;
35:10,11,15,19,25,
25;37:8
**capacity (6)**
7:24;8:19,22;9:11;
13:5;31:21
**CARLEBACH (67)**
6:19,22,24;7:1,3,7,
13,16,18,19,24;8:6,
20;9:10,15,17,19,23;
12:11;13:6;14:23;
16:6,10,22,23;17:2;
19:21,22;23:20;24:5;
25:3,7,22,24;26:3,7,
10,16,18,25;27:2,7,
13,15,17,20,23;28:3,
4,8;29:1;30:9,14,23;
31:4,11,20;32:8,10;
33:7;34:7;35:5;36:2,
4,6,8,9
**Carlebach's (3)**
18:24;23:13,17
**case (9)**

**6:9;8:11;10:22,24;
14:13,14,17;16:4;
33:1**
**cases (1)**
10:17
**cashed (3)**
23:14,15,20
**caught (1)**
17:12
**causes (1)**
14:21
**caution (1)**
14:1
**certainly (3)**
8:22;15:18;21:21
**challenging (1)**
6:6
**chambers (1)**
37:8
**change (1)**
23:7
**Chapter (2)**
5:8;16:15
**check (9)**
23:12,15,19,20;
25:25;27:23;28:5,6;
30:11
**checks (1)**
27:23
**Church (1)**
4:14
**CITY (3)**
4:11;24:6;29:24
**claim (1)**
11:5
**claimed (1)**
25:14
**claims (1)**
16:20
**clarify (3)**
8:14;9:8,21
**clarifying (1)**
7:11
**clear (8)**
9:17;12:12;21:6;
27:10;30:5;31:8,9;
36:6
**cleared (1)**
23:21
**client (13)**
6:22,25;7:2,11,12,
15,22,23,25;8:1,1,12,
15
**close (3)**
10:7;32:21;33:3
**closing (4)**
25:7,8,10,16
**comfort (1)**
31:9
**coming (1)**
30:17
**commence (1)**
36:18

14-13254-scc    Doc 119    Filed 10/16/16    Entered 10/24/16 09:59:05    Main Document
Pg 41 of 46
199 EAST 7TH STREET LLC
Case No. 14-13254-scc

October 13, 2016

**committed (1)**
12:22
**communication (2)**
11:3;35:2
**company (7)**
5:20;11:6;22:20;
23:11,15;25:10,13
**competing (1)**
6:8
**complete (3)**
32:18,21;33:2
**compliance (6)**
19:18;30:9,19;
32:3;33:5;36:19
**complied (3)**
9:24,25;10:1
**comply (2)**
16:16;26:20
**complying (1)**
5:23,25
**computer (1)**
24:18
**concerned (4)**
16:14,19;36:15;
37:2
**concluded (1)**
37:17
**conduct (1)**
5:13
**conference (1)**
32:7
**confirming (1)**
27:25
**conflict (1)**
8:11
**consented (1)**
5:18
**consequences (1)**
30:8
**consideration (1)**
23:6
**constitute (1)**
12:23
**constitutes (1)**
13:1
**Constitution (1)**
13:20
**contact (3)**
23:11;28:7;36:17
**contempt (5)**
15:11;19:10;20:20;
30:5,15
**continue (1)**
13:25
**continuing (2)**
13:18;36:14
**control (1)**
16:11
**conversion (6)**
10:1;14:24,24;
15:5;19:11;36:20
**converted (1)**
14:17

**co-op (1)**
5:24
**cooperate (1)**
17:7
**cooperative (1)**
21:8
**copies (1)**
34:13
**copy (2)**
20:1;23:12
**corporate (2)**
16:14;17:9
**Corporation (3)**
4:13;9:12,12
**correspondence (1)**
34:6
**cost (1)**
18:10
**costs (3)**
18:9;25:8,10
**Counsel (39)**
4:13;5:24;8:18,18,
24;9:8,11;11:16;
13:6,10,19;14:13,14;
15:17,21,23;16:17,
19;17:5,6,11,18,19,
21,21;18:11,19,21;
19:7;20:21;21:13,18;
22:5,6;30:4;31:24;
35:18,19;36:16
**counsel's (1)**
18:2
**course (2)**
8:16;32:2
**COURT (178)**
5:2,16,22;6:5,10,
18,21,23,24;7:2,4,9,
10,14,17,22;8:4,7;
9:4,7,14,16,18,20;
10:4,7,10,12,18;11:2,
8,13,19,22,25;12:2,3,
5,7,8,8,11,15,19,21,
25;13:4,10,16,25;
14:4,7,9,10,14,17,19;
15:1,2,5,8,10,13,17,
20,23;16:1,5,8,22;
17:1,15,23,23,24,25;
18:5,7,13,16,18;
19:23,25;20:3,6,9,11,
13,17,19,20,23;21:1,
10,12,16,18,21,24;
22:2,11,13,14,16,23,
25;23:3,4,9,22,24;
24:8,10,17,20,22,24;
25:19,23;26:1,5,8,12,
14,14,17,23;27:6,10,
14,16,18;28:3,17,19,
23;29:4,7,11;30:1,7,
15,23;31:12,14,16;
32:8,16;33:9,20,25;
34:2,4,6,9,12,16,18,
20,22,25;35:2,5,8,10,
17,25;36:3,5,8,12,23,

25;37:3,6,10,12,16
**courthouse (1)**
7:20
**courtroom (1)**
8:8
**covered (1)**
37:1
**Craig (1)**
36:9
**creditor (1)**
11:4
**creditors (1)**
9:3
**crime (1)**
13:2
**crimes (1)**
12:23
**criminal (1)**
13:23
**current (1)**
28:14
**currently (1)**
16:10
**cuts (1)**
10:19

**D**

**date (3)**
31:18;32:5;33:13
**dates (1)**
32:9
**day (6)**
30:20;32:12,13,22,
23;37:11
**days (3)**
17:17;31:23;32:10
**deadline (6)**
31:2;32:17,18,19;
33:11,18
**deals (1)**
10:20
**debtor (33)**
5:17;7:2,3,5,5,8,9,
12,25;8:9,15,18;9:2,
22,23;10:17;13:6,7;
14:23;16:14,25;17:2,
4,4,9,13;18:13;27:4,
4,4,9,13;18:13;27:4,
25;31:7,19,21,22
**Debtor's (3)**
4:21;8:9;16:17
**decide (1)**
8:23
**decision-maker (1)**
10:15
**delta (1)**
24:7
**demand (1)**
25:4
**demanded (1)**
25:4
**denying (1)**
15:3

**DEPARTMENT (2)**
4:2,11
**deposit (2)**
25:8,9
**diem (1)**
35:15
**difference (2)**
7:5;8:9
**different (4)**
6:1,1;10:17;25:19
**difficult (1)**
20:16
**disagree (3)**
17:1,17;29:16
**disbursed (1)**
31:8
**disbursements (1)**
29:19
**discomfort (1)**
11:22
**discovery (2)**
5:13;31:3
**discussions (1)**
36:18
**disk (1)**
35:12
**dismissed (1)**
10:24
**distinct (1)**
8:10
**distinction (1)**
8:17
**district (2)**
15:2;26:12,14
**Division (1)**
4:12
**docket (3)**
5:12,14,16
**documents (23)**
5:10,21,25;6:3,12;
15:14;16:12;19:9,13;
21:2,3;23:14;25:12,
15;30:13,24;31:16,
17,20;32:1,4,6;33:16
**dollars (4)**
11:5,9;23:17;25:4
**done (4)**
10:24;14:11;18:6,
22
**doors (1)**
18:2
**drawing (1)**
8:17
**drawn (3)**
23:13,19;24:5
**during (1)**
11:15
**duties (1)**
29:23

**E**

**earlier (1)**

**31:5
easier (2)**
19:16;22:4
**easiest (1)**
27:22
**East (1)**
10:14
**easy (3)**
18:23,25;19:5
**efficient (1)**
29:21
**either (2)**
29:1;30:11
**electronically (2)**
22:21;24:16
**element (1)**
32:3
**else (5)**
6:18;17:14;18:3;
35:6;37:7
**email (2)**
34:18;37:8
**emailed (1)**
10:23
**emails (3)**
32:14;34:10,12
**emergency (1)**
15:2
**end (1)**
32:22
**engage (1)**
26:20
**enter (1)**
30:8
**entered (4)**
5:12,14;12:3;15:3
**entertain (1)**
30:2
**entity (4)**
10:15;11:10,11;
16:4
**envision (1)**
28:18
**equity (2)**
8:21,22
**ESQ (2)**
4:8,17
**essence (1)**
13:22
**estate (10)**
9:2;14:10;16:2,12,
20;18:6;29:18,18,19,
20
**even (3)**
16:24;19:6;35:18
**Everybody (1)**
10:25
**everyone (1)**
9:21
**exact (2)**
25:11,13
**exactly (2)**
8:4;24:21

**except (1)**
20:15
**Excuse (1)**
7:1
**executed (3)**
23:14;25:15,15
**existence (1)**
19:10
**existing (1)**
9:24
**exists (1)**
13:7
**experience (1)**
10:16
**explain (1)**
11:23
**explained (1)**
23:4
**expose (1)**
13:23
**extension (2)**
31:2,19
**extent (5)**
12:15;13:6;16:16;
17:7;26:18
**extra (2)**
32:12,23
**extremely (1)**
29:21

**F**

**fact (1)**
6:24
**facts (3)**
11:23;14:7;19:3
**Fair (1)**
21:17
**far (4)**
9:4;18:21;21:2,4
**fashion (1)**
12:19
**federal (1)**
6:7
**feels (1)**
17:8
**fees (5)**
25:6;26:2,3;27:4;
31:25
**few (2)**
17:17;31:23
**fiduciary (2)**
9:1;28:11
**Fifth (1)**
13:20
**figure (1)**
19:2
**file (4)**
5:16;22:10;24:15;
29:19
**filed (4)**
22:21;25:11,11;
29:24

**files (2)**
28:16;32:25
**final (3)**
5:10;6:17;37:9
**financial (3)**
33:23,24;34:14
**financing (1)**
21:8
**fine (6)**
9:14,16;28:19;
33:5;36:10,11
**finished (1)**
37:11
**fire (1)**
17:14
**first (10)**
5:10;6:2;10:21,22;
17:16;20:4;29:13,25;
32:10;35:21
**five (1)**
10:22
**focusing (1)**
7:10
**folks (2)**
5:2;37:14
**followed (1)**
12:5
**forget (1)**
18:25
**form (1)**
34:25
**forth (2)**
10:20;12:25
**found (3)**
11:6;20:18;21:2
**four (1)**
10:22
**frame (1)**
22:3
**free (1)**
21:6
**front (1)**
32:7
**full (1)**
19:17
**fully (1)**
21:8
**fund (1)**
27:14
**funds (13)**
14:9;15:13;16:1;
23:16;25:2;27:25;
28:14;29:12;30:10,
12;31:4,7;36:18
**further (4)**
21:14;26:20;30:12;
36:12

**G**

**GABRIELA (1)**
4:17
**gathering (1)**

33:18
**general (1)**
13:11
**gets (1)**
17:7
**Given (3)**
21:12;32:18;33:1
**gives (1)**
32:24
**Gmail (1)**
34:22
**good (4)**
17:18;23:24;31:24;
36:8
**granted (1)**
6:16
**granting (1)**
37:9
**great (2)**
13:1;31:13
**GUARINO (108)**
4:21;6:23;7:6,21,
23;8:18,21,25;9:7,24;
10:5,6,9,11,13,13,19;
11:3,10,15,21,24;
12:1,4,6,10,14,18,20,
24;13:3,9,15,24;14:5,
8,12,16,18,25;15:4,7,
9,12,16,19,22,25;
16:3,6,16,23;17:3,5,
7,13,17;18:10,12,15,
17,20;19:23,24;20:2,
5,7,10,12,14,18,20,
24;21:2,11,15,17,20,
23,25;24:25;25:2;
26:19;30:6;31:21,23;
33:11,14,15,19,21;
34:1,3,5,8,10,13,15,
17,19,21,24;35:1,4,7,
9,14;36:21
**Guarino's (1)**
36:15
**guy (1)**
10:19

**H**

**hallway (1)**
21:3
**handwritten (1)**
23:13
**happen (2)**
19:13;36:21
**happened (3)**
19:6;25:7,17
**happening (1)**
10:23
**happens (1)**
8:21
**happy (1)**
13:25
**hard (3)**
13:17;18:24;19:6

**harder (2)**
19:7,17
**harm (1)**
17:11
**healthy (1)**
32:19
**hear (2)**
30:18;33:12
**heard (4)**
6:18,19;10:22;11:4
**hearing (5)**
5:15;18:23;24:6;
28:7;36:9
**Hello (1)**
10:11
**help (1)**
32:8
**hide (1)**
21:4
**higher (1)**
23:5
**hire (2)**
17:14;21:13
**hold (2)**
25:5,6
**holder (2)**
8:21,23
**holders (1)**
9:3
**holding (2)**
26:24;32:5
**holiday (1)**
30:16
**holidays (4)**
20:15;30:16,17;
36:7
**Honor (24)**
5:11,17;6:13,22;
8:2;10:5;16:10,19;
17:16,17;22:22;24:3;
27:22;28:13;29:17;
30:6,21;31:17;32:4,
7;35:15;36:24;37:5,
15
**Honor's (2)**
5:9;10:1
**hopefully (1)**
29:22
**hoping (1)**
26:12
**hours (1)**
33:4
**how/if (1)**
22:5
**hundred (2)**
27:18,20
**hundred-dollar (1)**
33:5

**I**

**idea (3)**
14:11;17:18;31:24

**identified (3)**
17:18,20
**immediately (3)**
17:20;23:18;36:17
**important (2)**
7:17;13:13
**impose (2)**
30:18;35:20
**impression (1)**
10:24
**include (1)**
31:6
**includes (3)**
13:21;32:2;34:6
**including (1)**
29:23
**incriminate (1)**
13:22
**indicated (4)**
6:11;21:12;23:7;
29:1
**indicates (1)**
14:3
**indicating (2)**
12:21;30:10
**indictment (1)**
6:7
**individual (3)**
8:19;9:11;31:21
**information (1)**
33:16
**injunctive (1)**
37:9
**insofar (1)**
9:11;36:15
**instead (1)**
18:19
**institutional (1)**
16:18
**instruction (1)**
17:3
**instructions (2)**
27:8;28:11
**insufficient (5)**
24:3,4,8,9,10
**intangible (1)**
16:13
**intended (1)**
8:3
**intention (1)**
7:19
**interest (1)**
24:19
**interest- (1)**
9:2
**interested (1)**
21:22
**interests (1)**
8:10
**interface (1)**
17:10
**interim (1)**
5:8

**into (3)**
6:12;28:10;31:3
**investigate (1)**
16:21
**inviolable (1)**
17:4
**invocation (1)**
13:19
**involved (1)**
26:10
**involves (1)**
19:17
**IOLA (6)**
23:13,17,19,21;
24:5;28:1
**ironic (1)**
18:8
**issue (7)**
10:21;11:4;20:8;
22:1;26:21;27:9;
36:13
**issued (1)**
10:2
**issues (2)**
11:1;17:18
**iteration (1)**
25:3

**J**

**JAMES (3)**
4:21;10:5,13
**Judge (8)**
5:6;15:1,2;19:20;
22:19;23:10;36:9,11
**jump (1)**
35:20
**JUSTICE (1)**
4:2

**K**

**keep (3)**
5:3;22:3,4
**keeping (1)**
26:1
**knowing (1)**
35:19
**knowledge (3)**
11:1,2;16:18

**L**

**Last (7)**
5:17;6:15;11:6;
18:23;20:18;23:1;
30:23
**LAW (2)**
4:11;11:14
**lawyer (2)**
9:13;11:18
**leads (1)**
23:16

**learned (1)**
29:4
**least (3)**
6:11;24:2,4
**leave (2)**
11:5,9
**led (1)**
14:11
**leeway (1)**
35:17
**left (3)**
14:9;25:21;31:25
**legal (2)**
13:11;33:23
**lender (1)**
10:17
**less (1)**
17:12
**letter (3)**
22:10,11;23:7
**level (3)**
11:22;19:11;31:9
**levy (1)**
33:5
**liability (2)**
12:17;13:23
**light (1)**
18:8
**limited (1)**
29:23
**line (2)**
8:24;29:13
**liquidity (1)**
21:5
**listen (1)**
13:25
**literal (1)**
8:13
**Litigation (3)**
4:12;26:11,21
**little (2)**
35:17,20
**LLC (1)**
10:14
**Local (1)**
17:22
**look (5)**
6:3;29:12;32:25;
33:15;37:13

**M**

**makes (1)**
11:17
**making (2)**
9:17;12:15
**managing (1)**
10:14
**many (1)**
10:17
**MASUMOTO (5)**
4:8;36:23,24,25;
37:1

**matter (5)**
5:4;6:8;13:12;
34:2;37:1
**matters (1)**
5:8
**may (8)**
5:11;6:19,19;
13:20,21;16:17;
28:13;35:18
**maybe (1)**
17:11
**mean (10)**
7:25;8:1,2;16:23,
24;17:10;26:11;
28:20,24;30:22
**means (1)**
15:10
**meant (4)**
7:14,25;8:13,14
**member (2)**
10:14;31:21
**merely (1)**
8:17
**message (1)**
35:2
**messages (1)**
34:15
**messenger (1)**
27:24
**microphone (1)**
10:7
**midst (1)**
5:3
**might (3)**
8:23,23;36:19
**mind (2)**
8:25;36:19
**misspeak (1)**
6:25
**misspoke (1)**
7:14
**misunderstanding (1)**
27:11
**moment (2)**
11:20;17:12
**moments (1)**
15:3
**Monday (1)**
32:23
**money (12)**
16:12;19:8,12;
21:5,16;23:25;25:20;
27:8;28:10;29:13,25;
30:2
**monies (1)**
19:1
**more (4)**
6:6;11:17;22:25;
35:17
**morning (1)**
36:10
**most (1)**
18:19

**motion (5)**
6:16;17:22;18:9;
19:19;34:13
**move (1)**
10:20
**moving (1)**
22:4
**much (3)**
20:3,25;37:16
**multiplying (1)**
18:9
**myself (1)**
20:8

**N**

**name (2)**
10:5,13
**need (10)**
6:14;8:23;19:9;
20:3,24;27:4;28:10;
29:25;30:18;35:8
**needs (6)**
8:23;18:22;30:7;
33:3;34:4;36:17
**Neil (2)**
5:6;23:10
**neither (1)**
9:22
**neither/nor (1)**
9:22
**New (3)**
4:6,11,15
**news (1)**
23:24
**next (1)**
19:11
**nice (1)**
10:7
**night (1)**
11:6
**noncompliance (1)**
36:14
**non-litigious (1)**
10:20
**nor (1)**
9:22
**normally (1)**
13:16
**notes (1)**
37:13
**notice (1)**
17:22
**notion (1)**
18:25
**nowhere (1)**
21:9
**number (4)**
8:14;13:4,4;17:19
**numbers (1)**
29:12
**numerous (4)**
12:2,7,12,13

**NY (2)**
4:6,15

**O**

**objection (2)**
5:24;6:4
**objections (2)**
5:18;6:13
**obligation (1)**
9:1
**obligations (1)**
16:17
**observation (1)**
12:22
**observed (1)**
16:11
**obtain (1)**
32:3
**obviously (1)**
17:6
**occasions (1)**
12:12
**occurred (2)**
8:11;12:8
**o'clock (2)**
31:1;36:12
**October (3)**
5:15;30:24;31:19
**off (1)**
14:2
**offered (1)**
21:7
**Office (4)**
4:3,13;27:24;36:23
**officer (2)**
7:24;13:5
**oftentimes (1)**
8:10
**once (4)**
10:16;21:18;24:13,
15
**one (8)**
8:15;11:4;13:4;
18:19;27:20;30:21;
32:13;37:12
**onerous (1)**
35:20
**only (4)**
9:1;11:25;29:8;
35:18
**open (1)**
18:2
**opportunity (1)**
19:21
**oppressive (1)**
30:22
**order (24)**
5:10,13,14,15;
10:1,2,3;14:10,24,24;
15:3,5,5,11;19:11;
26:13,20;29:11;30:5,
17;32:2;33:8;37:8

**ordered (1)**
33:9
**orders (2)**
9:24;12:2
**original (3)**
31:2,18;32:19
**others (1)**
22:2
**ought (4)**
13:12;16:12;23:17;
37:3
**out (17)**
11:6,17;16:1;18:2,
11;19:2;20:18;21:2;
23:21;24:5;25:8,9,9;
32:8,19,23,24
**outside (2)**
10:23;21:7
**over (12)**
15:14;21:3;23:18;
26:21;27:5,8;30:13;
31:4,10;32:13;34:4;
35:8
**own (1)**
8:24

## P

**paid (22)**
10:25;11:5,6,8,10,
10,11,11;15:23;19:2,
3;22:6,17;25:8,9,9,
13,20;28:20;29:2,5,8
**papers (1)**
33:23
**part (1)**
7:20
**particular (1)**
9:21
**particularity (1)**
13:1
**Pause (1)**
35:24
**pausing (1)**
35:23
**pay (3)**
23:25;25:14,18
**paying (1)**
25:17
**payment (2)**
14:3,3
**penalties (3)**
24:14,19,23
**pending (2)**
19:18,19
**per (1)**
35:15
**percent (3)**
23:6;27:18,20
**Perhaps (1)**
7:16
**Period (1)**
19:9

**permitted (1)**
13:11
**person (4)**
8:8;11:8;29:8;
33:16
**personal (4)**
8:1;15:23;16:17;
18:21
**personally (6)**
7:7,21;8:25;11:11;
15:11;33:6
**phase (1)**
28:25
**phone (4)**
20:24;33:14;35:11,
18
**physical (1)**
35:12
**picture (1)**
31:9
**place (1)**
8:16
**plan (1)**
20:21
**pleadings (1)**
12:13
**Please (2)**
5:2;33:8
**pledge (1)**
21:7
**plenty (1)**
10:16
**Plus (2)**
26:1,3
**PM (1)**
37:17
**pocket (1)**
18:11
**point (12)**
7:17;8:22;9:6;13:4,
4,10;22:5;28:16,20;
29:15;30:22;36:13
**position (3)**
7:20;13:17;19:18
**possession (1)**
15:14
**possible (1)**
12:16
**possibly (1)**
12:21
**powers (1)**
14:20
**precisely (1)**
7:10
**prefer (3)**
27:23;28:5;33:13
**prepared (1)**
18:1
**preparing (1)**
29:23
**PRESENT (1)**
4:20
**presented (1)**

25:10
**preservation (1)**
6:14
**preserve (1)**
5:10
**pretend (1)**
19:5
**pretty (1)**
15:15
**previous (1)**
20:21
**Principal (10)**
4:21;7:3,5,8,9,15;
8:10;13:5;17:4,13
**privilege (3)**
13:7,13;33:17
**probably (1)**
32:15
**problem (10)**
16:3;21:20,23;
28:4;31:11;33:19,20,
21;35:1;36:22
**proceedings (1)**
37:17
**process (3)**
11:16;18:4;21:6
**produce (1)**
30:24
**produced (3)**
19:9;32:1,5
**producing (1)**
33:18
**production (9)**
32:15,17,18,21;
33:2,13,22;35:13;
36:15
**properly (1)**
16:11
**property (3)**
14:20;16:12;28:16
**provide (1)**
30:17
**pull (1)**
10:7
**purchaser (1)**
25:9
**pursuant (2)**
10:3;25:3
**pursue (1)**
14:20
**push (1)**
32:13
**put (1)**
22:6
**putting (1)**
21:4

## Q

**quick (1)**
37:12
**quickly (2)**
17:16;35:19

## R

**rate (3)**
22:14;23:5,6
**rather (1)**
31:24
**reach (1)**
20:16
**real (2)**
8:9;28:16
**really (2)**
22:6;32:25
**reasonable (2)**
32:15,16
**recall (2)**
5:11;31:6
**recalling (1)**
28:25
**receipts (1)**
29:18
**received (4)**
5:18;22:19;23:14;
31:7
**record (5)**
10:8;16:10;29:1;
33:8,9
**records (5)**
6:12,14;33:23,24;
34:14
**refinancing (1)**
21:7
**refrain (1)**
21:13
**regard (2)**
14:1;33:10
**rejected (1)**
19:20
**relating (2)**
34:2;35:6
**relief (2)**
5:18;37:9
**relieved (1)**
16:19
**remaining (1)**
30:12
**remedies (1)**
14:21
**remit (1)**
30:10
**render (1)**
32:9
**replace (3)**
14:13;16:6;17:5
**replaced (1)**
14:14
**represent (5)**
5:7;7:7,21;9:2;16:3
**representation (2)**
6:3;8:25;31:6
**represented (4)**
6:1;9:8,10;16:15
**representing (1)**

7:6
**request (2)**
5:9;14:13
**requested (2)**
25:4;31:19
**require (1)**
19:1
**required (2)**
12:8;30:13
**requires (1)**
17:22
**respect (5)**
9:1,2;18:13;30:9;
33:11
**respond (1)**
24:25
**response (3)**
9:5;31:2,18
**responsive (1)**
23:12
**retain (1)**
29:22
**retained (1)**
36:17
**return (4)**
24:15;28:16;29:23;
36:18
**returned (2)**
15:13;30:3
**returns (2)**
29:20,20
**revisit (1)**
36:13
**Right (43)**
12:4,6,10,14;
13:21;14:2,18,25;
15:4,7,9,11,18,25;
16:3,20;17:5,14,25;
18:5,16;19:9;22:13,
16,23;23:2,3,10;24:1,
12,24;27:15;29:3,6,
10;30:4,4;31:1,14;
35:25;36:21;37:3,6
**rights (2)**
14:20,21
**room (1)**
15:21
**Rule (2)**
5:13;10:2
**Rules (1)**
17:22
**run (1)**
31:24

## S

**sale (2)**
11:16;23:5
**same (3)**
33:13,18;35:15
**sanctioning (1)**
19:11
**sanctions (3)**

30:8,18;36:14
**satisfy (1)**
  36:19
**Saturday (1)**
  32:23
**saying (4)**
  12:16;13:22;16:7,
  24
**scary (1)**
  20:21
**scheduling (2)**
  5:14,15
**seat (1)**
  5:2
**second (1)**
  6:6
**seeking (1)**
  8:14
**seems (2)**
  8:11;26:19
**Segal (2)**
  5:7,7
**send (5)**
  6:3;27:7,8,23,24
**sending (2)**
  5:20,25
**sensitive (1)**
  18:4
**sent (2)**
  5:20;23:12
**separate (2)**
  8:23,24
**September (1)**
  5:12
**serious (2)**
  12:19;15:15
**served (2)**
  17:9,9
**service (1)**
  5:16
**set (1)**
  32:17
**sets (1)**
  12:25
**share (1)**
  37:4
**short (1)**
  30:2
**shot (1)**
  35:21
**side (1)**
  18:10
**significant (1)**
  24:19
**Simchat (1)**
  36:3
**simple (3)**
  10:25;19:8;33:1
**simply (6)**
  8:12;28:9;31:5;
  33:15,17;35:18
**sitting (3)**
  17:19;25:22;36:25

**situation (4)**
  13:16;18:18;22:7;
  28:14
**somebody (4)**
  17:14;20:16;28:20;
  37:3
**someone (3)**
  12:22;13:17;18:3
**soon (2)**
  17:20;36:16
**soon-to-be-retained (1)**
  35:10
**sorry (5)**
  5:3;20:10;28:24;
  30:21;33:19
**sought (2)**
  12:9;14:24
**sounds (1)**
  31:24
**speak (4)**
  7:23;9:12,20;13:18
**speaking (2)**
  10:13;17:20
**specter (1)**
  18:9
**spoke (2)**
  5:23;6:15
**squarely (1)**
  19:19
**stand (1)**
  8:12
**standing (1)**
  18:1
**start (1)**
  5:5
**started (1)**
  28:25
**statement (3)**
  9:7;27:25;30:11
**statements (1)**
  12:16
**STATES (2)**
  4:2,3
**status (1)**
  36:13
**statute (1)**
  12:25
**stay (8)**
  14:24;15:3;18:8;
  19:18,19;26:11,12,20
**stayed (2)**
  15:8;26:15
**still (11)**
  16:25;17:2;19:3,
  16;22:16,16;23:17;
  26:5,7;31:20;36:2
**stop (1)**
  11:19
**straight (1)**
  24:25
**Street (3)**
  4:4,14;10:14
**stuff (3)**

26:11;33:24;34:14
**subject (1)**
  12:17
**submitting (1)**
  32:2
**subpoena (5)**
  5:20;6:8;17:6;
  23:12;33:15
**subpoenas (2)**
  10:2;31:18
**substantial (2)**
  7:4;24:23
**substitution (1)**
  17:21
**sufficient (1)**
  24:11
**suggest (2)**
  13:17;32:11
**suggested (1)**
  19:6
**Suite (1)**
  4:5
**Sukkot (1)**
  32:9,10
**Sullivan (2)**
  15:1;19:20
**Sunday (1)**
  32:24
**super (1)**
  19:5
**sure (5)**
  8:1;20:17;29:14;
  33:22;34:10

---

**T**

**table (2)**
  17:19;21:21
**Tax (11)**
  4:12;11:7;23:19,
  25;24:6;25:14,17;
  27:1;28:16;29:19,23
**taxes (5)**
  19:2;22:8;25:20;
  29:2,8
**telling (1)**
  23:15
**tenant (2)**
  11:5,16
**terms (1)**
  22:3
**texts (1)**
  34:17
**though (4)**
  33:2;35:18,22;
  36:16
**thought (2)**
  25:15,20
**three (3)**
  9:23;18:19;32:19
**throw (1)**
  18:2
**timeline (1)**

30:19
**times (1)**
  6:1
**title (7)**
  5:20;11:6;22:19;
  23:11,15;25:10,13
**today (11)**
  5:9;9:9,22;12:16;
  17:9;18:1;20:15;
  30:8,15,18;31:19
**today's (2)**
  5:15;28:7
**together (1)**
  35:12
**Togut (3)**
  5:7,7;29:8
**told (3)**
  6:2;11:18;25:16
**tomorrow (1)**
  32:24
**top (1)**
  14:2
**Torah (1)**
  36:3
**touch (2)**
  5:19,25
**transfer (19)**
  11:7;19:2;20:5;
  22:8;23:14,19,25;
  24:6;25:14,15,17,20;
  27:1;28:5,16;29:2,7,
  19,23
**transferred (5)**
  25:2,5,5;26:9;28:1
**transparent (1)**
  21:25
**tried (1)**
  20:14
**troubling (1)**
  14:2
**trust (1)**
  27:14
**Trustee (32)**
  4:3;5:8,13;8:16;
  10:3;14:15,19,22;
  15:14;16:11,24;
  17:10;18:14;19:12;
  21:21,22;22:5;23:11,
  18;26:9;27:4,7;28:2,
  10,15,21;29:22;30:1,
  10;31:4,25;33:17
**trustee's (4)**
  5:9,11;16:15;28:11
**try (1)**
  6:12
**trying (1)**
  8:13
**Tuesday (2)**
  32:24;36:1
**turn (3)**
  26:21;30:13;35:8
**turned (6)**
  15:14;21:3;23:18;

27:5;31:10;34:4
**turnover (1)**
  26:13
**turns (1)**
  31:4
**twenty-four (1)**
  33:4
**two (7)**
  5:8;6:1;13:4;
  18:19;32:10
**type (1)**
  16:20

---

**U**

**ultimately (1)**
  29:24
**Um-hum (1)**
  10:18
**unable (1)**
  16:16
**uncashed (1)**
  25:24
**unclear (1)**
  22:4
**under (5)**
  6:7;10:24;17:6,22;
  28:14
**Underst (1)**
  26:25
**understands (1)**
  8:8
**Understood (5)**
  8:20;13:24;27:2;
  30:14;33:7
**UNISON (1)**
  37:15
**UNITED (2)**
  4:2,3
**unless (1)**
  6:15
**unrelated (1)**
  6:9
**up (7)**
  5:2;8:12;15:5;
  17:12;20:20;30:17;
  31:25
**update (1)**
  5:19
**used (1)**
  20:22
**using (1)**
  20:21

---

**V**

**valuable (1)**
  11:17
**Varick (1)**
  4:4
**various (1)**
  14:21
**vested (1)**

14:22
**views (1)**
  12:12
**violation (1)**
  11:13
**voluminous (1)**
  33:1

## W

**wait (1)**
  18:3
**waiting (2)**
  5:3;25:25
**waiver (1)**
  16:20
**waives (1)**
  13:12
**wants (5)**
  7:8;9:11;11:16;
  17:5;26:19
**way (11)**
  5:19;18:24,24,25;
  19:5,6,17,17;27:22;
  31:8;35:19
**Wednesday (2)**
  32:5,25
**week (2)**
  20:18;30:25
**weeks (2)**
  10:22;32:19
**weigh (1)**
  16:8
**weren't (4)**
  19:2,3;25:15,16
**what's (3)**
  10:23;16:18;25:17
**whenever (1)**
  28:14
**Whereupon (1)**
  37:17
**whole (1)**
  18:25
**who's (1)**
  17:12
**willing (1)**
  30:2
**willingness (1)**
  6:11
**wire (5)**
  27:8;28:5,10,10;
  30:11
**wish (1)**
  6:18
**Withdrawal (1)**
  17:21
**within (1)**
  15:2
**without (4)**
  13:18;14:4,10;
  35:21
**wondering (1)**
  32:1

**words (2)**
  7:11;8:13
**work (3)**
  29:20;32:12;35:11
**write (1)**
  28:6
**writing (1)**
  29:1
**written (3)**
  27:25;31:6;35:2

## Y

**Yahoo! (1)**
  34:22
**York (3)**
  4:6,11,15

## Z

**zero (1)**
  27:12

## 1

**100 (1)**
  4:14
**100,000 (2)**
  11:5,9
**10007 (1)**
  4:15
**10014 (1)**
  4:6
**1006 (1)**
  4:5
**108 (1)**
  5:16
**11 (1)**
  36:12
**13th (1)**
  31:20
**17th (2)**
  32:11,13
**18th (2)**
  32:11,13
**199 (1)**
  10:14
**19th (3)**
  32:5,14,17

## 2

**2.65 (1)**
  23:6
**2:30 (1)**
  36:10
**2:59 (1)**
  37:17
**2004 (2)**
  5:13;10:2
**201 (1)**
  4:4
**2016 (1)**

5:15
**20th (5)**
  32:6,11,15,22;33:3
**22nd (1)**
  5:12
**23,000 (1)**
  23:8
**24th (1)**
  36:5
**25th (2)**
  36:1,6
**26th (2)**
  36:8,12
**29th (1)**
  31:18

## 3

**30,000 (8)**
  23:16;24:5;25:4,
  22;26:1,3,24;27:3

## 4

**4 (1)**
  31:1
**43,000 (2)**
  23:7;24:7

## 5

**5 (1)**
  5:15

## 7

**7 (2)**
  5:8;16:15
**75 (1)**
  5:12
**76 (1)**
  5:14
**7th (4)**
  10:14;30:24;31:1,
  19