1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 14-13254-scc

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   199 EAST 7TH STREET LLC,

9

10              Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              November 21, 2016

19              2:46 PM

20

21   B E F O R E:

22   HON. SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25

1

2  Doc #125 Order to Show Cause (A) Scheduling a Hearing to

3  Consider Contempt Citation, the Imposition of Sanctions, and

4  the Issuance of a Bench Warrant and (B) Directing David

5  Carlebach, Esq., to Attend Such Hearing.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  LAW OFFICE OF DAVID CARLEBACH

4         Attorney for Debtor

5         55 Broadway

6         Suite 1902

7         New York, NY 10006

8

9  BY:   DAVID CARLEBACH, ESQ.

10

11

12  TOGUT, SEGAL & SEGAL LLP

13         Attorneys for Chapter 7 Trustee

14         One Penn Plaza

15         New York, NY 10119

16

17  BY:   NEIL BERGER, ESQ.

18

19

20

21

22

23

24

25

4

1

2  UNITED STATES DEPARTMENT OF JUSTICE

3      Office of the United States Trustee

4      201 Varick Street

5      Suite 1006

6      New York, NY 10014

7

8  BY:   ANDREW VELEZ-RIVERA, ESQ.

9

10

11  HASS & GOTTLIEB

12      Attorneys for James Guarino

13      670 White Plains Road

14      Suite 121

15      Scarsdale, NY 10658

16

17  BY:   LAWRENCE GOTTLIEB, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25

**199 EAST 7TH STREET LLC**

5

1                        P R O C E E D I N G S

2              THE COURT:  Is everyone here for the 3 o'clock, Mr.

3    Berger?  Oh, you're on at 2 o'clock.  I'm sorry.  2 o'clock;

4    come on up.

5              Hello, Mr. Berger.

6              MR. BERGER:  Good afternoon, Judge.

7              THE COURT:  Good afternoon.

8              MR. BERGER:  I'm Neil Berger of Togut Segal & Segal,

9    attorney for Albert Togut, the Chapter 7 trustee of 199 East

10   7th Street, LLC.

11             THE COURT:  Hi, Mr. Carlebach.

12             MR. CARLEBACH:  David Carlebach, representing the

13   debtor, 199 East 7th Street.

14             THE COURT:  Okay.

15             MR. VELEZ-RIVERA:  Andy Velez-Rivera, for the U.S.

16   Trustee.

17             THE COURT:  Okay.  All right.

18             MR. GOTTLIEB:  Good afternoon, Your Honor.  Lawrence

19   Gottlieb, Hass & Gottlieb, on behalf of James Guarino

20   individually.

21             THE COURT:  Very good, thank you.

22             All right, so where do things stand, Mr. Berger?

23             MR. BERGER:  Judge, I wish I was here with good news.

24   It's very frustrating.  Your Honor entered an order to show

25   cause on November 7th earlier this month, scheduling a hearing

1    for November 9th, to consider whether or not Your Honor would

2    impose additional sanctions or issue a bench warrant directing

3    Mr. Carlebach to attend a hearing and to otherwise comply with

4    his court-ordered obligations for disclosure.

5         You'll recall that you entered a Rule 2004 order

6    authorizing the trustee to issue subpoenas.  The trustee issued

7    subpoenas.  Mr. Guarino produced over 4,000 pages of documents.

8    He sat for two hours at a 341 meeting.  The hearing that Your

9    Honor's order to show cause brought on was November 9th.  You

10   may recall that I advised the Court that the night before, Mr.

11   Carlebach appeared at my office and dropped off four Redwells,

12   three were filled with copies of pleadings and transcripts from

13   a state court proceeding concerning the debtor and co-op, and

14   the last was a folder Mr. Carlebach told me was his bankruptcy

15   file for the case.  It may or may not have been complete.

16        He also sent us by email a one-page accounting of his

17   IOLA account.  Your Honor required that he produce an

18   accounting of all dollars received by or on behalf of the

19   debtor and disbursed on behalf of the debtor, with supporting

20   bank statements.  We didn't have those bank statements.  We

21   still don't have the bank statements.

22        The written responses that Mr. Carlebach produced to

23   us failed to comply with Your Honor's Rule 2004 order.  Those

24   written responses were required to have written representations

25   that the respondent in this case, Mr. Carlebach, made a

**199 EAST 7TH STREET LLC**

1    diligent search for the documents; that none of the documents

2    were altered or destroyed.  We had none of that.

3         Your Honor, as I stand today, after having sent Mr.

4    Carlebach a number of emails last week asking to please comply

5    with his ordered obligations sufficiently in advance of today's

6    hearing so that perhaps we wouldn't need today's hearing, in

7    fact -- Your Honor may recall that you instructed me to file a

8    letter on the docket when I was sufficiently -- or my client

9    was sufficiently satisfied that documents were produced by Mr.

10   Carlebach; we couldn't do that, because we haven't gotten a

11   single page of documents since we were last here.

12        We don't have an updated accounting of the funds.  We

13   don't have any bank statements.  We don't have an updated

14   written response under the penalty of perjury.  We don't have

15   any written representations that t diligent search was made.

16   We don't have any representations that documents weren't

17   altered or destroyed.

18        The written response -- the original written response

19   we received from Mr. Carlebach had standard general objections.

20   The privilege has been waived in this case.  He retained the

21   right to object to not produce privileged documents.

22        We began to look at the emails that were contained on

23   a flash drive that Mr. Carlebach produced to my office --

24        THE COURT:  Right, last time the issue was the ability

25   to open the drive and it related to using Outlook or some such

1    thing.

2              MR. BERGER:  And we were able to open that, Your

3    Honor.  And we did find documents, some corrupt, but perhaps it

4    was in the translation.  But they were deal documents; sale

5    documents.

6              Your Honor, one of the emails that we received from

7    Mr. Guarino was an email from Mr. Carlebach discussing payment

8    of a fee.  And I think we had that discussion on the record.

9    And in essence, the email from Mr. Carlebach was:  you will pay

10   me 35,000 dollars:  30,000 dollars, 5,000 dollars when the case

11   is dismissed.  And that email, I believe, was back in February.

12             That email was produced to us by Mr. Guarino.  That

13   email was not included on the flash drive of emails that Mr.

14   Carlebach produced to us.  It's only one email, but it speaks

15   to a larger issue, Your Honor.  We have --

16             THE COURT:  Are there other emails in the production

17   that you received that are the standard:  "to client/from

18   attorney"; "to attorney/from client", that you received from

19   Mr. Guarino?

20             MR. BERGER:  Absolutely, Your Honor.  He understands

21   that the privilege is waived.  He testified at the 341 meeting

22   that I attended with Mr. Togut.  Mr. Togut began the

23   questioning of Mr. Gaurino, I completed it.

24             At times during the examination Mr. Carlebach, perhaps

25   appropriately, spoke up and reminded Mr. -- I'll withdraw that

1     statement.  At times during the Section 341 meeting, Mr.

2     Carlebach sought to interrupt my line of questioning based upon

3     an attorney-client privilege.  I reminded Mr. Carlebach that

4     the attorney-client privilege belonged to the trustee; that

5     Your Honor's Rule 2004 order authorized the trustee the waive

6     it; and that the privilege was in fact waived for purposes of

7     the trustee's investigation.

8          Mr. Carlebach understands that privilege is waived.

9     I'm sorry, Mr. Guarino understands that the privilege is

10    waived.  I don't know, standing here today, that Mr. Carlebach

11    accepts that principle.

12         I asked Mr. Carlebach whether or not he searched the

13    email accounts for his employees, because in a number of the

14    email exchanges that Mr. Guarino produced, employees of Mr.

15    Carlebach's office were copied.  That's to be expected in the

16    preparation of schedules and statement of financial affairs.  I

17    would anticipate that in most cases an attorney's staff might

18    be communicating with a debtor's principal and his staff to

19    accumulate things like what assets do you have; what creditors

20    are there; what should be included in the statement of

21    financial affairs and schedules?

22         Mr. Carlebach confirmed to me last week that he has

23    not searched the email accounts for his employees that worked

24    on this project.  I don't have --

25              THE COURT:  Do you have names of the employees who

1  worked on this project?

2         MR. BERGER:  I do.  Obviously not -- I haven't brought

3  the stack of documents here.  But yes.  And I suppose I'll try

4  to subpoena them.  Mr. Carlebach --

5         THE COURT:  No, we're not going to -- we're not going

6  to have to do that.

7         MR. BERGER:  Some of them may not -- some may not work

8  for him anymore.

9         So Your Honor, there's -- we have been accruing, per

10  diem, coercive civil sanctions at the rate of a hundred dollars

11  a day.  As of today, I would calculate the per diem sanction to

12  be 3,200 dollars.  Mr. Carlebach has paid 1,000 dollars.

13         THE COURT:  Mr. Berger, why don't you just pause?

14  Because I'm trying to take this all in.  And I think at this

15  point, I'd like to hear from Mr. Carlebach.

16         MR. CARLEBACH:  Your Honor, in no particular order,

17  the email accounts of my employees all have a suffice of

18  "carlbachlaw.com."  They are within my -- I don't have their --

19  I needed to get their passwords from my tech -- I didn't keep

20  the --

21         THE COURT:  Mr. Carlebach, let me just start by saying

22  it's November 21st.  So for over a month you've been subject to

23  orders of this Court to produce every single thing.  And I

24  truly -- I don't know how to comprehend the fact that we're

25  here today with evidence that emails exist that haven't been

**199 EAST 7TH STREET LLC**

1  produced.  It doesn't matter if they're employees; it doesn't

2  matter what device they're on; it cannot be clearer that you

3  have been obligated to produce these.

4       We have a dire situation here.  It could not be more

5  dire for you personally.  And I am at a complete loss to

6  understand your lack of cooperation, your seeming willingness

7  to continue to accrue a hundred dollars a day, which clearly is

8  not having the coercive effect it was designed to have.

9       I'm speechless.  And I don't -- I have yet to be in a

10  situation like this where an attorney who regularly practices

11  before this Court would so willfully disregard the orders of

12  this Court.

13       Now, I know you've had some things to say about me in

14  past pleadings, and I think that Judge Sullivan disagreed with

15  what you had to say about me.  It's of no moment to me.  I've

16  issued an order.  There's been conduct that's been uncovered

17  here that's unacceptable.  And we're going to pursue it until

18  every last document is produced.

19       MR. CARLEBACH:  Your Honor --

20       THE COURT:  You can't have anything else to do that's

21  more important than this, Mr. Carlebach.

22       MR. CARLEBACH:  Understood.  And I just need a little

23  more time.  I got the passwords from my employees' emails.  I

24  will have -- as I said last time, this is taking me a

25  considerable amount of time to search through.  And if I missed

1    an email, it was unintentional.  But I sit myself and do

2    various searches to get every single email.  And I will do the

3    same for my employees, and at which point I'll be in a position

4    to say that I've turned over everything.

5         But that's all I -- I haven't discovered any more hard

6    files.  And I believe there are two, perhaps three employees of

7    mine who worked on the case.  And I will make sure -- perhaps

8    there's less of theirs than there was of mine.  I will make

9    sure to get all that over to Mr. Goldberg (sic) on a --

10   similarly, on a flash drive, within the next --

11        MR. BERGER:  My name is Neil Berger.

12        MR. CARLEBACH:  Berger.  I keep making that mistake.

13   I apologize.  Mr. Berger misspells my name too, as I guess

14   it's --

15        Anyway, putting all that aside, within the next day or

16   two, I believe I can have all of those employee emails along

17   with the bank statements underlying the accounting -- I would

18   say if today is Monday, I can have that to Mr. Berger by

19   Wednesday.  That's the bank statements, the emails, and the

20   written representations that he's looking for.  Once --

21        THE COURT:  Well, I'm going to -- I'm going to raise

22   the stakes.  "Stakes" is a poor choice of words.  The sanction

23   of one hundred dollars a day was designed to be what I thought

24   sufficiently coercive to produce full compliance within a

25   reasonable period of time.  It apparently hasn't.  So that

## 199 EAST 7TH STREET LLC

13

1   amount continues to accrue day-by-day.

2          So we're going to pick a date, and if there's not full

3   compliance on that date, then as of that date, the amount

4   outstanding is going to be doubled.  The only other thing there

5   is to do, Mr. Carlebach is to ask the Marshals to bring you

6   into custody.  Now, you know I don't want -- whatever you think

7   of me, I don't want to do that.  I've only had to do that once

8   in almost seven years on the bench, and I didn't enjoy doing it

9   at all.

10         But this is about the integrity of the process.  This

11  is about figuring out what occurred here.  And you ought to be

12  complying so above and beyond that there should be absolutely

13  no room for any criticism whatsoever.  And I'm disappointed and

14  dismayed that this is where we are today.

15         So on this record, today, based on the continued lack

16  of compliance, the sanctions are going to continue until there

17  is full compliance.  We're going to pick a date for there to be

18  a hundred percent compliance with every item that Mr. Berger

19  has outlined.  And for the clarity of the record, I'm going to

20  have him read those items into the record.  And if there's not

21  full compliance as of the date that we select, the outstanding

22  amount of sanctions will be doubled.

23         All right, so Mr. Berger, for the clarity of the

24  record, please repeat every item that is outstanding as of

25  today.

**199 EAST 7TH STREET LLC**

1          MR. BERGER:  All emails from Mr. Carlebach's account

2     or any employee working for or with his office concerning the

3     debtor.

4          THE COURT:  Whether or not that person still is an

5     employee.

6          MR. BERGER:  Whether or not that person is still an

7     employee.  And Your Honor, when I finish, I'd ask that Mr.

8     Carlebach confirm on the record that he will not withhold any

9     document under the claim of privilege.  And the reason I state

10    that is in paragraph 6 of his written response, he says, and I

11    quote:  "Will produce relevant nonprivileged documents

12    responsive to the request."  I've said it before, and I'll say

13    it again, for purposes of this investigation, the trustee has

14    waived privilege.

15         MR. CARLEBACH:  Just to be clear, there are other

16    privileges besides attorney-client privilege.

17         THE COURT:  That --

18         MR. CARLEBACH:  I'm not saying that they --

19         THE COURT:  What privileges are there that would --

20         MR. CARLEBACH:  There's a whole slew of privileges in

21    the Federal Rule of Evidence, of documents which may be

22    privileged.  I just don't want to waive --

23         THE COURT:  Okay.  Give me -- I don't know what the

24    slew is, so tell me right now on what basis --

25         MR. CARLEBACH:  It could be a marital privilege.

1  There could be --

2          THE COURT:  You're not married to the purchaser or --

3          MR. CARLEBACH:  I'm not saying I am.  I'm just saying

4  if there is a document which contains a privileged item in it,

5  I as attorney, would be obligated to protect that privilege.

6  So I'm simply -- I'm not asserting attorney-client privilege.

7  All it says, "if it's privileged".

8          Now, just for example, at the creditor meeting, Mr.

9  Berger was going into communications after the conversion of

10  the case into Chapter 7.  And I advised him that those

11  communications would be subject to the privilege, because the

12  trusteeship only goes with respect to documents -- if I have a

13  communication with Mr. Guarino today, I believe that's

14  privileged.  The waiver of the privilege has to do with -- from

15  the moment that I became counsel to the debtor through the

16  appointment of the trustee.  That entire period, any privilege

17  that would have otherwise existed, is waived.

18          THE COURT:  Here's the deal, Mr. Carlebach.  If you

19  have communications with Mr. Guarino, subsequent to the

20  appointment of a trustee, you need to identify specifically

21  each and every such communication by sender, by recipient, by

22  date, and by general subject matter, and I will make a

23  determination as to whether or not a privilege pertains.

24          MR. BERGER:  Judge, Neil Berger again.  On page 3 of

25  your September 22nd, 2016 Rule 2004 order, you anticipated this

1  situation and required written privilege logs to be filed and

2  produced if any document is withheld under the claim of

3  privilege.

4  MR. CARLEBACH:  And I haven't withheld anything.  I've

5  simply stated that there could --

6  THE COURT:  Mr. Berger is simply trying to not be

7  caught in a game of cat and mouse.  So we're confirming here

8  today that with respect to communications up until the

9  appointment of the trustee --

10  MR. BERGER:  I think what Mr. Carlebach is stating is

11  that any communications post-conversion --

12  THE COURT:  Yes.

13  MR. BERGER:  -- he may assert privilege to.

14  THE COURT:  Right.  I was going to finish my sentence

15  and say up until the conversion, the privilege is held by the

16  trustee.  It doesn't exist.  Subsequent, to the extent that

17  there's a claim of privilege, not surprisingly, pursuant to my

18  prior order, it would need to be documented in a sufficiently

19  detailed privilege log, such that it would be able to be

20  challenged by the trustee and potentially subject to my in-

21  camera review.

22  We are in a situation of trying to uncover the facts

23  surrounding a proceeding that went awry.  And under those

24  circumstance, I would say that there's going to be a broad

25  latitude to figure out exactly what happened.  And to the

**199 EAST 7TH STREET LLC**

17

1  extent that there are communications subsequent to that -- and

2  I would also say, though, that to the extent that those

3  communications occurred with Mr. Guarino, where you were still

4  acting as his counsel, he's waived the privilege.

5          As far as I can tell, he's waived the privilege.  It's

6  not your privilege to assert; it's the client's privilege to

7  assert.  So either you were acting as his counsel,

8  notwithstanding the conversion of the case, in which case he's

9  waived the privilege, or you were just talking to him other

10  than in an attorney-client relationship, in which case there's

11  no privilege.

12          MR. CARLEBACH:  I had communications with him as

13  corporate counsel, post-conversion.

14          THE COURT:  He's waived it.

15          MR. CARLEBACH:  I never heard him say -- the only

16  thing I've heard is that he's --

17          THE COURT:  Mr. Gottlieb?

18          MS. CACUCI:  It's my understanding, Your Honor, and

19  I'll confirm this with Mr. Guarino, but I'm almost certain with

20  a hundred percent certainty, that Mr. Guarino waived the

21  privilege affirmatively.  And I believe that took place at the

22  341 meeting.

23          THE COURT:  Without regard to --

24          MR. GOTTLIEB:  At the meeting.

25          THE COURT:  -- before or after or other time frame?

1          MR. GOTTLIEB:  That's correct, Judge.

2          THE COURT:  I would ask you, Mr. --

3          MR. GOTTLIEB:  But I will confirm that.

4          THE COURT:  -- Gottlieb, if you could send an email or

5      a letter to both Mr. Berger and Mr. Carlebach confirming the

6      scope of Mr. Guarino's waiver of the privilege on behalf of

7      either himself or the debtor corporation.  And then this issue

8      gets put to rest.

9          I don't know what other privileges there are that

10     would pertain.

11         MR. CARLEBACH:  It would make my life easier, Judge.

12     I'm happy to turn everything over to Mr. Berger.  I just --

13     again, I'm just --

14         THE COURT:  Okay, let's move on to the next item.  Go

15     ahead, Mr. Berger.

16         MR. BERGER:  Judge, we talked about emails.  Mr.

17     Carlebach, his account, his employees' accounts, whether or not

18     they're employed currently, but in any way related to the

19     debtor's case.

20         An updating -- an updated accounting with bank

21     statements that pertains to all of the funds that he received

22     on behalf of the debtor and disbursed on behalf of the debtor.

23     And that should also include his 10,000-dollar retainer that

24     was received a few days before the petition was filed.

25         Next, updated written responses to the trustee's

1  subpoena, fully compliant with Your Honor's September 22 Rule

2  2004 order found at docket 76.  And rather than going through

3  each of the elements, and not having to cat-and-mouse, the

4  order is unambiguous.  It speaks for itself.

5          Your Honor, it's included in the document request, but

6  just to transition for a moment, because it spans both, Mr.

7  Carlebach has not turned over to us original closing documents;

8  that's hampering our ability to finalize the transfer tax

9  return.  I suppose if he doesn't have the originals, we'll have

10  to ask Mr. Guarino to re-sign documents, Mr. Gottlieb to assist

11  him --

12          THE COURT:  Where are the original documents?

13          MR. BERGER:  We don't have any from the title company.

14  We don't have any from Mr. Carlebach, who was the closing

15  attorney for the debtor.

16          MR. CARLEBACH:  It's either with the title company or

17  with the attorney for the purchaser.  And we went through this

18  last time.  Apparently the attorney for the purchaser is under

19  some kind of federal something and they couldn't get documents

20  from him.  But I believe -- I certainly did not --

21          THE COURT:  When you go to a closing, there are

22  multiple sets of documents, and everybody walks away from the

23  closing table with a set.  I don't understand this.

24          MR. CARLEBACH:  There may have been some loose ends.

25  We were promised, perhaps, that there were documents.  But you

**199 EAST 7TH STREET LLC**

20

1  know, the -- I didn't get a set of closing -- I've turned

2  everything I've had to the trustee.

3         MR. BERGER:  I'd simply ask Mr. Carlebach to renew his

4  search.

5         THE COURT:  Mr. Gottlieb, do you know anything about

6  the missing closing documents?

7         MR. GOTTLIEB:  Unfortunately, my client left the

8  closing without a set.  I believe he's under the assumption

9  that his counsel would have left the closing with a set.

10 Again, Mr. Guarino renews his promise to execute any --

11 re-execute any assignments or other transfer documents as

12 necessary.  But we don't have a set.

13        MR. BERGER:  We'll send him copies of what we have and

14 ask him to re-execute them.

15        THE COURT:  Okay, Mr. Gottlieb, please try to take the

16 laboring oar with Mr. Berger on this so that we can get them

17 filed, get the transfer tax paid, and at least move on from

18 that aspect.

19        MR. GOTTLIEB:  We have very good reason to get it

20 done.  I mean, we've agreed to shoulder that obligation

21 personally.

22        THE COURT:  Right.

23        MR. GOTTLIEB:  At least advance it on behalf of the

24 trustee.  So penalties and interest are accruing at an

25 astounding rate.  We want to get this done.

**199 EAST 7TH STREET LLC**

21

1          THE COURT:  Okay.

2          MR. BERGER:  I'll work with Mr. Gottlieb.

3          Last, Your Honor, missing from all of Mr. Carlebach's

4    production were time records.  We haven't seen any time records

5    for his services.

6          THE COURT:  Mr. Carlebach, did you keep time records

7    in this matter, yes or no?

8          MR. CARLEBACH:  I did keep --

9          THE COURT:  Where are they?

10         MR. CARLEBACH:  I believe they were turned over to Mr.

11   Gottlieb (sic) as an attachment to an email, but if he doesn't

12   have it, I will make sure to get --

13         THE COURT:  I don't know what that means.  You have a

14   computer.  Were they kept on a computer or were they

15   handwritten?

16         MR. CARLEBACH:  They were kept on a computer.

17         THE COURT:  Then why aren't they on your computer and

18   having already been produced to Mr. Berger?

19         MR. CARLEBACH:  Again, I believe that they were

20   already produced as part of a --

21         THE COURT:  You said "to Mr. Gottlieb".  Did you mean

22   Mr. Berger?

23         MR. CARLEBACH:  To Mr. Berger, as an attachment to an

24   email.  If he doesn't have it, I'll double check.  There were

25   absolutely time records kept.

**199 EAST 7TH STREET LLC**

22

1          MR. BERGER:  Your Honor, I don't have them.  That's

2     what we have, Your Honor.  Again, the emails, the updated

3     accounting with the bank statements, the updated written

4     responses that are fully compliant with Your Honor's order, the

5     time records --

6          THE COURT:  Are you -- is the production that you're

7     getting, does it include metadata, Mr. Berger, such as you're

8     able to see the metadata associated with the documents being

9     produced?

10          My metadata, I mean, the coded information that

11     attaches to every email document that shows the provenance of

12     the document, so to speak:  when it was created, where it was

13     created, and the like?

14          MR. BERGER:  I don't know the answer to that today.

15     Next time I report to Your Honor, I'll have an answer.

16          THE COURT:  Okay.

17          MR. BERGER:  Your Honor, I am disappointed at the fact

18     that I have to keep coming down here.

19          THE COURT:  Me too.

20          MR. BERGER:  But I do think that we need another date

21     in the very near term so that this doesn't get dragged --

22          THE COURT:  Okay.  Mr. Carlebach, once again, and I

23     think for the final time, because I think I've really done this

24     one too many times.  But for one last time, I'd like you to

25     give me a date by which there will be full, one-hundred percent

**199 EAST 7TH STREET LLC**

23

1   compliance with every item that Mr. Berger has outlined today,

2   bearing in mind that this all started over a month ago, on or

3   about October 19th, and only then because you had asked for an

4   extension.

5            MR. CARLEBACH:  I would say December 1.

6            THE COURT:  All right, Thursday December 1.

7            All right, I am on trial that day, but I'd like you to

8   come in before the trial commences in the morning.  Would you

9   be able to do that?

10           MR. BERGER:  Mr. Neil Berger.  Of course, Your Honor.

11           THE COURT:  Mr. Carlebach, 9:30 on the 1st?

12           MR. CARLEBACH:  Yes.

13           THE COURT:  All right.  Mr. Velez-Rivera, can you make

14  it --

15           MR. VELEZ-RIVERA:  We'll be here.

16           THE COURT:  -- then?  Okay.  So 9:30 on the 1st, with

17  completion of production having occurred by the close of

18  business on November 30th.

19           MR. GOTTLIEB:  Judge, would you like me to participate

20  as well at the telephone conference?

21           THE COURT:  Yes, I think that I would, either

22  telephonically or in person, if you're available, Mr. Gottlieb.

23           MR. GOTTLIEB:  Thank you, Judge.

24           MR. BERGER:  Your Honor, so that I understand,

25  production by the close of business on November 30th.  We're to

**199 EAST 7TH STREET LLC**

24

1   be reporting back to you at 9:30 on the 1st.

2           THE COURT:  I mean, it puts you in a bit of a bind,

3   Mr. Berger, because you're going to have to spend that evening

4   looking at documents.  But once again, Mr. Carlebach, I'm not

5   talking about a document dump at 5 o'clock on --

6           MR. CARLEBACH:  I understand.

7           THE COURT:  -- the 30th.  You need to do a rolling

8   production.  I would suggest you put at the top of the list

9   those time records and certainly the emails of the employees

10  ought to be easy.  We seem to have gotten multiple copies of

11  deal documents with the focus shifting on correspondence and

12  the other ancillary documents.

13          Mr. Velez-Rivera, you want to say something, it looks

14  like?

15          MR. VELEZ-RIVERA:  Your Honor, is it being ordered

16  that the daily sanctions continue to accrue between now and

17  then?

18          THE COURT:  Yes, as I said earlier, the daily

19  sanctions are going to continue to accrue until there's

20  complete production.  And if it's determined on December 1st

21  that production is not complete as of that moment, the amount

22  outstanding will be doubled.

23          MR. BERGER:  Thank you, Your Honor.  Neil Berger,

24  again for the trustee.  Clearly we have an unambiguous order

25  and a subpoena.  To the extent that we've identified documents

**199 EAST 7TH STREET LLC**

1    that need to be produced, they ought to be produced.  To the

2    extent that that production raises a question and other

3    documents are out there, the trustee's rights aren't

4    prejudiced.

5             THE COURT:  I agree with that.

6             MR. BERGER:  Thank you, Judge.

7             THE COURT:  All right.  Have a good, safe

8    Thanksgiving.

9         (Whereupon these proceedings were concluded at 3:16 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2                              I N D E X

3

4                              RULINGS

5                                              PAGE      LINE

6   Monetary sanctions against Mr. Carlebach      24        19

7   will continue to accrue until production is

8   completed.  If production is not complete by

9   December 1, the amount of sanctions

10  outstanding will be doubled.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

1

2                   C E R T I F I C A T I O N

3

4   I, Penina Wolicki, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9

10

_____

11

PENINA WOLICKI

12

AAERT Certified Electronic Transcriber CET**D-569

13

14

eScribers

15

700 West 192nd Street, Suite #607

16

New York, NY 10040

17

18

Date:  November 23, 2016

19

20

21

22

23

24

25

## A

**ability (2)**
7:24;19:8
**able (4)**
8:2;16:19;22:8;
23:9
**above (1)**
13:12
**Absolutely (3)**
8:20;13:12;21:25
**accepts (1)**
9:11
**account (3)**
6:17;14:1;18:17
**accounting (6)**
6:16,18;7:12;
12:17;18:20;22:3
**accounts (4)**
9:13,23;10:17;
18:17
**accrue (4)**
11:7;13:1;24:16,19
**accruing (2)**
10:9;20:24
**accumulate (1)**
9:19
**acting (2)**
17:4,7
**additional (1)**
6:2
**advance (2)**
7:5;20:23
**advised (2)**
6:10;15:10
**affairs (2)**
9:16,21
**affirmatively (1)**
17:21
**afternoon (3)**
5:6,7,18
**again (9)**
14:13;15:24;18:13;
20:10;21:19;22:2,22;
24:4,24
**ago (1)**
23:2
**agree (1)**
25:5
**agreed (1)**
20:20
**ahead (1)**
18:15
**Albert (1)**
5:9
**almost (2)**
13:8;17:19
**along (1)**
12:16
**altered (2)**
7:2,17
**amount (5)**

**11:25;13:1,3,22;**
**24:21**
**ancillary (1)**
24:12
**ANDREW (1)**
4:8
**Andy (1)**
5:15
**anticipate (1)**
9:17
**anticipated (1)**
15:25
**anymore (1)**
10:8
**apologize (1)**
12:13
**apparently (2)**
12:25;19:18
**appeared (1)**
6:11
**appointment (3)**
15:16,20;16:9
**appropriately (1)**
8:25
**aside (1)**
12:15
**aspect (1)**
20:18
**assert (3)**
16:13;17:6,7
**asserting (1)**
15:6
**assets (1)**
9:19
**assignments (1)**
20:11
**assist (1)**
19:10
**associated (1)**
22:8
**assumption (1)**
20:8
**astounding (1)**
20:25
**attaches (1)**
22:11
**attachment (2)**
21:11,23
**attend (1)**
6:3
**attended (1)**
8:22
**attorney (7)**
5:9;8:18;11:10;
15:5;19:15,17,18
**attorney/from (1)**
8:18
**attorney-client (5)**
9:3,4;14:16;15:6;
17:10
**Attorneys (1)**
4:12
**attorney's (1)**

**9:17**
**authorized (1)**
9:5
**authorizing (1)**
6:6
**available (1)**
23:22
**away (1)**
19:22
**awry (1)**
16:23

## B

**back (2)**
8:11;24:1
**bank (8)**
6:20,20,21;7:13;
12:17,19;18:20;22:3
**bankruptcy (1)**
6:14
**based (2)**
9:2;13:15
**basis (1)**
14:24
**bearing (1)**
23:2
**became (1)**
15:15
**began (2)**
7:22;8:22
**behalf (7)**
5:19;6:18,19;18:6,
22,22;20:23
**belonged (1)**
9:4
**bench (2)**
6:2;13:8
**Berger (52)**
5:3,5,6,8,8,22,23;
8:2,20;10:2,7,13;
12:11,11,12,13,18;
13:18,23;14:1,6;15:9,
24,24;16:6,10,13;
18:5,12,15,16;19:13;
20:3,13,16;21:2,18,
22,23;22:1,7,14,17,
20;23:1,10,10,24;
24:3,23,23;25:6
**besides (1)**
14:16
**beyond (1)**
13:12
**bind (1)**
24:2
**bit (1)**
24:2
**both (2)**
18:5;19:6
**bring (1)**
13:5
**broad (1)**
16:24

**brought (2)**
6:9;10:2
**business (2)**
23:18,25

## C

**CACUCI (1)**
17:18
**calculate (1)**
10:11
**camera (1)**
16:21
**can (5)**
12:16,18;17:5;
20:16;23:13
**carlbachlawcom (1)**
10:18
**Carlebach (63)**
5:11,12,12;6:3,11,
14,22,25;7:4,10,19,
23;8:7,9,14,24;9:2,3,
8,10,12,22;10:4,12,
15,16,21;11:19,21,
22;12:12;13:5;14:8,
15,18,20,25;15:3,18;
16:4,10;17:12,15;
18:5,11,17;19:7,14,
16,24;20:3;21:6,8,10,
16,19,23;22:22;23:5,
11,12;24:4,6
**Carlebach's (3)**
9:15;14:1;21:3
**case (10)**
6:15,25;7:20;8:10;
12:7;15:10;17:8,8,
10;18:19
**cases (1)**
9:17
**cat (1)**
16:7
**cat-and-mouse (1)**
19:3
**caught (1)**
16:7
**cause (2)**
5:25;6:9
**certain (1)**
17:19
**certainly (2)**
19:20;24:9
**certainty (1)**
17:20
**challenged (1)**
16:20
**Chapter (2)**
5:9;15:10
**check (1)**
21:24
**choice (1)**
12:22
**circumstance (1)**
16:24

**civil (1)**
10:10
**claim (3)**
14:9;16:2,17
**clarity (2)**
13:19,23
**clear (1)**
14:15
**clearer (1)**
11:2
**clearly (2)**
11:7;24:24
**client (3)**
7:8;8:18;20:7
**client/from (1)**
8:17
**client's (1)**
17:6
**close (2)**
23:17,25
**closing (8)**
19:7,14,21,23;20:1,
6,8,9
**coded (1)**
22:10
**coercive (3)**
10:10;11:8;12:24
**coming (1)**
22:18
**commences (1)**
23:8
**communicating (1)**
9:18
**communication (2)**
15:13,21
**communications (8)**
15:9,11,19;16:8,
11;17:1,3,12
**company (2)**
19:13,16
**complete (4)**
6:15;11:5;24:20,21
**completed (1)**
8:23
**completion (1)**
23:17
**compliance (7)**
12:24;13:3,16,17,
18,21;23:1
**compliant (2)**
19:1;22:4
**comply (3)**
6:3,23;7:4
**complying (1)**
13:12
**comprehend (1)**
10:24
**computer (4)**
21:14,14,16,17
**concerning (2)**
6:13;14:2
**concluded (1)**
25:9

**conduct (1)**
11:16
**conference (1)**
23:20
**confirm (3)**
14:8;17:19;18:3
**confirmed (1)**
9:22
**confirming (2)**
16:7;18:5
**consider (1)**
6:1
**considerable (1)**
11:25
**contained (1)**
7:22
**contains (1)**
15:4
**continue (4)**
11:7;13:16;24:16,
19
**continued (1)**
13:15
**continues (1)**
13:1
**conversion (3)**
15:9;16:15;17:8
**co-op (1)**
6:13
**cooperation (1)**
11:6
**copied (1)**
9:15
**copies (3)**
6:12;20:13;24:10
**corporate (1)**
17:13
**corporation (1)**
18:7
**correspondence (1)**
24:11
**corrupt (1)**
8:3
**counsel (5)**
15:15;17:4,7,13;
20:9
**course (1)**
23:10
**COURT (60)**
5:2,7,11,14,17,21;
6:10,13;7:24;8:16;
9:25;10:5,13,21,23;
11:11,12,20;12:21;
14:4,17,19,23;15:2,
18;16:6,12,14;17:14,
17,23,25;18:2,4,14;
19:12,21;20:5,15,22;
21:1,6,9,13,17,21;
22:6,16,19,22;23:6,
11,13,16,21;24:2,7,
18;25:5,7
**court-ordered (1)**
6:4

**created (2)**
22:12,13
**creditor (1)**
15:8
**creditors (1)**
9:19
**criticism (1)**
13:13
**currently (1)**
18:18
**custody (1)**
13:6

**D**

**daily (2)**
24:16,18
**date (8)**
13:2,3,3,17,21;
15:22;22:20,25
**David (1)**
5:12
**day (5)**
10:11;11:7;12:15,
23;23:7
**day-by-day (1)**
13:1
**days (1)**
18:24
**deal (3)**
8:4;15:18;24:11
**debtor (10)**
5:13;6:13,19,19;
14:3;15:15;18:7,22,
22;19:15
**debtor's (2)**
9:18;18:19
**December (3)**
23:5,6;24:20
**DEPARTMENT (1)**
4:2
**designed (2)**
11:8;12:23
**destroyed (2)**
7:2,17
**detailed (1)**
16:19
**determination (1)**
15:23
**determined (1)**
24:20
**device (1)**
11:2
**diem (2)**
10:10,11
**diligent (2)**
7:1,15
**dire (2)**
11:4,5
**directing (1)**
6:2
**disagreed (1)**
11:14

**disappointed (2)**
13:13;22:17
**disbursed (2)**
6:19;18:22
**disclosure (1)**
6:4
**discovered (1)**
12:5
**discussing (1)**
8:7
**discussion (1)**
8:8
**dismayed (1)**
13:14
**dismissed (1)**
8:11
**disregard (1)**
11:11
**docket (2)**
7:8;19:2
**document (8)**
11:18;14:9;15:4;
16:2;19:5;22:11,12;
24:5
**documented (1)**
16:18
**documents (28)**
6:7;7:1,1,9,11,16,
21;8:3,4,5;10:3;
14:11,21;15:12;19:7,
10,12,19,22,25;20:6,
11;22:8;24:4,11,12,
25;25:3
**dollars (9)**
6:18;8:10,10,10;
10:10,12,12;11:7;
12:23
**done (3)**
20:20,25;22:23
**double (1)**
21:24
**doubled (3)**
13:4,22;24:22
**down (1)**
22:18
**dragged (1)**
22:21
**drive (4)**
7:23,25;8:13;12:10
**dropped (1)**
6:11
**dump (1)**
24:5
**during (2)**
8:24;9:1

**E**

**earlier (2)**
5:25;24:18
**easier (1)**
18:11
**East (2)**

5:9,13
**easy (1)**
24:10
**effect (1)**
11:8
**either (4)**
17:7;18:7;19:16;
23:21
**elements (1)**
19:3
**else (1)**
11:20
**email (17)**
6:16;8:7,9,11,12,
13,14;9:13,14,23;
10:17;12:1,2;18:4;
21:11,24;22:11
**emails (13)**
7:4,22;8:6,13,16;
10:25;11:23;12:16,
19;14:1;18:16;22:2;
24:9
**employed (1)**
18:18
**employee (4)**
12:16;14:2,5,7
**employees (9)**
9:13,14,23,25;
10:17;11:1;12:3,6;
24:9
**employees' (2)**
11:23;18:17
**ends (1)**
19:24
**enjoy (1)**
13:8
**entered (2)**
5:24;6:5
**entire (1)**
15:16
**ESQ (2)**
4:8,17
**essence (1)**
8:9
**evening (1)**
24:3
**everybody (1)**
19:22
**everyone (1)**
5:2
**evidence (2)**
10:25;14:21
**exactly (1)**
16:25
**examination (1)**
8:24
**example (1)**
15:8
**exchanges (1)**
9:14
**execute (1)**
20:10
**exist (2)**

10:25;16:16
**existed (1)**
15:17
**expected (1)**
9:15
**extension (1)**
23:4
**extent (5)**
16:16;17:1,2;
24:25;25:2

**F**

**fact (4)**
7:7;9:6;10:24;
22:17
**facts (1)**
16:22
**failed (1)**
6:23
**far (1)**
17:5
**February (1)**
8:11
**Federal (2)**
14:21;19:19
**fee (1)**
8:8
**few (1)**
18:24
**figure (1)**
16:25
**figuring (1)**
13:11
**file (2)**
6:15;7:7
**filed (3)**
16:1;18:24;20:17
**files (1)**
12:6
**filled (1)**
6:12
**final (1)**
22:23
**finalize (1)**
19:8
**financial (2)**
9:16,21
**find (1)**
8:3
**finish (2)**
14:7;16:14
**flash (3)**
7:23;8:13;12:10
**focus (1)**
24:11
**folder (1)**
6:14
**found (1)**
19:2
**four (1)**
6:11
**frame (1)**

17:25
**frustrating (1)**
5:24
**full (5)**
12:24;13:2,17,21;
22:25
**fully (2)**
19:1;22:4
**funds (2)**
7:12;18:21

**G**

**game (1)**
16:7
**Gaurino (1)**
8:23
**general (2)**
7:19;15:22
**gets (1)**
18:8
**goes (1)**
15:12
**Goldberg (1)**
12:9
**Good (7)**
5:6,7,18,21,23;
20:19;25:7
**GOTTLIEB (22)**
4:11,17;5:18,19,
19;17:17,24;18:1,3,4;
19:10;20:5,7,15,19,
23;21:2,11,21;23:19,
22,23
**Guarino (15)**
4:12;5:19;6:7;8:7,
12,19;9:9,14;15:13,
19;17:3,19,20;19:10;
20:10
**Guarino's (1)**
18:6
**guess (1)**
12:13

**H**

**hampering (1)**
19:8
**handwritten (1)**
21:15
**happened (1)**
16:25
**happy (1)**
18:12
**hard (1)**
12:5
**HASS (2)**
4:11;5:19
**hear (1)**
10:15
**heard (2)**
17:15,16
**hearing (5)**

5:25;6:3,8;7:6,6
**held (1)**
16:15
**Hello (1)**
5:5
**Here's (1)**
15:18
**Hi (1)**
5:11
**himself (1)**
18:7
**Honor (25)**
5:18,24;6:1,17;7:3,
7;8:3,6,15,20;10:9,
16;11:19;14:7;17:18;
19:5;21:3;22:1,2,15,
17;23:10,24;24:15,23
**Honor's (5)**
6:9,23;9:5;19:1;
22:4
**hours (1)**
6:8
**hundred (5)**
10:10;11:7;12:23;
13:18;17:20

**I**

**identified (1)**
24:25
**identify (1)**
15:20
**important (1)**
11:21
**impose (1)**
6:2
**in- (1)**
16:20
**include (2)**
18:23;22:7
**included (2)**
8:13;9:20;19:5
**individually (1)**
5:20
**information (1)**
22:10
**instructed (1)**
7:7
**integrity (1)**
13:10
**interest (1)**
20:24
**interrupt (1)**
9:2
**into (4)**
13:6,20;15:9,10
**investigation (2)**
9:7;14:13
**IOLA (1)**
6:17
**issue (2)**
6:2,6;7:24;8:15;
18:7

**issued (2)**
6:6;11:16
**item (5)**
13:18,24;15:4;
18:14;23:1
**items (1)**
13:20

**J**

**James (2)**
4:12;5:19
**Judge (10)**
5:6,23;11:14;
15:24;18:1,11,16;
23:19,23;25:6
**JUSTICE (1)**
4:2

**K**

**keep (5)**
10:19;12:12;21:6,
8;22:18
**kept (3)**
21:14,16,25
**kind (1)**
19:19

**L**

**laboring (1)**
20:16
**lack (2)**
11:6;13:15
**larger (1)**
8:15
**last (10)**
6:14;7:4,11,24;
9:22;11:18,24;19:18;
21:3;22:24
**latitude (1)**
16:25
**LAWRENCE (2)**
4:17;5:18
**least (2)**
20:17,23
**left (2)**
20:7,9
**less (1)**
12:8
**letter (2)**
7:8;18:5
**life (1)**
18:11
**line (1)**
9:2
**list (1)**
24:8
**little (1)**
11:22
**LLC (1)**
5:10

**log (1)**
16:19
**logs (1)**
16:1
**look (1)**
7:22
**looking (2)**
12:20;24:4
**looks (1)**
24:13
**loose (1)**
19:24
**loss (1)**
11:5

**M**

**making (1)**
12:12
**many (1)**
22:24
**marital (1)**
14:25
**married (1)**
15:2
**Marshals (1)**
13:5
**matter (4)**
11:1,2;15:22;21:7
**may (9)**
6:10,15,15;7:7;
10:7,7;14:21;16:13;
19:24
**mean (4)**
20:20;21:21;22:10;
24:2
**means (1)**
21:13
**meeting (6)**
6:8;8:21;9:1;15:8;
17:22,24
**metadata (3)**
22:7,8,10
**might (1)**
9:17
**mind (1)**
23:2
**mine (2)**
12:7,8
**missed (1)**
11:25
**missing (2)**
20:6;21:3
**misspells (1)**
12:13
**mistake (1)**
12:12
**moment (4)**
11:15;15:15;19:6;
24:21
**Monday (1)**
12:18
**month (3)**

5:25;10:22;23:2
**more (4)**
11:4,21,23;12:5
**morning (1)**
23:8
**most (1)**
9:17
**mouse (1)**
16:7
**move (2)**
18:14;20:17
**multiple (2)**
19:22;24:10
**myself (1)**
12:1

**N**

**name (2)**
12:11,13
**names (1)**
9:25
**near (1)**
22:21
**necessary (1)**
20:12
**need (7)**
7:6;11:22;15:20;
16:18;22:20;24:7;
25:1
**needed (1)**
10:19
**Neil (5)**
5:8;12:11;15:24;
23:10;24:23
**New (1)**
4:6
**news (1)**
5:23
**next (5)**
12:10,15;18:14,25;
22:15
**night (1)**
6:10
**none (2)**
7:1,2
**nonprivileged (1)**
14:11
**notwithstanding (1)**
17:8
**November (6)**
5:25;6:1,9;10:22;
23:18,25
**number (2)**
7:4;9:13
**NY (2)**
4:6,15

**O**

**oar (1)**
20:16
**object (1)**

7:21
**objections (1)**
7:19
**obligated (2)**
11:3;15:5
**obligation (1)**
20:20
**obligations (2)**
6:4;7:5
**Obviously (1)**
10:2
**occurred (3)**
13:11;17:3;23:17
**o'clock (4)**
5:2,3,3;24:5
**October (1)**
23:3
**off (1)**
6:11
**Office (5)**
4:3;6:11;7:23;
9:15;14:2
**Once (4)**
12:20;13:7;22:22;
24:4
**one (5)**
8:6,14;12:23;
22:24,24
**one-hundred (1)**
22:25
**one-page (1)**
6:16
**only (6)**
8:14;13:4,7;15:12;
17:15;23:3
**open (2)**
7:25;8:2
**order (13)**
5:24;6:5,9,23;9:5;
10:16;11:16;15:25;
16:18;19:2,4;22:4;
24:24
**ordered (2)**
7:5;24:15
**orders (2)**
10:23;11:11
**original (3)**
7:18;19:7,12
**originals (1)**
19:9
**otherwise (2)**
6:3;15:17
**ought (3)**
13:11;24:10;25:1
**out (3)**
13:11;16:25;25:3
**outlined (2)**
13:19;23:1
**Outlook (1)**
7:25
**outstanding (4)**
13:4,21,24;24:22
**over (8)**

6:7;10:22;12:4,9;
18:12;19:7;21:10;
23:2

## P

**page (2)**
7:11;15:24
**pages (1)**
6:7
**paid (2)**
10:12;20:17
**paragraph (1)**
14:10
**part (1)**
21:20
**participate (1)**
23:19
**particular (1)**
10:16
**passwords (2)**
10:19;11:23
**past (1)**
11:14
**pause (1)**
10:13
**pay (1)**
8:9
**payment (1)**
8:7
**penalties (1)**
20:24
**penalty (1)**
7:14
**per (2)**
10:9,11
**percent (3)**
13:18;17:20;22:25
**perhaps (6)**
7:6;8:3,24;12:6,7;
19:25
**period (2)**
12:25;15:16
**perjury (1)**
7:14
**person (3)**
14:4,6;23:22
**personally (2)**
11:5;20:21
**pertain (1)**
18:10
**pertains (2)**
15:23;18:21
**petition (1)**
18:24
**pick (2)**
13:2,17
**place (1)**
17:21
**Plains (1)**
4:13
**pleadings (2)**
6:12;11:14

**please (3)**
7:4;13:24;20:15
**PM (1)**
25:9
**point (2)**
10:15;12:3
**poor (1)**
12:22
**position (1)**
12:3
**post-conversion (2)**
16:11;17:13
**potentially (1)**
16:20
**practices (1)**
11:10
**prejudiced (1)**
25:4
**preparation (1)**
9:16
**principal (1)**
9:18
**principle (1)**
9:11
**prior (1)**
16:18
**privilege (31)**
7:20;8:21;9:3,4,6,
8,9;14:9,14,16,25;
15:5,6,11,14,16,23;
16:1,3,13,15,17,19;
17:4,5,6,6,9,11,21;
18:6
**privileged (5)**
7:21;14:22;15:4,7,
14
**privileges (4)**
14:16,19,20;18:9
**proceeding (2)**
6:13;16:23
**proceedings (1)**
25:9
**process (1)**
13:10
**produce (6)**
6:17;7:21;10:23;
11:3;12:24;14:11
**produced (15)**
6:7,22;7:9,23;8:12,
14;9:14;11:1,18;
16:2;21:18,20;22:9;
25:1,1
**production (9)**
8:16;21:4;22:6;
23:17,25;24:8,20,21;
25:2
**project (2)**
9:24;10:1
**promise (1)**
20:10
**promised (1)**
19:25
**protect (1)**

15:5
**provenance (1)**
22:11
**purchaser (3)**
15:2;19:17,18
**purposes (2)**
9:6;14:13
**pursuant (1)**
16:17
**pursue (1)**
11:17
**put (2)**
18:8;24:8
**puts (1)**
24:2
**putting (1)**
12:15

## Q

**quote (1)**
14:11

## R

**raise (1)**
12:21
**raises (1)**
25:2
**rate (2)**
10:10;20:25
**rather (1)**
19:2
**read (1)**
13:20
**really (1)**
22:23
**reason (2)**
14:9;20:19
**reasonable (1)**
12:25
**recall (3)**
6:5,10;7:7
**received (7)**
6:18;7:19;8:6,17,
18;18:21,24
**recipient (1)**
15:21
**record (6)**
8:8;13:15,19,20,
24;14:8
**records (6)**
21:4,4,6,25;22:5;
24:9
**Redwells (1)**
6:11
**re-execute (2)**
20:11,14
**regard (1)**
17:23
**regularly (1)**
11:10
**related (2)**

7:25;18:18
**relationship (1)**
17:10
**relevant (1)**
14:11
**reminded (2)**
8:25;9:3
**renew (1)**
20:3
**renews (1)**
20:10
**repeat (1)**
13:24
**report (1)**
22:15
**reporting (1)**
24:1
**representations (4)**
6:24;7:15,16;12:20
**representing (1)**
5:12
**request (2)**
14:12;19:5
**required (3)**
6:17,24;16:1
**re-sign (1)**
19:10
**respect (2)**
15:12;16:8
**respondent (1)**
6:25
**response (4)**
7:14,18,18;14:10
**responses (4)**
6:22,24;18:25;22:4
**responsive (1)**
14:12
**rest (1)**
18:8
**retained (1)**
7:20
**retainer (1)**
18:23
**return (1)**
19:9
**review (1)**
16:21
**right (12)**
5:17,22;7:21,24;
13:23;14:24;16:14;
20:22;23:6,7,13;25:7
**rights (1)**
25:3
**Road (1)**
4:13
**rolling (1)**
24:7
**room (1)**
13:13
**Rule (6)**
6:5,23;9:5;14:21;
15:25;19:1

## S

**safe (1)**
25:7
**sale (1)**
8:4
**same (1)**
12:3
**sanction (2)**
10:11;12:22
**sanctions (6)**
6:2;10:10;13:16,
22;24:16,19
**sat (1)**
6:8
**satisfied (1)**
7:9
**saying (4)**
10:21;14:18;15:3,3
**Scarsdale (1)**
4:15
**schedules (2)**
9:16,21
**scheduling (1)**
5:25
**scope (1)**
18:6
**search (4)**
7:1,15;11:25;20:4
**searched (2)**
9:12,23
**searches (1)**
12:2
**Section (1)**
9:1
**seem (1)**
24:10
**seeming (1)**
11:6
**Segal (2)**
5:8,8
**select (1)**
13:21
**send (2)**
18:4;20:13
**sender (1)**
15:21
**sent (2)**
6:16;7:3
**sentence (1)**
16:14
**September (2)**
15:25;19:1
**services (1)**
21:5
**set (5)**
19:23;20:1,8,9,12
**sets (1)**
19:22
**seven (1)**
13:8
**shifting (1)**

24:11
**shoulder (1)**
20:20
**show (2)**
5:24;6:9
**shows (1)**
22:11
**sic (2)**
12:9;21:11
**similarly (1)**
12:10
**simply (4)**
15:6;16:5,6;20:3
**single (3)**
7:11;10:23;12:2
**sit (1)**
12:1
**situation (4)**
11:4,10;16:1,22
**slew (2)**
14:20,24
**sorry (2)**
5:3;9:9
**sought (1)**
9:2
**spans (1)**
19:6
**speak (1)**
22:12
**speaks (2)**
8:14;19:4
**specifically (1)**
15:20
**speechless (1)**
11:9
**spend (1)**
24:3
**spoke (1)**
8:25
**stack (1)**
10:3
**staff (2)**
9:17,18
**Stakes (2)**
12:22,22
**stand (2)**
5:22;7:3
**standard (2)**
7:19;8:17
**standing (1)**
9:10
**start (1)**
10:21
**started (1)**
23:2
**state (2)**
6:13;14:9
**stated (1)**
16:5
**statement (3)**
9:1,16,20
**statements (8)**
6:20,20,21;7:13;

12:17,19;18:21;22:3
**STATES (2)**
4:2,3
**stating (1)**
16:10
**still (4)**
6:21;14:4,6;17:3
**Street (3)**
4:4;5:10,13
**subject (4)**
10:22;15:11,22;
16:20
**subpoena (3)**
10:4;19:1;24:25
**subpoenas (2)**
6:6,7
**subsequent (3)**
15:19;16:16;17:1
**suffice (1)**
10:17
**sufficiently (5)**
7:5,8,9;12:24;
16:18
**suggest (1)**
24:8
**Suite (2)**
4:5,14
**Sullivan (1)**
11:14
**supporting (1)**
6:19
**suppose (2)**
10:3;19:9
**sure (3)**
12:7,9;21:12
**surprisingly (1)**
16:17
**surrounding (1)**
16:23

## T

**table (1)**
19:23
**talked (1)**
18:16
**talking (2)**
17:9;24:5
**tax (2)**
19:8;20:17
**tech (1)**
10:19
**telephone (1)**
23:20
**TELEPHONICALLY (2)**
4:17;23:22
**term (1)**
22:21
**testified (1)**
8:21
**Thanksgiving (1)**
25:8
**theirs (1)**

12:8
**though (1)**
17:2
**thought (1)**
12:23
**three (2)**
6:12;12:6
**Thursday (1)**
23:6
**times (3)**
8:24;9:1;22:24
**title (2)**
19:13,16
**today (12)**
7:3;9:10;10:11,25;
12:18;13:14,15,25;
15:13;16:8;22:14;
23:1
**today's (2)**
7:5,6
**Togut (4)**
5:8,9;8:22,22
**told (1)**
6:14
**took (1)**
17:21
**top (1)**
24:8
**transcripts (1)**
6:12
**transfer (3)**
19:8;20:11,17
**transition (1)**
19:6
**translation (1)**
8:4
**trial (2)**
23:7,8
**truly (1)**
10:24
**Trustee (16)**
4:3;5:9,16;6:6,6;
9:4,5;14:13;15:16,
20;16:9,16,20;20:2,
24;24:24
**trustee's (3)**
9:7;18:25;25:3
**trusteeship (1)**
15:12
**try (2)**
10:3;20:15
**trying (3)**
10:14;16:6,22
**turn (1)**
18:12
**turned (4)**
12:4;19:7;20:1;
21:10
**two (3)**
6:8;12:6,16

## U

**unacceptable (1)**
11:17
**unambiguous (2)**
19:4;24:24
**uncover (1)**
16:22
**uncovered (1)**
11:16
**under (6)**
7:14;14:9;16:2,23;
19:18;20:8
**underlying (1)**
12:17
**understands (3)**
8:20;9:8,9
**Understood (1)**
11:22
**Unfortunately (1)**
20:7
**unintentional (1)**
12:1
**UNITED (2)**
4:2,3
**up (4)**
5:4;8:25;16:8,15
**updated (6)**
7:12,13;18:20,25;
22:2,3
**updating (1)**
18:20
**upon (1)**
9:2
**using (1)**
7:25

## V

**Varick (1)**
4:4
**various (1)**
12:2
**VELEZ-RIVERA (7)**
4:8;5:15,15;23:13,
15;24:13,15

## W

**waive (2)**
9:5;14:22
**waived (12)**
7:20;8:21;9:6,8,10;
14:14;15:17;17:4,5,9,
14,20
**waiver (2)**
15:14;18:6
**walks (1)**
19:22
**warrant (1)**
6:2
**way (1)**
18:18
**Wednesday (1)**
12:19

199 EAST 7TH STREET LLC
Case No. 14-13254-scc

November 21, 2016

week (2)
  7:4;9:22
weren't (1)
  7:16
whatsoever (1)
  13:13
Whereupon (1)
  25:9
White (1)
  4:13
whole (1)
  14:20
willfully (1)
  11:11
willingness (1)
  11:6
wish (1)
  5:23
withdraw (1)
  8:25
withheld (2)
  16:2,4
withhold (1)
  14:8
within (4)
  10:18;12:10,15,24
Without (2)
  17:23;20:8
words (1)
  12:22
work (2)
  10:7;21:2
worked (3)
  9:23;10:1;12:7
working (1)
  14:2
written (12)
  6:22,24,24;7:14,15,
  18,18;12:20;14:10;
  16:1;18:25;22:3

**Y**

years (1)
  13:8
York (1)
  4:6

**1**

1 (2)
  23:5,6
1,000 (1)
  10:12
10,000-dollar (1)
  18:23
10014 (1)
  4:6
1006 (1)
  4:5
10658 (1)
  4:15
121 (1)

  4:14
199 (2)
  5:9,13
19th (1)
  23:3
1st (4)
  23:11,16;24:1,20

**2**

2 (2)
  5:3,3
2004 (5)
  6:5,23;9:5;15:25;
  19:2
201 (1)
  4:4
2016 (1)
  15:25
21st (1)
  10:22
22 (1)
  19:1
22nd (1)
  15:25

**3**

3 (2)
  5:2;15:24
3,200 (1)
  10:12
3:16 (1)
  25:9
30,000 (1)
  8:10
30th (3)
  23:18,25;24:7
341 (4)
  6:8;8:21;9:1;17:22
35,000 (1)
  8:10

**4**

4,000 (1)
  6:7

**5**

5 (1)
  24:5
5,000 (1)
  8:10

**6**

6 (1)
  14:10
670 (1)
  4:13

**7**

7 (2)
  5:9;15:10
76 (1)
  19:2
7th (3)
  5:10,13,25

**9**

9:30 (3)
  23:11,16;24:1
9th (2)
  6:1,9