NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 7 |
| 199 East 7th Street LLC, | ) |
| | ) Case No. 14-13254 (SCC) |
| Debtor. | ) |
| | ) |

**DECISION AND ORDER GRANTING CHAPTER 7 TRUSTEE'S REQUEST**
**TO DIRECT THE UNITED STATES MARSHALS TO TAKE DAVID CARLEBACH**
**INTO CUSTODY AND HOLD HIM IN THEIR CUSTODY**
**UNTIL SUCH TIME AS HE PURGES HIS CIVIL CONTEMPT**

Attorney David Carlebach ("Carlebach"), an experienced practitioner who regularly appears in the bankruptcy courts for the Southern and Eastern Districts of New York, stands in contempt of this Court's orders directing him to produce documents relating to his representation of the Debtor, 199 East 7th Street, LLC. Notwithstanding the imposition of monetary sanctions, which, despite his assurances to the Court, have not been paid, Carlebach persists in his refusal to comply with the Court's clear and unambiguous orders directing the production of documents and bank records. The chapter 7 Trustee now charged with overseeing this case has expended countless hours and incurred substantial expense seeking these documents in order to complete the administration of the Debtor's case and, in so doing, right the wrongs permitted and committed by Carlebach in his handling of this case prior to its conversion to chapter 7. The Trustee has been thwarted at every turn by Carlebach.

Carlebach's contumacious conduct is, in a word, inexplicable. Having afforded Carlebach every opportunity to comply with the Court's orders for over four months – and granted Carlebach multiple courtesies and extensions – the Court has reluctantly concluded that

the imposition of monetary sanctions has been and is ineffective to compel compliance.  To the contrary, as the amount of sanctions due and payable has continued to increase, Carlebach appears to have doubled-down in his defiance of the Court's orders, seeking to thwart the Trustee's attempt to obtain his bank records directly from Citibank by filing a motion to quash the Trustee's subpoena to Citibank.  Indeed, his latest ploy was to file a letter, at 8:54 a.m. this morning, requesting an adjournment of today's hearing so that he can retain counsel to represent him, which request was denied by the Court at approximately 10:15 a.m.

Enough is enough.

For the reasons set forth below, the Court has determined that an Order should be entered directing the United States Marshals Service to take Carlebach into their custody, as a coercive civil contempt sanction.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 11, 2017, the Court entered its *Order to Show Cause (A) Scheduling a Hearing to Consider Entry of a Contempt Citation, the Imposition of Sanctions, and the Issuance of a Bench Warrant and (B) Directing David Carlebach, Esq. to Attend Such Hearing* [Dkt. No. 147], which required Carlebach to attend a hearing before the Court on January 18, 2017 (the "January 18 Hearing") and to show cause (A) why the Court should not enter an Order declaring that Carlebach is in contempt of various Orders of the Court, (B) why sanctions should not be imposed for Carlebach's continued failure to comply with the Court's Rule 2004 Order and the Trustee Subpoena (both defined below) and the other Orders of the Court, and (C) why a bench warrant should not be issued directing the United States Marshal to apprehend and deliver Carlebach to the Court (the "Order to Show Cause").

Having considered the full record of this case, and mindful that a court should not blindly accept findings of fact and conclusions of law proffered by the parties (*see St. Clare's Hosp. and Health Ctr. v. Ins. Co. of North Am., (In re St. Clare's Hosp. and Health Ctr.)*, 934 F.2d 15 (2d Cir. 1991) (referencing *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 (1964)), and having conducted an independent analysis of the law and the facts, the Court makes the following Findings of Fact and Conclusions of Law.[1]

**Jurisdiction and Venue**

1.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background and Procedural History**

**A.      Chapter 11 Proceedings**

4.      On November 26, 2014 (the "Petition Date"), 199 East 7th Street, LLC (the "Debtor") filed a voluntary petition (the "Petition") for relief under Chapter 11 of Title 11, U.S.C., section 101, et seq. (the "Bankruptcy Code") in the Court.  The Debtor's schedule of assets and liabilities, schedule of current income and current expenses, and other required documents were not filed with the Petition.  Dkt. No. 1.[2]

5.      The Petition was signed by James Guarino, as the Debtor's managing member ("Guarino").

---

[1]      The findings of fact and conclusions of law herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

[2]      Docket references are to docket entries in Case No. 14-13254.

6.      Carlebach signed the Petition as counsel for the Debtor.

7.      On December 9, 2014, the Debtor filed an amended Petition.

8.      On December 10, 2014, the Debtor filed a motion for an order to extend its deadline to file schedules, lists and statements of affairs.  Dkt. No. 7.

9.      The Debtor's schedule of assets and liabilities, schedule of current income and current expenses, and other required documents were filed on January 9, 2015 (the "Schedules").  Dkt. No. 10.  The Schedules were later amended.  Dkt. No. 20.

10.      On the Petition Date, the Debtor was the owner of shares in a housing cooperative corporation known as East 7th Street Development Corp. (the "Shares") and the lessee under proprietary leases for apartment units represented by the Shares (the "Proprietary Leases").

11.      On December 8, 2014, the Debtor filed its application (the "Retention Application") to retain Carlebach and the Law Offices of David Carlebach, Esq. as its counsel. Dkt. No. 4.

12.      The Retention Application disclosed that Carlebach had received a $10,000 prepetition retainer.

13.      The Court approved the Debtor's retention of Carlebach by an Order entered on January 21, 2015.  Dkt. No. 14.

14.      No committee of unsecured creditors was appointed in this Debtor's Chapter 11 case.

15.      On March 18, 2015, Carlebach filed an application on behalf of the Debtor (the "Sale Motion") for an order authorizing, among other things, the Debtor's sale of the Shares and the Assignment of the Proprietary Leases to THM Funding LLC ("THM"), subject to higher

and better offers, for $1 million pursuant to a contract of sale with THM dated March 16, 2015. Dkt. No. 21.

16.     THM delivered a contract deposit of $100,000 to Carlebach.

17.     On May 6, 2015, the Court entered the *Order Approving (I) Bidding Procedures, (II) Form and Manner of Notices, and (III) Form of Contract, Including Bid Protections; (B) Scheduling the Time, Date and Place for the Auction and Hearing to Consider the Sale of Shares and the Assumption and Assignment of Proprietary Leases; and (c) Granting Related Relief* (the "Bidding Procedures Order").  The Bidding Procedures Order scheduled an auction to be conducted on June 18, 2015 (the "Auction") and a sale hearing to be conducted on July 9, 2016 (the "Sale Hearing").  Dkt. No. 24 at ¶¶ 7-8.

18.     On June 17, 2015, the Debtor filed its *Notice of Postponement of Auction Sale*, "for a period of one (1) week . . . ."  Dkt. No. 31.

19.     On June 29, 2015, the Debtor filed its *Notice of Adjournment of Sale Confirmation Hearing*, and adjourned the Sale Hearing until July 21, 2015.  Dkt. No. 33.

20.     On July 16, 2015, the Debtor filed its *Notice of Cancellation of Auction Sale.*  Dkt. No. 35.

21.     None of the Debtor's notice adjourning the Auction, notice adjourning the Sale Hearing, or its notice cancelling the Auction provided any explanation for those adjournments.

22.     The Debtor's cancellation of the Auction was not authorized by the Bidding Procedures Order.

23.    On June 29, 2015, a $500,000 contract deposit was delivered to Carlebach on behalf of Moses Strulovitch ("Strulovitch") in connection with the sale of the Shares and the assignment of the Proprietary Leases.

24.    The Debtor failed to file a monthly operating report for June 2015.  The Debtor filed a monthly operating report for July 2015 on August 11, 2015, but ceased filing monthly operating reports thereafter.

25.    The Debtor failed to reflect the deposits from THM or Strulovitch in any of its monthly operating reports.

26.    The Court conducted a hearing to consider the Sale Motion (the "Sale Hearing") on July 21, 2015.

27.    Notwithstanding the unauthorized cancellation of the Auction, the Court entered the *Order (I) Approving Sale of Debtor's Unsold Shares in East 7th Street Development Corp.; (II) Authorizing Assumption and Assignment of Proprietary Leases Appertunant (sic) Thereto; and (III) Granting Related Relief* (the "Sale Order"), and approved the sale of the Shares and the assignment of the Proprietary Leases to Strulovitch for $1,650,000 (the "Sale"). Dkt. No. 46 at ¶ M.

28.    The Sale Order limited the payments that could be made from the sale proceeds to: (a) customary closing costs and applicable transfer taxes; (b) a break-up fee of $60,000 to be paid to THM; (c) a back-up bidder deposit of $100,000 to be paid to THM; and (d) the Cure Amount of $250,000 to be paid to the Cooperative Corporation (defined in the Sale Order).  *See id.* at ¶ 23.[3]  No other payments were authorized by the Sale Order.

---

[3]    The Court also authorized the Debtor's return of a contract deposit of $131,000 to 199 East 7th Acquisition Corp.  Dkt. No. 66.

29.     Carlebach has advised the Court that the Sale closed on October 29, 2015 (the "Closing").

30.     On October 29, 2015, Carlebach drew a check from his attorney IOLA account, No. XXXXXX19 (the "IOLA Account") to the title insurer, Infinity Land Services, LLC (the "Title Company"), in the amount of $30,462.50 (the "Title Check"), which funds were to have been used to pay the transfer taxes due and owing to the City of New York.

31.     At or about the time of the Closing, the amount of the Title Check was incorrect.  Carlebach told the Title Company that he would address the issue, but did not do so.

32.     The Title Check was never negotiated.

33.     Net sale proceeds of the Sale (the "Sale Proceeds") should have totaled approximately $1 million after payment of the amounts authorized by the Sale Order.

34.     Pursuant to paragraph 23 of the Sale Order, the Sale Proceeds were to be paid to the Debtor's bank account (the "DIP Account").

35.     The Debtor and Carlebach failed to comply with Bankruptcy Rule 6004(f)(1) by failing to timely file a notice of the completed Sale.

36.     Following the Closing, the Debtor disbursed the Sale Proceeds to its "equity holders" (the "Unauthorized Transfers").

37.     The Unauthorized Transfers were made without any prior notice or authorization of this Court, and without any prior notice to the United States Trustee (the "U.S. Trustee") or to the Debtor's creditors.

38.     Following the Sale, Carlebach states that he "requested that a sum for legal fees be set aside pursuant to the Sale Order subject to application [to] the Court and the Debtor transmitted $30,000.00 to Counsel" (the "Additional Fees").  Dkt. No. 60 at ¶ 7.

39.     On February 8, 2016, the sum of $30,000 was wired from the DIP Account to Carlebach for his fees.

40.     No fee application was made to the Court, and no Order was ever obtained allowing $30,000 in fees to Carlebach.

41.     Carlebach has never filed a supplemental statement to disclose his receipt of the Additional Fees, as required by Bankruptcy Rule 2016.

42.     The Debtor never filed a plan of reorganization or a disclosure statement.

43.     On May 10, 2016, the U.S. Trustee filed his *Motion for an Order Dismissing Chapter 11 Case, or Alternatively, Converting the Case to One Under Chapter 7* (the "Conversion Motion") recommending dismissal of this case.  Dkt. No. 52.

44.     Neither the Debtor nor Carlebach advised the Court, the U.S. Trustee, or any party in interest that the Sale to Strulovitch had been consummated until eight months after the Closing and after the Conversion Motion was filed.

45.     It was not until on or about June 23, 2016 that Carlebach informed the U.S. Trustee that the Sale had closed, and that the Sale Proceeds had been transferred to "equity."  Dkt. No. 59 at ¶ 11.

46.     No details regarding the Sale, the Closing, or the Sale Proceeds and any payments therefrom were reported to the Court or filed on the electronic docket of this case.

47.     On August 4, 2016, the U.S. Trustee submitted a supplemental declaration (the "Supplemental Declaration"), recommending conversion of the Debtor's case to a case under Chapter 7.  Dkt. No. 59.

48.     In the Supplemental Declaration, the U.S. Trustee advised that, during a telephone conversation on or about June 23, 2016, Carlebach informed the U.S. Trustee that the Sale Proceeds had been transferred to the "Debtor," not to "equity" as he had previously stated.

49.     On August 8, 2016, just prior to the Conversion Hearing (defined below), Carlebach filed the Debtor's *Response to Motion of US Trustee to Dismiss or Convert Case Herein* (the "Response").  Dkt. No. 60.

50.     In the Response, Carlebach advised the Court that:

[T]he Debtor disbursed the funds in the DIP account to the equity holders.  This was done without the knowledge of Counsel.

Dkt. No. 60 at ¶ 7.  In the Response, the Debtor argued that its case should be dismissed, because it did not have any "real creditor[s]."  *Id.* at ¶ 10.

51.     A hearing to consider the Conversion Motion was originally scheduled to be conducted on June 28, 2016, but was adjourned until August 8, 2016 at Carlebach's request (the "Conversion Hearing").

52.     During the Conversion Hearing, Carlebach represented to the Court that the Debtor's managing member, Guarino, had disbursed the Sale Proceeds without Carlebach's knowledge.  *See Transcript of Hearing Held on August 8, 2016,* at 10:18-24; *see also id.* at 8:8-15, 17:12-18:3 (the Debtor "insisted that the proceeds of the sale be paid directly into the DIP account" and then "took the money").  Carlebach explained that the equity holders were Guarino's "family members."  *See id.* at 11:9-11.

53.     Carlebach further advised the Court that the Debtor's principal is "a very forceful type personality" who convinced Carlebach to deposit the sale proceeds into the DIP Account instead of counsel's account.  *See id.* at 11:1-6.

54.     Having considered the record in this case, the Court stated during the

Conversion Hearing:

> [A]s far as I can tell, virtually no order that I've ever entered in this
> case has been followed to the letter or even close to the letter.  I
> have no basis for believing virtually anything that's said.  And I
> don't know where all the money is.  I don't know who all the
> creditors were.  I don't know why there isn't a plan.  I just don't
> understand why I should permit a case to be conducted this way,
> and I won't.  I mean I'm answering my own question.  I will not
> permit a case to be conducted this way.

*Id.* at 5:20-6:3.

55.     During the Conversion Hearing, the Court directed that "[t]hose monies

come back into the DIP account" together with a detailed accounting.  *Id.* at 11:12-18.

56.     On September 8, 2016, the Court entered an order converting the case to

chapter 7 (as amended, the "<u>Conversion Order</u>"), which directed:

> that all funds belonging to the Debtor as of October 29, 2015 that
> were disbursed without Court approval shall be returned to the
> chapter 7 trustee no later than the close of business on September
> 21, 2016.[4]

Dkt. No. 66 at p. 2.

57.     The Conversion Order further directed the Debtor to file (A) a schedule of

unpaid debts incurred after the commencement of the Chapter 11 case within fifteen days of the

date of the Conversion Order (the "<u>Administrative Expense Schedules</u>"), and (B) a final report

(the "<u>Debtor Final Report</u>") not later than 30 days after the date of the Conversion Order.  *See id.*

---

[4]     The Conversion Order provides that "[f]or the sake of clarity, the return of Debtor funds referenced above
does not include those sums distributed in accordance with the Order (I) Approving Sale of Debtor's Unsold shares
in East 7th Street Development Corp.;  (II) Authorizing Assumption and Assignment of Proprietary Leases
Appertunant [sic] Thereto;  and (III) Granting Related Relief (the 'Sale Order')(ECF Doc. No. 46) that authorized (i)
the 'Break-up fee' of $60,000.00 paid to THM Funding, LLC, (ii) the 'Backup bidder deposit' in the amount of
$100,000.00 paid to THM Funding, LLC; (iii) the 'Cure Amount' of $250,000.00 paid to 'Tarter Krinsky and
Drogin LLP as attorneys for the Cooperative Corporation' (all terms as defined in the Sale Order)(Sale Order at ¶
23); and (iv) the deposit given by 199 East 7th Acquisition Corp., a previously qualified bidder, in the amount of
$131,000.00."

B.    **The Chapter 7 Case**

58.    Albert Togut was appointed as the interim Chapter 7 trustee of the Debtor on September 8, 2016.  Dkt. No. 65.

59.    On September 19, 2016, Carlebach filed a Notice of Appeal from the Conversion Order (the "Appeal") and a Motion for a Stay Pending Appeal.  Dkt. Nos. 73 and 74.

60.    The Debtor's request to stay proceedings pending appeal was denied.  Dkt. No. 104; *Transcript of Hearing Held on September 29, 2016.*

61.    Carlebach filed his *Emergency Application for Order to Show Cause for an Order Pursuant to Fed. R. Bankr. P. 8007 for a Stay Pending Appeal of the Conversion Order and Subsequent Hearing Seeking to Hold Debtor in Contempt* (the "Stay Motion") in the United States District Court for the Southern District of New York (the "District Court").  The Stay Motion was denied by the District Court by Order dated October 13, 2016.  *See* Order, *199 East 7th Street LLC v. U.S. Trustee William K. Harrington,* Case No. 16-cv-7868 (CM) (S.D.N.Y. Oct. 13, 2016) [Dkt. No. 6] (the "District Court Order").  In the District Court Order, Judge Sullivan found that "the Court concludes quite readily that the Debtor is not likely to succeed in showing on appeal that Judge Chapman abused her discretion in converting this case," adding that "[i]ndeed, were the appeal assigned to this judge, the Debtor and its counsel would be lucky to avoid sanctions for the inflammatory, infantile attacks directed at the bankruptcy court in the instant motion."  *Id.* at 8-9.[5]

---

[5]    *See* District Court Order, n.3 ((*See, e.g.*, Mot. at 3–4 (calling the conversion "a vindictive act as a result of perceived disrespect"); *id.* at 4 (asserting that "[t]his District has suffered tremendously in past years because of a certain judge who was hostile to lawyers and acted unpredictably"); *id.* at 7 (accusing the court of acting based not on the merits but rather on "unbridled hostility towards the Debtor"); *id.* at 8 (arguing that the Debtor is "being punished for peccadillos because of imagined disrespect"); *id.* (accusing the court of "openly refus[ing] to look at the facts"); *id.* (arguing that "no emotionally detached and objective observer could possibly reach" the court's conclusion); *id.* at 9 (accusing the court of making a "deliberate and explicit decision to overlook" the fact that the Debtor had created "enormous value" and instead taking "a 'gotcha' approach"); *id.* at 10 (arguing that the trustee "is conducting a horrific witch hunt against law abiding successful citizens, just to please" the court); *id.* at 11

62.    The Schedules indicate the existence of unpaid pre-petition creditor claims.

63.    As of the date of conversion of the case to a case under chapter 7, the transfer taxes had not been paid to the City of New York.

64.    Unpaid quarterly fees are due and payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6).

65.    On September 22, 2016, the Trustee filed his *Ex Parte Application of the Chapter 7 Interim Trustee for an Order (I) Directing the Preservation of Documents and Recorded Information and (II) Authorizing the Issuance of Subpoenas for the Production of Documents and Deposition Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the "Rule 2004 Motion").  Dkt. No. 75.

66.    In the Rule 2004 Motion, the Trustee sought, among other things, an order pursuant to Bankruptcy Rule 2004, authorizing him to issue subpoenas for the production of all books, records, and documents including all emails, text messages, computers and/or lap top computers, hard drives, computer servers, back-up tapes, bank account statements, and all other documents related to the Debtor or its property concerning or otherwise evidencing the Debtor's assets and financial affairs (the "Books and Records"), and to examine various persons and entities, to obtain information concerning acts, conduct, property and liabilities of the Debtor, and other matters relating to the extent and the nature of the Debtor's estate.  Dkt. No. 75.

67.    The Rule 2004 Motion further sought injunctive relief prohibiting the destruction or alteration of the Books and Records (the "Provisional Relief").

---

(accusing the court of appointing a trustee "to tear up the case, find all kinds of bogus issues that don't exist, and then surcharge the Debtor a mammoth, feed-at-the trough fee application . . . to fulfill th[e] [c]ourt's single minded mission of punishing th[e] Debtor for cancelling a sale"); *id.* (arguing that "[n]othing could be more macabre or absurd" than the rulings of the bankruptcy court in this matter).))

68.    On September 22, 2016, the Court entered its *Order Authorizing Trustee to Issue Subpoenas and Obtain Testimony and for Injunctive Relief* authorizing the Trustee to issue subpoenas (the "Rule 2004 Order") to obtain documents and information to help him determine how best to compel compliance with the Court's Conversion Order and to chart a course for the administration of the estate:

> [P]ursuant to Bankruptcy Rule 2004, the Trustee is now authorized to issue subpoenas for the production of all books, records and documents including all emails, text messages, computers and/or lap top computers, hard drives, computer servers, back-up tapes and documents related to the Debtor or its property concerning or otherwise evidencing the Debtor's assets and financial affairs (the "Books and Records"), and to obtain deposition testimony consistent with Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), concerning any asset, liability, duty, obligation, contract, transaction, transfer, or other issue related in any way to the Debtor and its financial affairs . . . .

Dkt. No. 76 at 1-2.

69.    The Rule 2004 Order also authorized the Trustee to:

> waive attorney-client privilege that may attach to any of the Books and Records or communication between the Debtor and its members and its retained counsel in this case pertaining to any communication or act concerning the period in which the Debtor's case was a Chapter 11 case and this Court to permit the Trustee to obtain such items . . . .

*Id.* at 2.

70.    The Rule 2004 Order scheduled a September 29, 2016 hearing to consider the continuation of the Provisional Relief and entry of a preliminary injunction.  Dkt. No. 76.

71.    Pursuant to the Rule 2004 Order, the Trustee issued subpoenas to the Debtor and Carlebach on September 22, 2016.  Dkt. No. 88 (Certificate of Service).

72.     Guarino has produced documents pursuant to the subpoena issued to him by the Trustee including, without limitation, email correspondence that was sent to, or copied, Carlebach.

73.     The Trustee's subpoena issued and served upon Carlebach (the "Trustee Subpoena") required Carlebach's production of all of the Books and Records in his possession to the Trustee, on or before September 29, 2016.

74.     Pursuant to the Rule 2004 Order, Carlebach was required to provide written responses to the Trustee Subpoena containing certain representations (the "Required Representations"):

> a written declaration pursuant to 28 U.S.C. § 1746, attesting under penalty of perjury that: (i) none of the Books and Records have been altered, modified, deleted or otherwise destroyed; and (ii) the responding party has made a diligent search and effort to locate and produce the documents and information requested by the subpoena and that the written response as to each individual request contained in the subpoena is true and complete to the best of the responding party's knowledge and belief . . . .

Dkt. No. 76 at 3.

75.     The Trustee Subpoena stated that "[a]ny ground not stated in the objection or request for relief within the time provided by the Order, or any extensions thereof, shall be deemed waived." Trustee Subpoena, Instructions at ¶ 17.

76.     Carlebach was required to produce all responsive Books and Records in his possession, including Books and Records in the possession of, among others, his employees, and was required to produce a "Withheld Document List" describing any document that was not produced on the grounds that it was privileged or no longer within Carlebach's possession, custody, or control. *Id.* at ¶¶ 2, 14.

77.    Carlebach failed to comply with the Trustee Subpoena on or before the original September 29, 2016 production deadline.

78.    During a hearing held on September 29, 2016, the Court concluded that the Debtor had failed to comply with the Conversion Order by failing to (a) file the Administrative Expense Schedule and (b) deliver to the Trustee all funds belonging to the Debtor as of October 29, 2015 that were disbursed without Court approval.  *Transcript of Hearing held on September 29, 2016,* at 72:8-19; Dkt. No. 109.

79.    During the September 29, 2016 hearing, the Court concluded that the Debtor was in contempt of the Conversion Order.  Dkt. No. 109.

80.    In response to Carlebach's request made during the September 29, 2016 hearing, the Court extended the time within which Carlebach was to respond to the Trustee Subpoena to and including October 7, 2016 at 4:00 p.m.  *Transcript of Hearing held on September 29, 2016,* at 96:15-98:23.

81.    On October 13, 2016, the Court held a hearing to consider whether to hold Guarino in civil contempt for failure to comply with the Conversion Order.  Dkt. No. 109.

82.    During the October 13, 2016 hearing, Carlebach acknowledged that he had not complied with the Rule 2004 Order and the Trustee Subpoena.  *Transcript of Hearing Held on October 13, 2016,* at 30:15-33:7.

83.    At the conclusion of the October 13, 2016 hearing, the Court "So Ordered" the record (the "October 13 Order") and directed Carlebach to – on or before October 20, 2016 – deliver to the Trustee:  (a) all funds constituting property of the Debtor's estate in his possession;  (b) a written accounting of all funds received and disbursed by Carlebach on behalf

of the Debtor (the "Accounting"); and (c) a "complete" production in compliance with the Rule

2004 Order and the Trustee Subpoena (the "Production").

84.    The Court's October 13 Order also imposed a coercive civil sanction of

$100 per day payable to the Trustee for each day that Carlebach failed to comply with October

13 Order (the "Monetary Sanctions").

85.    On October 18, 2016, the Court entered its *Final Order Granting

Injunctive Relief*, which granted the injunctive relief sought by the Trustee's Rule 2004 Motion

on a final basis, thereby, among other things, prohibiting any party from altering or destroying

the Books and Records. Dkt. No. 117.

86.    As of October 18, 2016, Carlebach was in possession of two "buckets" of

estate funds: (a) the Additional Fees of $30,000 advanced by the Debtor to Carlebach for his

legal services; and (b) $30,462.50 – the amount of the check that Carlebach wrote from the

IOLA Account and sent to the Title Company, which the Title Company rejected.

87.    On October 19, 2016, Carlebach transferred $50,000 by a wire transfer

into the Trustee's estate account maintained for the Debtor's estate, representing a portion of the

estate funds required to be turned over to the Trustee pursuant to the October 13 Order.

88.    On October 28, 2016, Carlebach turned over the remaining $10,462.50 to

the Trustee by wire transfer.

## C.    The Court's Original Order to Show Cause

89.    The Court conducted a status conference in the case on November 3, 2016

at 10:00 a.m. (the "November 3 Hearing").

90.    During the November 3 Hearing, the Court determined that Carlebach had

still not complied with the Rule 2004 Order and the Trustee Subpoena, and directed the Trustee

to submit an Order to Show Cause (A) scheduling a hearing to consider the imposition of

additional sanctions, including without limitation, the issuance of a bench warrant, and (B)

directing Carlebach to attend such hearing. *Transcript of Hearing Held on November 3, 2016,* at

12:1-11, 14:1-4, 14:14-20, 25:8-13.

91.     Carlebach arrived at the Court for the November 3 Hearing at

approximately 11:00 a.m., by which time the full hearing had already concluded. *Id.* at 22:9-

23:4.  The Court resumed the November 3 Hearing so that Carlebach could be heard, and

Carlebach confirmed that he remained noncompliant with the Rule 2004 Order, the Trustee

Subpoena, and the October 13 Order. *Id.* at 23:15-21.

92.     Carlebach acknowledged that he had not yet begun to make the

Production. *See id.* at 23:15-21 ("I had been negotiating with [an e-discovery company] just

prior to the holiday.  Turns out that they wanted an enormous amount of money to do this.  They

take your whole drive.  And so I've been looking for other ways.  But I'm trying to make a

complete production, actually, to Mr. Berger in a way which will, you know, what they call

defensible discovery . . .").

93.     Carlebach assured the Court that he would "endeavor to get this thing

done very quickly." *Id.* at 25:2-3; *see also id.* at 27:8-9 ("And I will endeavor to make a

complete production.").  He added:  "I think I can have the production completed to the trustee

by Monday" – *i.e.*, by November 7, 2016. *Id.* at 25:16-17.

94.     The Court reminded Carlebach of the scope of his Production obligations,

including the Required Representations, *id.* at 26:13-22, and directed that the Production be

accompanied by a check for "all amounts outstanding" on the Monetary Sanctions. *Id.* at 26:6-9.

95.     On November 4, 2016, Guarino, represented by counsel, testified at a section 341 meeting for this case (the "341 Meeting").

96.     Carlebach attended the 341 Meeting.

97.     During the 341 Meeting, Guarino affirmatively waived attorney-client privilege for all communications with Carlebach. *Transcript of Section 341 Meeting held on November 4, 2016,* at p. 29.

98.     Guarino also testified under oath that he had not reviewed the Response or the Notice of Appeal filed by Carlebach on behalf of the Debtor before those pleadings were filed. *Id.* at pp. 26, 28.

99.     On November 7, 2016, the Court entered its *Order to Show Cause (A) Scheduling a Hearing to Consider Contempt Citation, the Imposition of Sanctions, and the Issuance of a Bench Warrant and (B) Directing David Carlebach, Esq. to Attend Such* (the "Original Order to Show Cause").  Dkt. No. 125.  The Original Order to Show Cause scheduled a hearing to be conducted on November 9, 2016 (the "November 9 Hearing").

**D.     Hearings in Furtherance of the Original Order to Show Cause**

100.    During the November 9 Hearing, the Trustee advised the Court that Carlebach's Production as of that date was incomplete:  emails were missing, Books and Records had not been produced, and bank account statements for the IOLA Account had not been produced; Carlebach had also failed to produce any time records in connection with his services in the Debtor's case. *Transcript of Hearing Held on November 9, 2016,* at 10:24-11:5, 11:9-12.

101.    During the November 9 Hearing, Carlebach acknowledged that he had failed to provide the Required Representations. *Id.* at 11:16-23.

102.    Carlebach also admitted that he had failed to provide bank statements for the IOLA Account supporting the partial accounting he had provided.  *Id.* at 11:16-23.

103.    Carlebach assured the Court that he would provide the missing items that afternoon:  (a) time records; (b) amended written responses with the Required Representations; and (c) bank statements supporting the partial accounting.  *Id.* at 11:9-23.

104.    During the November 9 Hearing, the Trustee advised the Court that at approximately 5:30 p.m. on November 8, 2016, Carlebach had delivered hard copy case files – consisting of four redwelds – to counsel for the Trustee.  Three redwelds contained copies of state court pleadings and transcripts concerning the Debtor, and Carlebach represented that the fourth redweld was Carlebach's bankruptcy case file; only one monthly operating report was found in the case file.  No inventory of the files was provided by Carlebach.  Carlebach indicated that he may have additional files for the Debtor's case.  At the same time, Carlebach delivered a cashier's check made payable to the Trustee in the amount of $1,000 representing a portion of the $1,900 of Monetary Sanctions that had accrued as of that date.  Carlebach advised counsel for the Trustee that the remaining $900 would be delivered on the morning of November 9, 2016.

105.    The Trustee further advised the Court that, during the morning of November 9, 2016, just prior to the November 9 Hearing, Carlebach produced a "thumb drive" to the Trustee and advised that it contained emails responsive to the Trustee Subpoena.

106.    At approximately 11:37 a.m. on November 9, 2016, Carlebach delivered to the Trustee (a) a one-page partial accounting of the funds he received and disbursed on behalf of the Debtor and (b) written responses to the Trustee Subpoena.  Carlebach failed to produce bank statements to support such accounting, despite being required to do so by the Rule 2004

19

Order and the Trustee Subpoena.  Carlebach also failed to deliver to the Trustee the remaining $900 of Monetary Sanctions.

107.    At approximately 12:13 p.m. on November 9, 2016, Carlebach delivered to the Trustee written responses to the Trustee Subpoena.

108.    Carlebach's November 9, 2016 written responses did not include the Required Representations.

109.    Carlebach's November 9, 2016 written responses retained the right to withhold privileged documents, but did not contain a privilege log, as required by the Rule 2004 Order.

110.    The November 9 Hearing was continued until November 21, 2016 (the "November 21 Hearing").

**E.**    **The November 21, 2016 Hearing**

111.    During the November 21 Hearing, the Trustee advised the Court that, on November 18, 2016, Carlebach informed counsel for the Trustee that he would not be able to produce emails from his employees' files, as he had been directed to do, prior to the November 21 Hearing.

112.    As of the November 21 Hearing, no additional Production had been received by the Trustee from Carlebach.

113.    Carlebach admitted during the November 21, 2016 hearing that he remained noncompliant with the Trustee Subpoena and the Rule 2004 Order.  *Transcript of Hearing Held on November 21, 2016,* at 11:22-25.

114.    As of the November 21 Hearing, Carlebach had not produced: (a) bank statements supporting his accounting; (b) amended written responses containing the Required Representations; or (c) a complete production of emails.

115.    For example, Carlebach failed to produce a version of a February 2016 email that Guarino had produced to the Trustee in connection with the subpoena issued to Guarino regarding Carlebach's request to the Debtor for $30,000 for legal services.

116.    Carlebach acknowledged that he had also failed to search the email files of his employees. *Transcript of Hearing Held on November 21, 2016,* at 11:22-12:4.

117.    During the November 21 Hearing, Carlebach admitted that his hard copy production may also be incomplete. *Id.* at 12:5-7 ("I haven't discovered any more hard copy files.  And I believe there are two, perhaps three employees who worked on the case.  And I will make sure – perhaps there's less of theirs than there was of mine.  I will make sure to get that all over to [counsel for the Trustee] . . .").

118.    Despite his assertion of privilege in his written responses, Carlebach had not produced a privilege log.

119.    At the November 21 Hearing, Carlebach stated that he would provide – by November 23, 2016 – responsive emails from his employees' files, bank statements underlying the accounting, and amended written representations. *Id.* at 12:15-20.

120.    As of the November 21 Hearing, the Monetary Sanctions had risen to $3,200.

121.    As of the November 21 Hearing, Carlebach had not provided original closing documents in connection with the Sale and the Closing, and Carlebach advised the Court

that, although he represented the Debtor at the Closing, he did not have those documents, because he left the Closing without taking copies of them.  *See id.* at 19:16-20.

122.    At the conclusion of the November 21 Hearing, the Court ruled that unless full compliance had been achieved by Carlebach on or before December 1, 2016, the "amount outstanding [wa]s going to be doubled."  *Id.* at 13:2-6, 24:18-22 ("Yes, as I said earlier, the daily sanctions are going to continue to accrue until there's complete production.  And if it's determined on December 1st that production is not complete as of that moment, the amount outstanding will be doubled.").  The Court added:  "The only other thing there is to do, Mr. Carlebach, is to ask the Marshals to bring you into custody."  The Court made clear that "sanctions are going to continue until there is full compliance."  *Id.* at 13:15-22 ("We're going to pick a date for there to be a hundred percent compliance with every item that Mr. Berger has outlined.").

123.    During the November 21 Hearing, it was made clear to Carlebach that he was directed to produce:

a.  All emails from his account or from the account of any employee working for or with his office concerning the Debtor, whether or not that person is still an employee (*id.* at 14:1-14, 18:16-19);

b.  An updated, complete accounting with bank statements that pertain to all of the funds that Carlebach received on behalf of the Debtor or disbursed on behalf of the Debtor, including the $10,000 prepetition retainer (*id.* at 18:20-24);

c.  Updated written responses to the Trustee Subpoena that are fully compliant with the Rule 2004 Order (*id.* at 18:25-19:4); and

d.  Time records (*id.* at 21:3-5).

124.    With regard to time records, Carlebach indicated that he believed that he had already produced time records to counsel for the Trustee as an attachment to the email, but would confirm.  He stated that there were "absolutely time records kept."  *Id.* at 21:10-25.

125.    A subsequent hearing was scheduled for December 1, 2016, and Carlebach assured the Court that, prior to December 1, he would comply with the Court's directive for there to "be full, one-hundred percent compliance with every item that Mr. Berger has outlined today." *Id.* at 22:22-23:6.

126.    The Court specifically directed that Carlebach should complete production by the close of business on November 30, 2016.  *Id.* at 23:16-18.  Further, the Court advised Carlebach that he could not do a "document dump at 5 o'clock;" rather, he needed "to do a rolling production."  *Id.* at 24:2-12.

127.    At the November 21 Hearing, the Court asked Guarino's counsel to file a written representation confirming that Guarino had waived attorney-client privilege with respect to the Debtor during both the chapter 11 case and the chapter 7 case.  *Id.* at 18:4-10.  Guarino's counsel did so on November 22, 2016.  Dkt. No. 129.

128.    On November 29, 2016, at approximately 5:30 p.m., Carlebach sought – and the Court granted – an extension of the December 1, 2016 production deadline until December 5, 2016, and the status conference scheduled for December 1, 2016 was adjourned to December 6, 2016 at 9:30 a.m.

129.    On December 5, 2016, Carlebach produced amended written responses but only a partial IOLA Account statement concerning certain disbursements.

130.    At the December 6, 2016 status conference, counsel for the Trustee listed on the record the Production items that remained outstanding from Carlebach.  The Court

confirmed that the outstanding amount of Monetary Sanctions had doubled as of December 1, 2016 and continued to accrue at $100 per day.

**F.      The December 19, 2016 Hearing**

131.     The next status conference was held on December 19, 2016 (the "December 19 Hearing").

132.     Mere hours before that status conference, Carlebach produced certain documents to the Trustee.  Prior to that, Carlebach had not produced anything since immediately prior to the December 6, 2016 hearing.

133.     Just prior to 7:00 a.m. on December 19, 2016, Calebach produced to the Trustee amended written responses, dated December 19, 2016, and redacted IOLA Account statements.

134.     The written responses produced by Carlebach on December 19, 2016 were reviewed on the record at the December 19 Hearing and determined to be inadequate, inaccurate, and not in compliance with the Rule 2004 Order and the Trustee Subpoena.

135.     In his sworn written responses, Carlebach states:  "Carlebach has produced to the Trustee for discovery and inspection documents responsive to this request."

136.     Further, Carlebach states:  "In that regard none of the documents and books and records have been altered, modified, deleted or otherwise destroyed . . . ."

137.     Contrary to Carlebach's sworn written representations provided on December 19, 2016, certain documents produced by Carlebach appear to have been redacted or otherwise altered.  The partial IOLA Account documents produced by Carlebach have been redacted.

138.    During the December 19, 2016 Hearing, Carlebach admitted that he remained noncompliant with the Rule 2004 Order and the Trustee Subpoena. *See Transcript of Hearing Held on December 19, 2016,* at 18:22-19:4 ("I will continue to endeavor to give every last document to the trustee.  In terms of the emails, I thought I gave him everything.  If there are gaps, I will double-check again in all of my emails and my employees' emails.  Maybe I missed something.  […]  I'm not saying I couldn't have missed something, but I certainly was not trying.").

139.    During the December 19 Hearing, counsel for the Trustee identified gaps in Carlebach's email production: (a) emails between Carlebach and Guarino that Guarino had produced were absent from Carlebach's production; and (b) chronological gaps in Carlebach's email production.

140.    Further, as of the December 19 Hearing, Carlebach had not produced: (a) any time records for this case subsequent to February 1, 2016, notwithstanding that he had filed pleadings and appeared before the Court in this case subsequent to February 1, 2016; (b) an updated accounting; and (c) drafts of a plan, disclosure statement, or motion to dismiss, all of which are described in his time records for the period prior to February 1, 2016.  Carlebach also failed to pay any of the outstanding Monetary Sanctions that had continued to accrue.

141.    At the December 19 Hearing, Counsel for the Trustee explained:

We need an updated written response from Mr. Carlebach as to whether or not documents have been altered, modified, or deleted, because we know that what he produced today has been altered and modified.  We need an affirmative representation that he – in this document, that he has produced all of the documents and information responsive to the order and the subpoena that are responsive to the requests.  We need a representation whether or not time records exist for the period subsequent to February 1st, 2016.

*See Transcript of Hearing Held on December 19, 2016,* at 26:23-27:7.  In addition, the Trustee

requested an updated accounting.  *Id.* at 27:16-27:25 ("[W]e need all of the bank statement[s]

from the date that he received his 10,000-dollar retainer until the date that the IOLA account no

longer had any funds on hand in connection with this debtor, because we know from the sale

order, a number of disbursements were made from his IOLA account:  return of a breakup fee,

return of other items that are referenced in a footnote in the original and amended conversion

order.").

> 142.   The Court directed Carlebach to complete his production of documents by

close of business on December 23, 2016 (the "<u>December 19 Order</u>"), and advised Carlebach that

Monetary Sanctions would continue to accrue until production was complete.  *Id.* at 22:11-14.

> 143.   During the December 19 Hearing, the Court also granted Carlebach's oral

request for a protective order pursuant to section 107 of the Bankruptcy Code, to the extent

applicable, such that he would be able to make a complete production of documents, including

bank records, without a concern about confidentiality or a waiver of attorney-client privilege.  *Id.*

at 22:3-10.

> 144.   As of the December 19 Hearing, Carlebach had paid only $1,000 of the

Monetary Sanctions.  With the Monetary Sanctions having been doubled, Carlebach had accrued

Monetary Sanctions of $9,700 as of December 19, 2016.

> 145.   As part of the December 19 Order, the Court also directed that Carlebach

pay all the outstanding Monetary Sanctions to the Trustee by close of business on December 20,

2016.  Carlebach acknowledged that he would.  *Id.* at 20:17-19, 22:11-14.

> 146.   In response to Carlebach's request, counsel for the Trustee provided

Carlebach with a list of emails missing from Carlebach's Production on December 20, 2016.

147.    The Court set January 4, 2017 for the date of the next status conference.

148.    Carlebach did not pay the balance, or any portion, of the Monetary Sanctions to the Trustee on December 20, 2016.

149.    Carlebach did not complete his production of documents by the close of business on December 23, 2016; in fact, he did not produce any other documents to the Trustee or provide any updated, corrected written responses.

150.    Having received altered IOLA Account statements from Carlebach, the Trustee served a subpoena on Citibank on December 19, 2016 (the "Trustee Citibank Subpoena") for the production of Carlebach's IOLA Account statements.

151.    On December 28, 2016, Carlebach filed his *Motion of David Carlebach to Quash Subpoena of Chapter 7 Trustee of Citibank* (the "Motion to Quash"), seeking to quash the Trustee Citibank Subpoena on the grounds of relevance and burden.  Dkt. No. 139.

152.    At 7:03 a.m. on January 4, 2017 – just hours before the January 4, 2017 status conference was to begin – Carlebach filed a *Motion of David Carlebach to Vacate Contempt Order* (the "Motion to Vacate"), seeking to vacate the Court's Original Order to Show Cause, together with a Notice of Motion setting the Motion to Vacate for hearing on January 18, 2017. Dkt. No. 142.  At 7:15 a.m. on January 4, 2017, Carlebach sent an email to the Court's chambers with a copy to counsel to the Trustee and other parties in interest requesting "that no further hearings be conducted on this matter" until January 18, 2017.

153.    Carlebach had not sought, and the Court's Chambers had not authorized, setting January 18, 2017 as a return date for the Motion to Vacate.

154.    Carlebach failed to attend the January 4, 2017 status conference (the "January 4 Hearing"), and failed to advise the Court, the Trustee, or other parties in interest that he would not attend the January 4 Hearing.

155.    The January 4 Hearing was conducted without Carlebach being present.

156.    As of the January 4 Hearing, Carlebach had not confirmed whether or not he had time records for the period subsequent to February 1, 2016.

157.    Withdrawal of the Appeal of the Conversion Order was so-ordered by the District Court on January 10, 2017.

158.    On January 10, 2017, the U.S. Trustee filed its *Omnibus Statement With Respect To (A) The Court's Order To Show Cause Dated November 7, 2016; (b) David Carlebach's Motion to Quash Subpoena Of Chapter 7 Trustee Of Citibank; And (C) David Carlebach's Motion To Vacate Contempt Order*, together with the Declaration of Serene K. Nakano.  Dkt. No. 146.

159.    On January 11, 2017, this Court entered its *Order to Show Cause (A) Scheduling a Hearing to Consider Entry of a Contempt Citation, the Imposition of Sanctions, and the Issuance of a Bench Warrant and (B) Directing David Carlebach, Esq. to Attend Such Hearing* (the "Second Order to Show Cause").  Dkt. No. 147.  The Second Order to Show Cause directed Carlebach to appear at a hearing scheduled for January 18, 2017 at 2:00 p.m. (the "January 18 Hearing"), at which time the Court would (i) consider entry of a further order declaring that Carlebach has been in civil contempt for failure to comply with the Rule 2004 Order, the Trustee Subpoena, the October 13 Order, and the December 19 Order and (ii) determine the nature and extent of additional coercive civil sanctions to compel Carlebach's compliance with such orders and whether a bench warrant should be issued.

160.    At 8:54 a.m. on January 18, 2017, Carlebach filed a letter to the Court requesting an adjournment of the January 18 Hearing on the Motion to Quash, the Motion to Vacate, and the Second Order to Show Cause until such time as he could retain counsel to represent him.  Dkt. No. 150.  The Court denied the request.  Dkt. No. 153.

161.    On the record of the January 18 Hearing, the Court denied the Motion to Quash and the Motion to Vacate.

162.    Carlebach has not completed his Production obligations as of the date hereof.

163.    As of the January 4 Hearing, Monetary Sanctions due and payable by Carlebach, but unpaid by Carlebach, totaled $11,300; as of the January 18 Hearing, the total amount due and payable is $12,700.

164.    Carlebach has never sought relief from the Trustee Subpoena.

165.    Carlebach has acknowledged that he understands his obligations under the Rule 2004 Order, the Trustee Subpoena, and the October 13 Order.

166.    Monetary Sanctions alone are insufficient coercive civil sanctions to compel Carlebach's compliance with the Rule 2004 Order, the Trustee Subpoena, or other Orders of the Court in this case.

**<u>Discussion</u>**

It is well settled that bankruptcy courts are vested with the inherent authority to enforce compliance with their orders through the issuance of civil contempt orders.  *See* 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9020; *Rosen v. Breitner & Hoffman, P.C.*, (In re Flushing Hosp. & Med. Ctr.), 395 B.R. 229, 241 (Bankr. E.D.N.Y. 2008); *In re Chief Exec. Officers Clubs, Inc.,* 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007).  "The purpose of civil contempt is to compel a

reluctant party to do what a court requires of him." *In re Chief Exec. Officers Clubs, Inc.*, 359

B.R. at 534 (citations omitted).  Sanctions for civil contempt may be imposed both to coerce

future compliance with a court order issued for another party's benefit and to compensate for any

harm that previously resulted from the noncompliance.  *Id.* (citations omitted).  In fashioning an

appropriate remedy, courts must consider "the nature of the harm and the probable effect of

alternative sanctions."  *Id*. at 536 (citing *EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333,

336 (2d Cir. 2001)).  A court's inherent power to hold a party in civil contempt may be exercised

only when (i) the order the party allegedly failed to comply with is clear and unambiguous, (ii)

the proof of noncompliance is clear and convincing, and (iii) the party has not diligently

attempted in a reasonable manner to comply with the order.  *See King v. Allied Vision, Ltd.*, 65

F.3d 1051, 1058 (2d Cir.1995); *In re Chief Exec. Officers Clubs, Inc.,* 359 B.R. at 535.

Courts may utilize incarceration as a coercive sanction for civil contempt, so long as "the

contemnor is able to purge the contempt and obtain his release by committing an affirmative

act." *In re 1990's Caterers Ltd.*, 531 B.R. 309, 319-320 (Bankr. E.D.N.Y. 2015) (citing *Int'l

Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-29, 114 S. Ct. 2552, 129 L.

Ed. 2d 642 (1994) (internal citations and quotation marks omitted); *Hicks ex rel. Feiock v.

Feiock*, 485 U.S 624, 635 n.7, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988); *Lawrence v. Goldberg

(In re Lawrence)*, 279 F.3d 1294, 1297 (11th Cir. 2002) (affirming bankruptcy court's

imprisonment of a debtor for  civil contempt for failing to comply with a turnover order); *In re

CTLI, LLC*, 528 B.R. 359, 379 (Bankr. S.D. Tex. 2015) (directing the former majority owner of

the debtor to relinquish control of its social media accounts, the failure of which would result in

the issuance of a warrant for his arrest and his incarceration until he turned those accounts over

as a civil contempt sanction); *In re Count Liberty, LLC*, 370 B.R. 259, 274 (Bankr. C.D. Cal.

2007) (stating that incarceration is an appropriate coercive sanction so long as "the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order."); *Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 536-537, 542-43 (determining that the bankruptcy court had the authority, as a coercive civil contempt sanction, to imprison an officer of the debtor until he returned funds improperly transferred from the debtor's bank accounts in violation of a court order)).  Where (i) it is unlikely that increased monetary sanctions would improve the likelihood of compliance and (ii) there has been a pattern of noncompliance, courts have held that the coercive sanction of incarceration is particularly appropriate.  *In re 1990's Caterers Ltd.*, 531 B.R. at 320 (citing *In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 426 (Bankr. D. Del. 2014) (collecting cases); *Souther v. Tate (In re Tate)*, 521 B.R. 427, 439-44 (S.D. Ga. 2014) (discussing the bankruptcy court's authority to impose and the propriety of imposing incarceration as a coercive sanction for civil contempt)).

As the foregoing detailed recitation of the facts makes clear, Carlebach has knowingly and purposefully violated this Court's orders unambiguously directing him to produce records, bank statements, and certifications of compliance with the Trustee's requests.  Specifically, Carlebach has failed to comply with his obligations pursuant to the Rule 2004 Order (and the Trustee Subpoena issued pursuant to such order), the October 13 Order, and the December 19 Order, and such non-compliance constitutes clear and convincing evidence of civil contempt.  In so doing, Carlebach has misled the Court, wasted the Trustee's time and resources, displayed an utter lack of respect for the bankruptcy process, and flouted the rule of law.  His non-compliance with this Court's orders is purposeful and willful.  It is profoundly disappointing; in fact, it is shocking.

Having sought to avoid this circumstance for months and having all but begged Carlebach to comply, the Court now concludes that there is no lesser coercive sanction available than incarceration; there is no evidence whatsoever that increased monetary sanctions would improve the chances of compliance. Carlebach is in civil contempt of the Rule 2004 Order, the October 13 Order, and the December 19 Order.

**As such, if Carlebach does not purge his contempt by January 31, 2017, this Court will issue a warrant for his arrest directing the United States Marshals to take him into their custody and hold him in their custody until such time as he purges his civil contempt by making a complete Production to the Trustee in full compliance with the Trustee Subpoena and the Rule 2004 Order and by paying all outstanding Monetary Sanctions**. Thus, based on the foregoing, it is hereby

**ORDERED**, that Monetary Sanctions shall cease to accrue as of the date hereof; and it is further

**ORDERED**, that on or before **January 31, 2017**, the Trustee shall file and serve an affidavit or affirmation as to whether Carlebach has purged his contempt as required by this Order; and it is further

**ORDERED**, that if Carlebach does not purge his contempt by **January 31, 2017**, this Court will issue a warrant for his arrest directing the United States Marshals to take him into their custody and hold him in their custody until such time as he purges his civil contempt; if Carlebach is arrested, once he files or causes to be filed a letter with this Court clearly and unambiguously stating that he is ready, willing, and able to immediately comply with this Court's prior orders, along with evidence of his ability to comply, the Court will schedule a

further hearing to determine whether Carlebach should be released from the United States

Marshals' custody; and it is further

      **ORDERED**, that the Trustee shall serve a copy of this Order on Carlebach by email,

regular mail, and certified mail on or before **January 19, 2017**, and shall file an affidavit or

affirmation of service on or before **January 20, 2017**.


Dated: January 18, 2017
New York, New York

                  /S/ Shelley C. Chapman
                  HONORABLE SHELLEY C. CHAPMAN
                  UNITED STATES BANKRUPTCY JUDGE